```
Chad McKinney
Pro Se
6266 Madeline St Apt #61
San Diego, CA  92115
619-634-3566
```

FILED
2007 DEC 19  AM 11: 33
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KWH_____DEPUTY

# THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

CHAD MCKINNEY, an individual,

           Plaintiff,

v.

APOLLO GROUP INC., UNIVERSITY OF PHOENIX, a Corporation, MECHELLE BONILLA, an Enrollment Manager at UNIVERSITY OF PHOENIX, KYAN FLYNN, Director of Enrollment at UNIVERSITY OF PHOENIX, APRIL ALCORN, an Employee Relations Consultant at UNIVERSITY OF PHOENIX, CARLYN LINDSTEN, Associate Director of Enrollment at UNIVERSITY OF PHOENIX

           Defendants

CIV. Case No. '07 CV 2373 WQH CAB

FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT AND FOR VIOLATION OF THE THE CIVIL RIGHTS ACT 1964 AND THE AMENDMENTS TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1991

RETALIATION- WRONGFUL TERMINATION &
EMPLOYENT DISCRIMINATION CIVIL ACTION

Demand for Trial By Jury Pursuant to U.S. Constitution, 7th Amendment

1

## STATEMENT OF THE CASE

1.

This instant arises primarily from the defendant's discriminatory behavior against the plaintiff while the plaintiff was employed by the defendant, including but not limited to the wrongful termination of the plaintiff. More specifically, this case arises out of the defendant retaliating against the plaintiff in violation of the Federal False Claims Act § 3729. In 1986, Congress added provisions in 31 U.S.C. Sec. 3730(h): "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of his employer or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

The Defendant's discriminatory behavior against the Plaintiff is also in violation of Title VII of the CIVIL RIGHTS ACT of 1964 and amendments to Title VII of the CIVIL RIGHTS ACT of 1991.

Various common laws were also broken by the defendant in violation of the rights of the plaintiff.

2. **JURISDICTION**

The plaintiff asks the Court to recognize the jurisdiction of this case as the case meets the requirement of jurisdiction under the Federal False Claims Act and Title VII of the Civil Rights act of 1964 as amended in 1991. It should be further noted that the EEOC recognized jurisdiction in evaluating the case and submitted to the plaintiff a 90 day "right to sue" letter.

3. **VENUE**

The employer APOLLO GROUP INC, UNIVERSITY OF PHOENIX, is located in San Diego at the following locations.

> Apollo Group, Inc
> University of Phoenix
> 3890 Murphy Canyon Road
> San Diego, CA 92123
>
> Apollo Group, Inc
> University of Phoenix
> 1230 Columbia Street
> San Diego, CA 92101

The venue is proper for this action.

**4.** **TIMELINESS OF PETETION**

This action is timely filed within the statute of limitations as provided by the EEOC. As required by law, a complaint was filed with the EEOC before filing this action.

This action is also timely within the Federal False Claims act.

**5.** **PARTIES**

Plaintiff Chad McKinney is an American citizen residing at 6266 Madeline St., APT #61, San Diego, CA, 92115.

Defendant Apollo Group Inc., University of Phoenix is located at:

    Apollo Group, Inc
    University of Phoenix
    3890 Murphy Canyon Road
    San Diego 92123

Defendant, MECHELLE BONILLA, Enrollment Manager of UNIVERSITY PHOENIX, was employed at the San Diego office located at:

    Apollo Group, Inc
    University of Phoenix
    1230 Columbia Street
    San Diego, CA 92101

Defendant KYAN FLYNN, Director of Enrollment of UNIVERSITY PHOENIX, and Defendant CARLYN LINDSTEN, Associate Director of Enrollment of UNIVERSITY OF PHOENIX, both were employed at the San Diego office located at:

    Apollo Group, Inc
    University of Phoenix
    3890 Murphy Canyon Road
    San Diego 92123

4

Defendant APRIL ALCORN a Human Resources Manager of UNIVERSITY OF PHOENIX, was employed at the corporate headquarters, located at:

> Apollo Group, Inc
> University of Phoenix
> 4615 E. Elwood St.
> Phoenix, AZ 85040

## STATEMENT OF FACTS

1) Plaintiff was hired on August 7th 2006 as an Enrollment Counselor for the University of Phoenix. Plaintiff was interviewed by Kyan Flynn, Barbara Keramati, and Andrea Beltran.

2) During the interviewing process Plaintiff was told the job was a salary position and there was no mention to the Plaintiff that his salary would decrease if the Plaintiff did not meet quotas for new applicants.

3) It was communicated to Plaintiff that his salary could increase if he were to successfully meet the goals of the defendant's employment matrix. The specifics of the matrix were not outlined to the Plaintiff during the interview. Kyan Flynn did communicate to the Plaintiff that "laborious efforts, dedication, and job competency" were required for an increase in salary to take effect.

4) After two months of employment the Plaintiff discovered that his salary was based on enrollment quotas via discussions of the "employment matrix" and discussions with other employees.

5) The Plaintiff received harassing emails, vocalization of threats (from his manager), and was entered into contests to encourage sales quotas. Rewards, bonuses [of monetary value], and/or special treatment were given to those who enrolled the most students.

6) The Plaintiff, after discovering that the Higher Education Act prohibits universities from using sales quotas for enrollment counselors, mentioned this concern to his manager, and direct supervisor, Mechelle Bonilla.

7) Even after the Plaintiff mentioned that he believed that the Higher Education Act prohibited sales quotas for Universities, the Plaintiff's manager still asked the Plaintiff to meet a weekly program called "Osira", which was a sales goals of: 3.5 appointments, 1.5 applications, and 2 referrals per week. It was often communicated to the Plaintiff that sales quotas were required. In several one on one meetings the Plaintiff's first manager, Barbara Keramati, reminded the Plaintiff that he was not only an employee but also a student with the University, and that his tuition reimbursement would be revoked if he failed to meet the "goal" of enrolling at least four students per month. Ms. Keramati stated to the Plaintiff on several occasions that she did not wish to enforce that revocation and encouraged the Plaintiff to meet a quota.

8) On the 19th of December, 2006 it was communicated via an email written by the Plaintiff's manager, Barbara Keramati, and forwarded to the Directors of the company; Kyan Flynn and Kim Savich that the Plaintiff's job performance was exceptional: "kudos to Chad McKinney…Chad you are my hero!!!!!!!!! 7 appointments and 6 apins [applications]..can it get any better that that?" Other employees were even encouraged to contact the Plaintiff for advice on how to improve their performance.

9) On a multitude of occasions from the end of February 2007 until the Plaintiff was terminated, he received multiple harassing emails from the Associate Director of Enrollment; Carlyn Lindsten. These emails threatened reductions in pay if enrollment quotas were not met, questioned the level of dedication of the Plaintiff and asked the Plaintiff if he was truly serious about his career with the company. She also asked why quotas for student enrollment were not met, and asked the Plaintiff to "step it up" in condescending threatening fashion. These types of emails were sent out almost daily, and sometimes multiple times in one day.

10) The Plaintiff felt the enrollment practices of this company presented an ethical dilemma and decided to apply for a position as an Academic Counselor in the Academic department. He was encouraged to do so by his first manager Barbara Keramati via email and a one on one conversation. In late February

7

2007 the Plaintiff submitted his resume to Thomas Graneau Jr., an employee of the Defendant.

11) Around the time of late February 2007 but no later than that of early March 2007, the Plaintiff was transferred from the Kearny Mesa campus to the downtown campus by Associate Director of Enrollment Carlyn Lindsten. This transfer was soon after the Plaintiff again voiced concerns to Ms. Lindsten of the legality of the quota system and the Defendant's San Diego office. .

12) The Plaintiff was granted an interview for the Academic position and met with Thomas Graneau Jr. and Colleen Bjornson in early March. He was not selected for the position of Academic Counselor.

13) Although Mechelle Bonilla was not the Plaintiff's manager for the month of February of 2007, she told the Plaintiff to sign a "Discussion Memo" that stated his performance fell below expectations of the appointments seen, applications, and students whom started class and that "failure to improve your performance may result in further disciplinary action up to and including termination."
Although the Plaintiff did not agree with the quota system he accepted the reprimand and signed the Discussion Memo.

8

14) Many of the Plaintiff's applicants were subsequently transferred to other San Diego staff to maintain in disregard to corporate policy. This started on the 26th of March, 2007, soon after the plaintiff questioned the legality of the university's enrollment practices in a previous conversation in early March with his second manager; Mechelle Bonilla.

15) The Plaintiff's "lead base" [number of students in his data base available for contact] was reduced drastically by his manager Mechelle Bonilla from March 2007 until he was terminated. Several of these students were transferred and assigned to Alison Herring.

16) Plaintiff's work schedule was changed without consultation of Plaintiff by the Associate Director of Enrollment Carlyn Lindsten on the 26th of March, 2007 in order to make everyone available for "QC" [Qualifying Center] telephone calls to "help everyone hit their goal!" The amount of QC calls the Plaintiff received dwindled from March onward. Plaintiff did not receive any QC calls in June or July of 2007.

17) Plaintiff was asked and pressured by San Diego management to sign documents that the Plaintiff felt were untrue relating to his performance.

18) Plaintiff's salary was reduced from $37,000 to $35,500 in May. Defendant states that the reasons were because he did not "meet goal" in May. Plaintiff contacted the independent office of Ombuds Services anonymously in the

9

beginning of June 2007 to research his options in the hopes of protecting himself from further retaliatory acts taken by the company against him for voicing concerns about the company policy of using quotas.

19) Plaintiff submitted evidence to the Human Resources department, Employee Relations Consultant; April Alcorn, on June 11, 2007 supporting his claim that the San Diego office was using harassment and intimidation to get the plaintiff to quit employment or accept the sales quota system.

20) The Plaintiff was told in a telephone conversation on the 11th of June, 2007 by April Alcorn that the issue the Plaintiff described in San Diego would be resolved in two weeks.

21) On the 12th of June, 2007 April Alcorn sent an email stating to the Plaintiff: "I received your fax and will be looking into your concerns."

22) The university continued to create a hostile work environment for Plaintiff even after he demanded to HR that it cease and desist. He was harassed with emails threatening termination on the 20th of June, 2007 by co-worker Alison Herring and approved of by his manager Mechelle Bonilla stating that if he did not participate and perform adequately in a team "blitz" at 11:30 he could be terminated. Team "blitzs" are designated times [by the manager], three times a day, in which employees were expected to not leave their cubicle, and

Case 3:07-cv-02373-WQH-CAB    Document 1    Filed 12/19/2007    Page 11 of 20

make as many telephone dials as possible, and schedule as many students possible for appointments. The subject title read "IF YOU DON[']T BLITZ AT 11:30 MECHELLE SAYS YOU'RE FIRED!" The top performing Enrollment Counselor on Mechelle Bonilla's "team"; Bertha Castillo even responded to this email to justify her absence from this "blitz". Enrollment Counselor Fran Beadles also called in from the Palm Desert campus to Mechelle Bonilla on that day to voice her concerns with the email. At the conclusion of the telephone conversation she was berated in the Downtown office by Mechelle Bonilla and Alison Herring for being a "nuisance" and was also referred to as an "idiot".

23) The Plaintiff received an overnight Federal Express package dated June 14th, 2007 from April Alcorn thanking him for bringing his workplace concerns to her attention and that she would be contacting him at a later time to "discuss the findings".

24) At the end of June 2007 the plaintiff was reprimanded by Mechelle Bonilla for his attire on a casual Friday (flip flops, jeans, and a t-shirt). This action was discriminatory and retaliatory since Alison Herring, Tiffany Jones, and Davina Mendoza had all worn the same attire [as well as tank tops] and were previously unpunished [not limited to "casual Friday"].

11

25) Plaintiff immediately contacted April Alcorn to notify her of his concerns regarding the bias and harassment by Mechelle Bonilla in relation to the casual Friday dress code.

26) On the 2nd of July, 2007 the Plaintiff was asked by Mechelle Bonilla to search the websites for the dress code, because she was "too busy". Plaintiff could not find any information on the company websites regarding the dress code, neither could Mechelle Bonilla.

27) The situation of harassment, which was informed to April Alcorn, (who had promised to get back to the Plaintiff in 2 weeks) was not resolved in the time frame that April Alcorn had communicated via telephone conversation, which was to be the 6th of July, 2007. This date had originally been set much earlier via telephone conversation by April Alcorn.

28) The Plaintiff was extremely stressed out over the situation, and had communicated this to April Alcorn, as well as his manager, Mechelle Bonilla, on several occasions via email, telephone and one on one conversation.

29) The Plaintiff's stress increased daily soon after the original harassment in March 2007. Plaintiff began grinding his teeth, vomiting, and receiving stomach pains in response to the hostile work environment.

30) Plaintiff decided to see Dr. Calixto on July 3rd, 2007 at Beautiful Smile Dentistry to seek advice on how to stop grinding his teeth.

31) Plaintiff was told in early July by April Alcorn via telephone conversation that she had completed her investigation and the issue would be resolved by the 12th of July, 2007.

32) Plaintiff received an email from April Alcorn on the 12th of July, 2007 at 9:47 a.m. stating that she had "submitted the investigation documentation to my management team for review", which was contrary to her previous promise of resolution on such date. Plaintiff immediately telephoned April Alcorn in response to this contradiction and she assured him that this would finally be resolved within twenty four hours. Plaintiff again voiced his distress to April Alcorn regarding the hostile work environment and harassment that he continued to endure.

33) Plaintiff was contacted, by Angie Jibben, and told that he should take a leave of absence during an afternoon call on July 12th 2007. Defendant stated that he would prefer to wait for the resolution which was promised to him by April Alcorn, thanked her for the offer, and said that he would consider this an option should the need dictate so. The offer was never retracted, and was again encouraged before the completion of the telephone call by Angie Jibben as a solution to the Plaintiff's endured stress and harassment from the company.

13

34) Plaintiff did not receive any type of notification of resolution from April Alcorn or any other interested parties regarding his claims against the company by one o'clock the afternoon of July 13th. When Plaintiff attempted to contact April Alcorn after 1:00 on the 13th of July, 2007 a gentleman [whose name he did not recall] answered her personal work line. He attempted to pry the Plaintiff for information regarding his claims and agreed to leave a message for her.

35) On July 13th, 2007 at 6:00 p.m., the Plaintiff did not receive any information regarding his claims against the company and the issue still had not been resolved as was communicated to him by April Alcorn.

36) On July 13th, 2007, based upon the mental stress, and the tooth grinding condition which started soon after the stressful work environment at the Defendant's location, the Plaintiff decided to take the leave of absence offered earlier by Angie Jibben. The Plaintiff felt that this would allow for some needed rest and also allow the defendant even more time to resolve the hostile working conditions that were stressing him out.

37) On July 13th, 2007, the Plaintiff notified April Alcorn and Mechelle Bonilla via email that he would take a 10 day non-paid vacation in order to provide

1  them enough time to rectify the situation. He provided his personal email
2  account, should they need to contact him.

3

4  38) On July 16th, 2007 the Plaintiff left for vacation in an attempt to alleviate his
5      stress and allow the defendant time to resolve the work environment issue.

6

7  39) While the Plaintiff was on Leave of Absence, he received three overnight
8      Federal Express packages were left at his door from April Alcorn. The first
9      package was dated July 17th, 2007, and stated in a letter that he needed to
10     return to work no later than Thursday, July 19th, 2007 at his regularly
11     scheduled work time. "Failure to report to work by the designated date will
12     leave us no other alternative but to accept your voluntary resignation." The
13     Plaintiff never received any information pertaining to this on the contact email
14     he had made available to April Alcorn and Mechelle Bonilla.

15

16

17 40) The second and third packages were dated July 19th, 2007.

18

19 41) The second letter stated, "You failed to report to work at the designated date
20     and time. Consistent with our policy, the Company has chosen to separate
21     your employment effective July 19th, 2007."

22

23

24

42) The third and final letter stated, "Please be advised that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations."

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

*RETALIATION*

1986, Congress added anti-retaliation protections to the **False Claims Act** § 3729. These provisions, which did not exist previously, are contained in 31 U.S.C. Sec. 3730(h):

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of his employer or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

### SECOND CAUSE OF ACTION

*RETALIATION (Under Title VII)*

Title VII of the 1964 Civil Rights Act and the amendment in 1991 of the Civil Rights Act.

### THIRD CAUSE OF ACTION

*WRONGFUL TERMINATION*

### FOURTH CAUSE OF ACTION

FALSE IMPRISONMENT

### FIFTH CAUSE OF ACTION

*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

### SIXTH CAUSE OF ACTION

*DEFAMATION*

### SEVENTH CAUSE OF ACTION

*EQUAL PAY*

### CONCLUSION

The Plaintiff discovered that the Defendant was required by federal law to not use quotas as part of its student recruitment process. When the Plaintiff asked the Defendant to cease and desist, the Defendant retaliated via harassment and eventually terminated the

17

Plaintiff. Harassing and discriminatory actions by the defendant included, but were not limited to Equal Pay discrimination (arbitrarily cutting the Plaintiff's salary) and creating working conditions to intentionally inflict emotional distress.

**RELIEF REQUESTED**

1- Trial by jury on all issues triable by jury

2- Actual (compensatory) damages to in the amount to be determined by a jury

3- Maximum Statutory damages

4- Punitive damages in the amount of $250,000, or the maximum allowable by law.

5- Costs related to bringing this action, including reasonable attorney fees

6- Leave to amend this complaint pursuant to F.R.C.P 15(a), once discovery in this action has been completed

7 -Any other relief as this honorable court deems just, proper and equitable

Dated: 12/27/2007

12/27/2007

Chad McKinney

⸿JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Chad McKinney, 6266 Madeline Street Apt. 61, San Diego CA 92115-5630 Tel- 619-634-3566

**DEFENDANTS** 2007 DEC 19 AM 11:34
APOLLO GROUP INC., MECHELLE BONILLA, KYAN FLYNN, APRIL ALCORN, CARLYN LINDSTEN

(b) County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.           DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)
CHAD MCKINNEY, PRO SE (contact information listed above)

Attorneys (If Known)
**'07 CV 2373 WQH CAB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  |  | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** |  | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
False Claims Act (31 USC §§3729-3733) & CIVIL RIGHTS ACT 1964 & 1991 TITLE VII AMENDMENTS

Brief description of cause:
RETALIATION-WRONGFUL TERMINATION, FALSE CLAIMS ACT- RETALIATION

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 250,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE         DOCKET NUMBER

DATE  12/17/2007
SIGNATURE OF ATTORNEY OF RECORD   /s/ CM

**FOR OFFICE USE ONLY**
RECEIPT # 145709   AMOUNT $350-   12/19/07 BH   APPLYING IFP   JUDGE   MAG. JUDGE

```
        UNITED STATES
        DISTRICT COURT
     SOUTHERN DISTRICT OF CALIFORNIA
           SAN DIEGO DIVISION

     # 145709      - BH

     December 19, 2007
          11:35:11


       Civ Fil Non-Pris
  USAO #.: 07CV2373 CIVIL FILING
  Judge..: WILLIAM Q HAYES
  Amount.:              $350.00 CK
  Check#.: PC# 1016



       Total-> $350.00


  FROM: CIVIL FILING
        MCKINNEY V. APOLLO GROUP
```