1
2  Chad McKinney
   Pro Se
3  6266 Madeline St Apt #61
   San Diego, CA 92115
4  619-634-3566

**THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA**

5

6  CHAD MCKINNEY, an individual,            )  CIV. Case No.07-cv-2373 **WQH CAB**
                                            )
7                                           )  FOR VIOLATION OF FEDERAL
                                            )  FALSE CLAIMS ACT AND FOR
8                                           )  VIOLATION OF THE
                                            )  THE CIVIL RIGHTS ACT 1964 AND
9                                           )  THE AMENDMENTS TO TITLE
                                            )  VII OF THE CIVIL RIGHTS ACT OF
10          Plaintiff,                      )  1991
                                            )
11                                          )
                                            )  RETALIATION- WRONGFUL
12                                          )  TERMINATION &
                                            )  EMPLOYMENT DISCRIMINATION
13                                          )  CIVIL ACTION
     v.                                     )
14                                          )
     APOLLO GROUP INC., UNIVERSITY OF       )
15   PHOENIX, a Corporation, MECHELLE       )  **Memorandum of Points and**
     BONILLA, an Enrollment Manager at      )  **Authorities in Support of**
16   UNIVERSITY OF PHOENIX, KYAN            )  **Plaintiff's Motion in Opposition to**
     FLYNN, Director of Enrollment at       )  **Defendant's Notice of Motion and**
17   UNIVERSITY OF PHOENIX, APRIL           )  **Motion to Set Aside Entry of Default**
     ALCORN, an Employee Relations          )  **Against Apollo Group, Inc.**
18   Consultant at UNIVERSITY OF PHOENIX    )
     CARLYN LINDSTEN, Associate Director of )  Date: April 7, 2008
19   Enrollment at UNIVERSITY OF PHOENIX    )  Time: 11:00 a.m.
                                            )  Courtroom: 4
20                                          )  Judge: Hon. William Q. Hayes
                                            )
21                                          )
                                            )  Demand for Trial by Jury Pursuant
22                                          )  to U.S. Constitution, 7th Amendment
                                            )
23                                          )  March 31, 2008
         Defendants                         )
24

1

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S NOTICE OF MOTION AND MOTION TO SET ASIDE ENTRY OF DEFAULT AGAINST APOLLO GROUP, INC.

The Defendant Apollo Group, Inc. claims that, "This action is brought on the following grounds: (1) The Default is void since Apollo never received notice of the action before the answer was due; (2) The Court lacks jurisdiction over Apollo since Apollo was never properly served and therefore could not respond before the answer was due; and/or (3) Apollo reasonable believed, but was mistaken, that it had not been given actual notice and was properly served so that it should be relieved from the Default.". This allegation by the defendant is nothing more than a naked assertion with no supporting facts. For example, as can be evidenced by Mr. Hansell the Apollo Group, Inc. did in fact receive service (Please see Exhibit N, entitled "Declaration of R.T. Hansell in Support of Plaintiff's Motion for Default Judgment").

The Defendant pleads that it "was mistaken" that it had not been given actual notice. This is not a bona fide legal defense, such as hardship, or any other good or substantive reason allowed by the Federal Rules of Civil Procedure.

The default is valid because Apollo did receive notice and the court does have jurisdiction over Apollo which can be shown in the argument that follows:

2

1  The Defendant claims that Apollo Group, Inc is being "erroneously sued as Apollo
2  Group, Inc., University of Phoenix, a Corporation". This is not correct as both Apollo and the
3  University of Phoenix were served and listed separately in the original complaint. (Please note
4  the commas between the names). Copies of service to both entities are listed as Exhibit A and
5  Exhibit B. Even though both entities were served, they act as a single entity. Documents sent
6  to the plaintiff during his employment at the University of Phoenix show that these two
7  entities not only operate as one and the same entity (or corporation), but rather the University
8  of Phoenix [UOP], San Diego campus is an admitted department of Apollo Group, Inc.
9  (Please see Exhibit C, a letter received by the Plaintiff from the Defendant; dated July 19,
10 2007, which states: "Thank you for bringing your workplace concerns to our attention. The
11 Apollo Group, Inc. is committed to ensuring employees are treated fairly. Please be advised
12 that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support
13 any findings of the San Diego Enrollment Department violating Company policies or
14 procedures as outlined by your allegations." Please see Exhibit C2, two pages in length,
15 entitled; Annual Employee Performance Evaluation, dated May 11, 2007, which states on the
16 first page: "Employee's Name: Chad McKinney, Position Title: Enrollment Counselor,
17 Department: San Diego-Uop-Recruitment, Location: San-Uop-Scal-Sd Main Campus,
18 Evaluation Period: October 1, 2006 to March 31, 2007." The second page of this document
19 was signed by then University of Phoenix Enrollment Manager; Mechelle Bonilla. )
20  The defendant admits in its pleadings, and prior communications with the Plaintiff,
21 that the University of Phoenix is a subsidiary of Apollo Group, Inc. (See Exhibit D, a letter
22 received by the Plaintiff from the Defendant; dated June 14, 2007, which states: "The Apollo
23
24

3

1  Group, Inc., of which the University of Phoenix is a subsidiary, is committed to ensuring that
2  the established employment policies and practices are applied consistently.")
3      The Plaintiff's employment with the University of Phoenix was controlled and
4  monitored by the Apollo Group, Inc. (Please see Exhibit E, a letter received by the Plaintiff
5  from the Defendant; dated July, 17, 2007, which states: "Our records indicate that you have
6  not reported to work since Friday, July 13, 2007…Failure to report to work by the designated
7  date will leave us no other alternative but to accept your voluntary resignation." Please see
8  Exhibit F, a letter received by the Plaintiff from the Defendant; dated July, 19, 2007, which
9  states: "You failed to report to work at the designated date and time. Consistent with our
10 policy, the Company has chosen to separate your employment effective July 19, 2007."
11 Please see Exhibit G, a postcard received by the Plaintiff from the Defendant; dated August,
12 13, 2007, which states: "Dear former Apollo Group, Inc. employee: As a result of your
13 employment and/or Group Life Insurance coverage ending, you may be eligible to continue
14 your Group Life Insurance policy on an individual premium basis…" Please see Exhibit G2,
15 entitled; "Foreword" from the Apollo Group, Inc., 2007 Employee Handbook, this Exhibit is
16 two pages in length and states on the first page: "This Employee Handbook ("Handbook") is
17 intended to set forth the personnel policies and procedures for Apollo Group, Inc., and its
18 main subsidiaries (herein called the "Company"): University of Phoenix, Inc…" Furthermore,
19 in the fourth paragraph found on the second page of Exhibit G2 it states: "I acknowledge that I
20 have read the Employee Handbook and understand my rights and responsibilities as an
21 employee of Apollo Group, Inc. as outlined therein. Further, I specifically agree to abide by
22 the policies as set forth in the Employee Handbook…")
23
24

4

1    Communication and consultation between the University of Phoenix, San Diego
2 campus department and Apollo Group, Inc. was necessary for the University of Phoenix to
3 conduct its daily business operations, such as employee related issues.  Please see Exhibit H,
4 an email correspondence between the Plaintiff's former Enrollment manager at the University
5 of Phoenix; Mechelle Bonilla and Apollo Group, Inc.'s Employee Relations Consultant April
6 Alcorn, which states: "Hi April, I have approached Chad again today, June 7, 2007 to have
7 him sign the final written warning, he has again refused to sign it.  Kyan Flynn, my director
8 will be at the campus later today to be of witness to his refusal…Please let me know how to
9 handle the situation from this point forward.  Thank you.")
10    The Plaintiff's payroll was monitored and managed for the University of Phoenix by
11 Apollo Group Inc.  (Please see Exhibit I, a screen shot of the payroll time record dated June 6,
12 2007, which indicates that the University of Phoenix, listed as San Diego-Uop-Recruitment, is
13 cost center of Apollo Group, Inc.  Please see Exhibit J, the Plaintiff's 2007 W-2 Statement,
14 which on line C lists the Employer's name, address, and ZIP code as follows: "University of
15 Phoenix, Inc, 4615 E Elwood, Phoenix, AZ 85040-1958".  This is the same address used by
16 Apollo Group, Inc. Please see Exhibit K, entitled; "Summary Annual Report for Apollo
17 Group, Inc. Savings and Investment Plan", which states, in the final paragraph, that Apollo
18 Group, Inc.'s main office is at 4615 E. Elwood, Phoenix, AZ 85040; "You also have the
19 legally protected right to examine the annual report at the main office of the plan (Apollo
20 Group., 4615 East Elwood Street, Phoenix, AZ 85040) and at the U.S. Department of Labor in
21 Washington, D.C…")
22    The University of Phoenix and Apollo Group, Inc. have identical directors and
23 officers. (Please see Exhibit L, an email sent by John G. Sperling, Executive Chairman of
24

5

1  Apollo Group, Inc. to the Plaintiff on the 19th of June, 2007, which states: "In April, Gregory
2  Cappelli joined the Company as Executive Vice President of Global Strategy and Assistant to
3  the Executive Chairman." Please see Exhibit M, a print out of Apollo Group, Inc.'s Officers
4  and Directors, taken from http://www.apollogrp.edu/Management/ on March 26, 2008 which
5  is five pages in length.

8  When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the
9  burden of proof by a preponderance of the evidence to demonstrate the defendant has
10 sufficient minimum contacts with the forum state to justify jurisdiction. (*Vons, supra*,
11 14 Cal.4th at p. 449; *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 228; *Mihlon v.
12 Superior Court* (1985) 169 Cal.App.3d 703, 710.) The plaintiff must "present facts
13 demonstrating that the conduct of defendants related to the pleaded causes is such as to
14 constitute constitutionally cognizable 'minimum contacts." (*Mihlon v. Superior Court, supra,*
15 169 Cal.App.3d at p. 710.)
16 Personal jurisdiction may be either general or specific. (*Vons Companies, Inc. v.
17 Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).) A nonresident defendant is subject to
18 the forum's general jurisdiction where the defendant's contacts are
19 "substantial . . . continuous and systematic." (*Ibid.,* quoting *Perkins v. Benguet Mining Co.*
20 (1952) 342 U.S. 437, 445, 446.) In that situation, the cause of action need not be related to the
21 defendant's contacts. (*Vons, supra,* 14 Cal.4th at p. 445; *Cornelison v. Chaney* (1976)
22 16 Cal.3d 143, 147.) "Such a defendant's contacts with the forum are so wide-ranging that

6

they take the place of physical presence in the forum as a basis for jurisdiction." (*Vons, supra,* 14 Cal.4th at p. 446.)

The previous evidence presented as Exhibits C through M, should clearly show to any reasonable person that the University of Phoenix and Apollo Group, Inc. are the same entity or company, with the University of Phoenix, San Diego campus conducting its business operations as a department of Apollo Group, Inc. Henceforth, it should be concluded that service upon the University of Phoenix, an alter ego of Apollo Group, Inc. would constitute service upon UOP'S parent company Apollo Group, Inc. *See Hoffman v. United Telecommunications, Inc.,* 575 F. Supp. 1463, 1479 (D. Kan. 1983) (concluding that service of process on parent was sufficient to constitute service of process on subsidiary where entities were alter egos of one another).

California has ruled that a parent holding company may be subject to general jurisdiction only under limited circumstances. Those circumstances permitting the exercise of general jurisdiction include an alter ego relationship or the parent's exercise of such a degree of control of the subsidiary as to "reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." (*Id.* at p. 542; see also *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 244.)

Case law identifies one situation when the acts of the parent may be found to cross the line of legitimate ownership and control of the subsidiary and expose the parent corporation to the power of the state in which the subsidiary does business.

"[W]here the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate

7

1  corporate formalities, jurisdiction over the parent may be grounded in the acts of the
2  subsidiary/agent. In this instance, the question is . . . whether the degree of control exerted
3  over the subsidiary by the parent is enough to reasonably deem the subsidiary an agent of the
4  parent under traditional agency principles. The jurisdiction acquired by the forum state under
5  this rationale is general." (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 541.)

6  "[I]f a parent corporation exercises such a degree of control over its subsidiary
7  corporation that the subsidiary can legitimately be described as only a means through which
8  the parent acts, or nothing more than an incorporated department of the parent, the subsidiary
9  will be deemed to be the agent of the parent in the forum state and jurisdiction will extend to
10 the parent." (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 541.)

11 The control Apollo has over UOP does reflect a purposeful disregard of the
12 subsidiary's independent corporate existence. As can be seen from the attached Exhibits,
13 Apollo exercised control over the Plaintiff's payroll, hiring, firing, training, and performance.

14 The defendant alleges that the default was sought in bad faith. This is not true. The
15 plaintiff was served at its San Diego office by a professional service processor Mr. R. T.
16 Hansell. Mr. Hansell is a certified service process server. Mr. Hansell served the Operations
17 Manager, Ellen Bowens. The Defendant alleges that when Mr. Hansell spoke with Ellen
18 Bowens on the 31st of January, 2008, that Mr. Hansell was belligerent. According to Mr.
19 Hansell, a professional service processor, it was in fact Ms. Bowens that was belligerent and
20 uncooperative in his attempt to serve UOP and the Defendant (Please see Exhibit N, entitled
21 "Declaration of R.T. Hansell in Support of Plaintiff's Motion for Default Judgment"). Due to
22 Ms. Bowens' uncooperativeness, Mr. Hansell effected substitute service, as can also be noted
23 in Exhibit N.
24

Although Ellen Bowens is the Operations Manager of the University of Phoenix [UOP], this service can also be considered service of Apollo, as UOP is a subsidiary that is completely controlled and managed by the Defendant as if nothing more than an incorporated department of the Defendant.

Finally, although the Plaintiff believes that according to the law proper service was met, should the Court determine that service was not proper, the plaintiff hereby requests permission from the Court to amend the complaint based on Rule 4(m) of the Federal Rule of Civil Procedure:

Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:
If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. Under this rule, the court can employ a two-step analysis (*Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). First, the plaintiff is entitled to a mandatory extension of time if the plaintiff demonstrates good cause for failing to timely effect service. Second, if the plaintiff fails to show good cause, the court may exercise its discretion and either dismiss the case without prejudice or extend the time for service. *Id.*; *see also* Fed.R.Civ.P. 4 advisory committee notes to the 1993 amendments to subdivision (m) ("The new subdivision . . . authorizes the court to

1  relieve a plaintiff of the consequences of an application of this subdivision even if there is no

2  good cause shown.").

3

4

5  WHEREFORE, the Plaintiff respectfully moves this court to dismiss and/or reject the

6  Defendant's motion entitled: "NOTICE OF MOTION AND MOTION TO SET ASIDE

7  ENTRY OF DEFAULT AGAINST APOLLO GROUP, INC.", as the Defendant has not

8  shown good cause as required by the Federal Rules of Civil Procedure 55(c). The Plaintiff

9  respectfully requests that the Court exercise its jurisdiction over the Defendant and uphold the

10  Plaintiff's entry of default against the Defendant.

11

12

13  Respectfully submitted,

14

15  
16  Chad McKinney
     Pro Se
17  6266 Madeline St Apt #61
     San Diego, CA 92115
18  619-634-3566

19

20

21

22

23

24