Chad McKinney
Pro Se
6266 Madeline St Apt #61
San Diego, CA 92115
619-634-3566

NUNC PRO TUNC

MAY −7 2008

**FILED**

MAY − 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHAD MCKINNEY, an individual, | ) CIV. Case No.07-cv-2373 |
| | ) |
| | ) FOR VIOLATION OF FEDERAL |
| | ) FALSE CLAIMS ACT AND FOR |
| | ) VIOLATION OF THE |
| | ) THE CIVIL RIGHTS ACT 1964 AND |
| | ) THE AMENDMENTS TO TITLE |
| | ) VII OF THE CIVIL RIGHTS ACT OF |
| | ) 1991 |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) RETALIATION- WRONGFUL |
| | ) TERMINATION & |
| | ) EMPLOYENT DISCRIMINATION |
| | ) CIVIL ACTION |
| | ) |
| v. | ) |
| | ) |
| APOLLO GROUP INC., UNIVERSITY OF | ) **PLAINTIFF'S MEMORANDUM OF** |
| PHOENIX , a Corporation, MECHELLE | ) **POINTS AND AUTHORITIES IN** |
| BONILLA, an Enrollment Manager at | ) **SUPPORT OF REPLY TO APRIL** |
| UNIVERSITY OF PHOENIX, KYAN | ) **ALCORN'S OPPOSITION TO** |
| FLYNN, Director of Enrollment at | ) **PLAINTIFF'S MOTION FOR CLERK'S** |
| UNIVERSITY OF PHOENIX, APRIL | ) **ENTRY OF DEFAULT** |
| ALCORN, an Employee Relations | ) |
| Consultant at UNIVERSITY OF PHOENIX | ) **NO ORAL ARGUMENT, UNLESS** |
| CARLYN LINDSTEN, Associate Director of | ) **REQUESTED BY THE COURT** |
| Enrollment at UNIVERSITY OF PHOENIX | ) |
| | ) Date: May 12, 2008 |
| | ) Time: 11:00 a.m |
| | ) Courtroom: 4 |
| | ) Judge: Hon. William Q. Hayes |
| | ) |
| | ) Demand for Trial by Jury Pursuant |
| | ) to U.S. Constitution, 7th Amendment |
| | ) |
| Defendants | ) May 7, 2008 |

1

1

**TABLE OF CONTENTS**

2                                                                          **Page**

3    I.     INTRODUCTION...............................................................................2

4    II.    THE COURT DOES NOT LACK JURISDICTION OVER APRIL ALCORN..........4

5    III.   APRIL ALCORN WAS GIVEN SUFFICIENT SERVICE OF PROCESS...............6

6    IV.    THE PLAINTIFF MAY BE AWARDED PUNITIVE DAMAGES........................7

7    V.     APRIL ALCORN MAY NOT BE RELIEVED FROM THE CLERK'S ENTRY OF

8           DEFAULT...............................................................................8

9    VI.    CONCLUSION..............................................................................9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4
*Calder v. Jones,*
   465 U.S. 783 (1984)………………………………………………………5

5

*Smith v. Wade,*
6   461 U.S. 30, 56, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983)…………………..7

7
*Reynolds v. CSX Transportation, Inc.,*
   115 F.3d 860, 869 (11th Cir.1997)…………………………………………...7

8
*Splunge v. Shoney's, Inc.,*
9   97 F.3d 488, 491 (11th Cir.1996)……………………………………………7

10
*Walters v. City of Atlanta,*
   803 F.2d 1135, 1147 (11th Cir. 1986)………………………………………7

11

*Espinoza v. United States,*
12   52 F.3d 838, 841 (10th Cir. 1995)…………………………………………..9

13

## FEDERAL RULES

14

Rule 4(m) of the Federal Rules of Civil Procedure………………………………8

15

16

17

18

19

20

21

22

23

24

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO APRIL ALCORN'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLERK'S ENTRY OF DEFAULT**

**I.**

**INTRODUCTION**

This case is quite simple. The Plaintiff was terminated from his employment with the University of Phoenix ("UOP") on July 19th, 2007. Prior to his termination, the Plaintiff informed the UOP management and the Apollo Group, Inc. Employee Relations Consultant April Alcorn that the San Diego Enrollment Department was in violation of the Higher Education Act, and allowed UOP and the Defendant April Alcorn a reasonable amount of time to cease and desist the company's illegal activity. Rather than amending their illegal activity, UOP and April Alcorn waited until the Plaintiff was on a suggested leave of absence, and knowingly terminated him without proper warning purposefully ignoring an email by the Plaintiff to the Defendants that stated the purpose of his brief ten day absence from the company and provided a personal contact email address should he need to be reached regarding any further developments in his original complaint filed with the company on June 11, 2007 (Please see Exhibit A, dated July 13th, 2007, an email sent by the Plaintiff to April Alcorn, Mechelle Bonilla, and Martin Espinoza which states, "As per our telephone conversation yesterday morning I understood that you would get back to me within twenty-four hours…this is a very serious issue to me and I am extremely stressed out…I appreciate the option of a leave of absence that you had offered me earlier this week…Hopefully upon my return you will have a resolution to my HR issues that I have previously presented to you. If you attain a resolution in the meantime feel free to send it to my personal email account: puddy29@aol.com". Please see Exhibit B, a letter from the Plaintiff to April Alcorn and other

2

1    interested parties, dated June 11th, 2007, pages one through two, and subsequent Exhibits A1,

2    B1, and C1, listing and supporting the Plaintiff's concerns with UOP, henceforth Apollo

3    Group, Inc.'s negligent disregard and continued overt violation of the Higher Education Act.

4    Please see Exhibit C, dated July 17th, 2007, a letter sent by Fed Express to the Plaintiff by

5    April Alcorn, which states, "Our records indicate that you have not reported to work since

6    Friday, July 13, 2007.  Your failure to report to work has resulted in you being on an

7    unauthorized leave of absence.  Therefore, we expect you will return to work no later than

8    Thursday, July 19, 2007 at your regularly scheduled work time.  Failure to report to work by

9    the designated date will leave us no other alternative but to accept your voluntary resignation."

10   Please see Exhibit D dated July 19th, 2007, a letter sent by Fed Express to the Plaintiff by

11   April Alcorn, which states, "Your failure to report to work has resulted in you being on an

12   unauthorized leave of absence.  A letter was sent to your home on July 17, 2007, expecting

13   you to return to work no later than Thursday, July 19, 2007 at your regularly scheduled work

14   time.  You failed to report to work at the designated date and time.  Consistent with our policy,

15   the Company has chosen to separate your employment effective July 19, 2007."  Please see

16   Exhibit E, dated July 19th, 2007, a letter sent by Fed Express to the Plaintiff by April Alcorn,

17   which states, "Thank you for bringing your workplace concerns to our attention.  The Apollo

18   Group, Inc. is committed to ensuring employees are treated fairly.  Please be advised that the

19   Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any

20   findings of the San Diego Enrollment Department violating Company policies or procedures

21   as outlined by your allegations.")

22          Now the Defendant is alleging that she was never served properly, and so should not

23   have to respond to the Plaintiff's complaint filed with the court on December 19th, 2007.

24

                                                                                            3

1    However, the Plaintiff, because Pro Se and to ensure service was proper, hired Mr. R.T.

2    Hansell a professional service processor, who subcontracted service of process to Steve Ineich

3    (Please see Exhibit F, a sworn affidavit of service by Steve Ineich, A.C.P.S. Process Server

4    registered in Maricopa County, dated February 27th, 2008, and stating that he properly served

5    the Defendant April Alcorn "by leaving ONE true copy(ies) of the above documents

6    [SUMMONS, COMPLAINT & CONVER SHEET] with REBECCA SPRINGFIELD,

7    SECURITY, AUTHORIZED.  WORK: UNIVERSITY OF PHOENIX Described as female,

8    age 50, CAUC, 5ft. 7in. tall, 150 lbs., BROWN eyes, BLACK hair.").  Despite the

9    overwhelming evidence presented by the Plaintiff that service was proper upon all Defendant

10   parties, Nathan Hicks of Snell and Wilmer L.L.P, who is representing all Defendant parties,

11   even though each party falsely claim to be unrelated and unbeknownst of the other parties

12   actions and policies, continues to allege that the Defendants should not be forced to comply

13   with the Federal Rules of Civil Procedure and respond to the Plaintiff's original complaint,

14   thus requesting relief from the courts entry of default judgment against the defendants listed in

15   this case.  The Plaintiff moves the court to uphold its initial decision to enter a default

16   judgment against the Defendant.

17                                             **II.**

18          **THE COURT DOES NOT LACK JURISDICTION OVER APRIL ALCORN**

19          Here, the Defendant April Alcorn alleges that "the Plaintiff did not serve Alcorn within

20   the state.  Alcorn did not consent to the Court's jurisdiction nor is she domiciled within

21   California.  Finally, Alcorn does not even come close to requiring the minimum contacts

22   analysis required to demonstrate that the forum state has a sufficient relationship with her to

23   make it reasonable to requires her to defend the current action in California…Accordingly, the

24

                                                                                      4

1   Court lacks personal jurisdiction over Alcorn, and the entry of default against her is void and

2   should be set aside." This is not true. As CALDER V. JONES, 465 U.S. 783 (1984)

3   found...This minimum contact and malicious conduct by the Defendant April Alcorn is

4   demonstrated in Exhibits A through E. Please also see Exhibit G, originally submitted as

5   Exhibit H in the "PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S

6   DOCUMENT ENTITLED: "APOLLO GROUP, INC.'S OPPOSITION TO PLAINTIFF'S

7   MOTION FOR CLERK'S ENTRY OF DEFAULT" which demonstrates that the Defendant

8   April Alcorn conducted daily business operations from her place of employment in Arizona

9   listed with the company at 4615 E. Elwood St., Phoenix, AZ 85040 in direct conjunction with

10  the San Diego Enrollment Departments located at 1230 Columbia St., San Diego, CA 92101

11  and 3890 Murphy Canyon Road, San Diego, CA 92123, Exhibit G is an email correspondence

12  between the Plaintiff's former Enrollment manager at the University of Phoenix; Mechelle

13  Bonilla and Apollo Group, Inc.'s Employee Relations Consultant April Alcorn, which states:

14  "Hi April, I have approached Chad again today, June 7, 2007 to have him sign the final

15  written warning, he has again refused to sign it. Kyan Flynn, my director will be at the

16  campus later today to be of witness to his refusal...Please let me know how to handle the

17  situation from this point forward. Thank you.")

18      The Plaintiff was unable to originally collect unemployment insurance in California

19  due to a direct decision made by the Defendant April Alcorn made to terminate the Plaintiff's

20  employment with the University of Phoenix from her office of employment in Arizona.

21  (Please see Exhibit H, dated the 16th of August, 2007, a letter from the Employment

22  Development Department denying the Plaintiff's ability to collect unemployment insurance,

23  page 1, paragraph 1, of the letter states, "You are not eligible to receive benefits under

24

5

1  California unemployment insurance code section 1256 beginning 07/15/07...")  The Plaintiff

2  received unemployment benefits after the decision was overturned by the Honorable Catriona

3  M. Miller, Administrative Law Judge.  However, this was not until several months after the

4  plaintiff had been fired from his job in California by April Alcorn in Arizona.  (Please see

5  Exhibit I, dated October 29, 2007, a letter from the California Unemployment Insurance

6  Appeals Board, page 3, paragraph 6, which states, "it is concluded that the claimant was

7  discharged for reasons other than misconduct connected with the most recent work.

8  Accordingly, he is not disqualified for benefits under code section 1256, and the employer's

9  reserve account is subject to benefit charges."

10                                        **III.**

11              **APRIL ALCORN WAS GIVEN SUFFICIENT SERVICE OF PROCESS**

12            Here, the Defendant moves the Court set aside the Clerk's entry of default because the

13  Plaintiff "did not properly serve Alcorn".  This is not correct as is again demonstrated in

14  Exhibit F, a sworn affidavit of service by Steve Ineich, A.C.P.S. Process Server registered in

15  Maricopa County, dated February 27th, 2008, stating that he properly served the Defendant

16  April Alcorn "by leaving ONE true copy(ies) of the above documents [SUMMONS,

17  COMPLAINT & CONVER SHEET] with REBECCA SPRINGFIELD, SECURITY,

18  AUTHORIZED.  WORK: UNIVERSITY OF PHOENIX Described as female, age 50, CAUC,

19  5ft. 7in. tall, 150 lbs., BROWN eyes, BLACK hair."

20

21

22

23

24

1

## IV.

2

### THE PLAINTIFF MAY BE AWARDED PUNITIVE DAMAGES

3        The Defendant claims in its "OPPOSITION TO PLAINTIFF'S MOTION FOR

4    CLERK'S ENTRY OF DEFAULT" that "McKinney may not be awarded punitive damages

5    without a hearing".  Under § 1981, punitive damages may be awarded "when the defendant's

6    conduct is shown to be motivated by evil motive or intent, or when it involves reckless or

7    callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56

8    , 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983).  To support a punitive damages award, a

9    plaintiff must show that the defendant acted with malice or reckless indifference to the

10   plaintiff's federally protected rights. *Reynolds v. CSX Transportation, Inc.,* 115 F.3d 860, 869

11   (11th Cir.1997). Malice means "an intent to harm" and recklessness means "serious disregard

12   for the consequences of [one's] actions." *Splunge v. Shoney's, Inc.,* 97 F.3d 488, 491 (11th

13   Cir.1996) (quotation omitted). *See also Walters,* 803 F.2d at 1147 (defining the standard as

14   "cynical disregard").  "[T]he imposition of punitive damages in civil rights actions has

15   generally been limited to cases involving egregious conduct or a showing of willfulness or

16   malice on the part of the defendant"); Walters v. City of Atlanta, 803 F.2d 1135, 1147 (11th

17   Cir. 1986).  The defendant's showing of malice is demonstrated by the manner in which the

18   employee was fired (Please again refer to Exhibits A through E and G through I of the

19   "PLAINTIFF'S REPLY TO APRIL ALCORN'S OPPOSITION TO PLAINTIFF'S MOTION

20   FOR CLERK'S ENTRY OF DEFAULT").

21

22

23

24

1

## V.

2

## APRIL ALCORN SHOULD NOT BE RELIEVED FROM THE CLERK'S ENTRY OF

3

## DEFAULT

4     The Defendant alleges that "(1) the Court does not have personal jurisdiction over

5     Alcorn; (2) the summons was not properly directed to any entity or individual; (3) McKinney

6     did not make any reasonable attempts at personal service; (4) McKinney did not mail a copy

7     of the summons and Complaint to the Individual Defendant; and (4) [5] Alcorn was not made

8     aware of her involvement in this action until McKinney mailed her a notice of default on

9     March 26, 2008, there was no reason to believe that Alcorn had been given sufficient service

10    of process..." The Defendant's justifications presented as reasons 1 through 5 have been

11    demonstrated by the Plaintiff to be false and inaccurate (Please see Exhibits A through I),

12    henceforth April Alcorn should not be relieved from the Clerk's entry of default.

13    Additionally, the Defendant pleads that it "was mistaken" that it had not been given

14    actual notice. This is not a bona fide legal defense, such as hardship, or any other good or

15    substantive reason allowed by the Federal Rules of Civil Procedure Finally, although the

16    Plaintiff believes that according to the law proper service was met, should the Court determine

17    that service was not proper, the plaintiff hereby requests permission from the Court to amend

18    the complaint based on Rule 4(m) of the Federal Rule of Civil Procedure:

19    Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:

20    If service of the summons and complaint is not made upon a defendant within 120 days after

21    the filing of the complaint, the court, upon motion or on its own initiative after notice to the

22    plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service

23    be effected within a specified time; provided that if the plaintiff shows good cause for the

24

8

1 | failure, the court shall extend the time for service for an appropriate period. Under this rule,

2 | the court can employ a two-step analysis (*Espinoza v. United States*, 52 F.3d 838, 841 (10th

3 | Cir. 1995). First, the plaintiff is entitled to a mandatory extension of time if the plaintiff

4 | demonstrates good cause for failing to timely effect service. Second, if the plaintiff fails to

5 | show good cause, the court may exercise its discretion and either dismiss the case without

6 | prejudice or extend the time for service. *Id.*; *see also* Fed.R.Civ.P. 4 advisory committee notes

7 | to the 1993 amendments to subdivision (m) ("The new subdivision . . . authorizes the court to

8 | relieve a plaintiff of the consequences of an application of this subdivision even if there is no

9 | good cause shown.").

10 |        WHEREFORE, the Plaintiff moves the court to reject the motion because the

11 | Defendant did not show good or substantive cause or hardship or schedule conflicts or any

12 | other good reason as to why they could not respond to the original complaint within the

13 | allotted time according to the rules of the F.R.C.P. Wherefore the Plaintiff moves the court to

14 | reject the Defendant's motion and uphold its entry of default judgment against the Defendant.

15 |

16 | Respectfully submitted,

17 |

18 |

19 | Chad McKinney
     Pro Se

20 | 6266 Madeline St Apt #61
     San Diego, CA 92115

21 | 619-634-3566

22 |

23 |

24 |

# CERTIFICATE OF SERVICE

I, Chad McKinney, hereby certify that on, May 7, 2008, I served copies of the

Plaintiff's Motions, Memorandums of Points and Authorities, and supporting Appendices

to the Court on the following parties by way of United States Postal Service First Class

Priority Mail:

Snell & Wilmer L.L.P.
Attention of: Nathan W. Hicks
600 Anton Boulevard, Suite 1400.
Costa Mesa, CA 92626

_5/07/08_
Date

_Chad McKinney_

The United States District Court Southern District of California

Chad McKinney
Pro Se
6266 Madeline St Apt #61
San Diego, CA 92115
619-634-3566

**THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA**


**May 7, 2008**

**<u>BY HAND DELIVERY</u>**

The Honorable Judge William Q. Hayes
Referred to: Magistrate Judge Cathy Ann Bencivengo
330 West Broadway, San Diego
CA 92101-3827

Re: McKinney v. Apollo Group Inc., *et al*
Civil Action 07-cv-2373

Dear Judge Hayes,

Enclosed is a courtesy copy of the Plaintiff's Motions, Memorandums of Points and Authorities, and supporting Appendices and appendices that was hand delivered with the Clerk today.


Respectfully,

Chad McKinney, Pro-Se

Cc: Snell & Wilmer L.L.P.; Attention of: Nathan W. Hicks

1

**EXHIBIT A**

## Chad McKinney

**From:** Chad McKinney
**Sent:** Friday, July 13, 2007 6:04 PM
**To:** April Alcorn
**Cc:** Mechelle Bonilla; Chad McKinney; Martin Espinoza
**Subject:** HR Issue

Dear April,

As per our telephone conversation yesterday morning I understood that you would get back to me within twenty-four hours. I understand that unforeseen dilemmas or events may have arisen on your end preventing this from occurring. However, this is a very serious issue to me and I am extremely stressed out. I appreciate the option of a leave of absence that you had offered me earlier this week. Rather, I will take the next 10 days as vacation non-paid as I now have personal issues that I need to attend to. Hopefully upon my return you will have a resolution to my HR issues that I have previously presented to you. If you attain a resolution in the meantime feel free to send it to my personal email account: puddy29@aol.com

Thank you,


## Chad McKinney, Educational Counselor

**University of Phoenix | Axia College of University of Phoenix**

**San Diego Campus | 3890 Murphy Canyon Road |**

**San Diego, CA 92123**

**phone (858) 576-1287 ext. 34505 fax (858) 966-1196**

**email:** Chad.Mckinney@phoenix.edu

**"Do not go where the path may lead, go instead where there is no path, and leave a trail."**

~Ralph Waldo Emerson

# EXHIBIT B

University of Phoenix—Chad McKinney   June 11, 2007

To: the attention of April Alcorn and any other interested parties
Attached: Exhibits; A, B, & C

Hi April thank you very much for talking to me. As per our telephone conversation on June 7th, 2007 here is a list of some of my concerns.

Here's a brief history of my situation.

I was hired on August 7th 2006 as an Enrollment Counselor for the University of Phoenix. During the interviewing process I was told this was a salary position and there wasn't any mention that my salary would go down if I did not meet quotas for new applicants.

I understood that I was doing a good job at University of Phoenix. I was even told that my team was the first to hit our goals in recruitment of new students. See Exhibit A, page 1, paragraph 1, and page 2.

Over time, I came to realize that essentially my salary was based on enrollment quotas. For example, if I met a "goal", which in essence was quota of 4 new students per month, I was not would not be reprimanded. If I did better on the quota, I was told I would get a 20% increase in salary after 6 months. I also understand that there were bonus's for team's that enrolled the most new applicants. See Exhibit B page 1 and page 2.

Over time I realized there was a lot of pressure to meet quotas. On one occasion I had an applicant that I felt was not qualified. In speaking with my manager, she said, "get the application anyways, it doesn't matter, we need that student." She clearly implied that we needed those sales. There is a lot of pressure to meet sales quotas. See Exhibit A, page 1, paragraph 3.

I later came to realize that the Higher Education Act prohibits universities from using sales quotas for enrollment counselors.

Knowing that the process at the University of Phoenix is at minimum questionable, if not illegal, I am having a hard time doing the job the way my manager wants it done.

I feel that because of this that I am being retaliated against. For example, some of my applicants were given to other people in disregard to corporate policy. See Exhibit C. I am being asked to sign documents that I feel are untrue relating to my performance. My salary was also recently reduced.

In light of this situation, it is difficult for me to perform in this hostile environment. I am considering looking for another position, but this will take some time.

1

University of Phoenix—Chad McKinney   June 11, 2007

I am also considering legal action against the University if it does not immediately cease and desist this hostility. I am also demanding that my salary be increased to what it was previously and all back pay be paid back immediately.

If the University of Phoenix would like me to leave I will do that voluntarily under certain conditions. But as this has caused me financial harm, and stress, I would want a minimum of 4 months severance pay (at the old salary rate). In return, I would sign a release for any claims that I may have against the University.

I hope that you sincerely consider my situation and advise how the University would like to proceed?

Best Regards,

[Attached please see Exhibits]


Sincerely,
Chad McKinney

2

To: the attention of April Alcorn and any other interested parties
Exhibit A [1]

**Chad McKinney**

| | |
|---|---|
| **From:** | Barbara Keramati |
| **Sent:** | Tuesday, December 19, 2006 7:23 PM |
| **To:** | Amber Henry; Brianne Dani; Chad McKinney; Claire Buckley; Denise Brousseau; Erica Low; Heather Giordano; Jeabeth Garcia; Melissa Monte |
| **Cc:** | Kyan Flynn; Kim Savich |
| **Subject:** | Proud to be your Manager! |
| **Attachments:** | Team OSIRA 8 21 2006.xml |

**Team....I am very proud to be your manager....**I know you all worked really hard this month and whatever you didn't get for December went to January.  Our Budget has been changed from 40 to 27 this month...we have 33 on our PSL for this month.....Can you believe....we met our GOAL as a team!  We will be the first team in KM for the last five months to meet our Goal, all of you should should be very proud.  This is only the beginning, now that we have hit we can only go up from here.  Remember, students have to attend THREE nights or post THREE weeks in order to get START credit, which is what counts in the end.  Let's blow January out of the water.

**Our Budget is 48 lives.....**

Some of you have reviews coming up and need January to be BIG...so let's do it and stop talking about it.  Marvie's Team is 58 percent of PSL Goal for January.  I challenge the Rockstars to be 50 percent of 48 by Jan 3rd!

We have 10 on our PSL...where are all of the apins I keep hearing about...remember it's not there unless it's in APIN, REG or START status...

You guys know I am working really hard to help you guys out.  So please help me out by SCHED six students everyday.  It can be done.......New Years Resolutions...I will actually go to school and complete my degree.  Month of no excuses!

3/28/2007

Thanks again everyone,

## Check out last week: 12/11-12/15......

KUDOS TO CHAD MCKINNEY...CHAD YOU ARE MY HERO!!!!!!!!!  7 appointments and 6 apins..can it get any better than that?  Everyone call Chad at extension 34197 and ask him what he has done different!

KUDOS also to Melissa Monte for taking two apins and last week and this week and converting them into December Starts......

## LEVEL 1's are TAKING OVER SAN DIEGO!

## ROCK ON!

Microsoft Excel - Team OSIRA 8 21 2006.xml

File  Edit  View  Insert  Format  Tools  Data  Window  Help

Reply with Changes... End Review...

Arial  •  12  •  **B**  *I*  U  |  \$  %  ,  |  ⌐  •  ⌐  •  **A**  •

C23  =  25

## San Diego Manager's Team OSIRA

| | B | C | D | E | F | |
|---|---|---|---|---|---|---|
| 1 | | | | **San Diego Manager's Team OSIRA** | | |
| 2 | | | | | | |
| 3 | Your Team Name: The Rockstars | DEC | | Week End 12/11/06-12/15/06 | | |
| 4 | | | | | | |
| 5 | Rep Name | INTs | EC Level | Appointments | Goal | Appl |
| 6 | Amber Henry | AKH | 1 | 3 | 3.5 | |
| 7 | Chad McKinney | CDM | 1 | 7 | 3.5 | |
| 8 | Claire Buckley | CTB | 3 | 4 | 7.25 | |
| 9 | Denise Brousseau | DEB | 1 | 5 | 3.5 | |
| 10 | Erica Low | ELL | 2 | 4 | 6.25 | |
| 11 | Heather Giordano | HGG | 1 | 9 | 3.5 | |
| 12 | Jeabeth Garica | C2G | 2 | 1 | 6.25 | |
| 13 | Melissa Monte | MLM | 1 | 4 | 3.5 | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | Team Goals by EC Level | | | 37 | 37.25 | |
| 19 | Hit/Miss | | | EVEN | EVEN | |
| 20 | | | | | | |
| 21 | Budget for Month | 27 | | | | |
| 22 | Projected Starts for Month | 31 | | Anticipated Start Date for Month & App Rec'd Da | | |
| 23 | Total REG for Month | 25 | | | | |
| 24 | | | | | | |
| 25 | | | | Meets Expectations | | |
| 26 | | | | Below Meets Expectations | | |
| 27 | | | | | | |

◄ ► ►| \ Weekly Output / Expectations /

Ready

Start | Galaxy Desktop | Inbox - Microsoft Outlook | December 2006 starts | Microsoft Excel - 1

**Barbara Keramati, Enrollment Manager**

University of Phoenix  |  Axia College of University of Phoenix

San Diego Campuses |  3890 Murphy Canyon Dr.  |  San Diego, CA  92123

3/28/2007

Phone:  858-576-1287 ext. 34406 |  Fax:  858-966-1266 |  email: barbara.keramati@phoenix.edu

"It's not the years in your life that count. It's the life in your years."
   - *Abraham Lincoln*

In the

To: the attention of April Alcorn and any other interested parties
Exhibit B

**Chad McKinney**

| | |
|---|---|
| **From:** | Mechelle Bonilla |
| **Sent:** | Thursday, March 01, 2007 12:16 PM |
| **To:** | Davina Mendoza; Sarari Carmichael; Denise Brousseau; Chad McKinney; Bertha Castillo; Fran Beadles; Ryan Watson |
| **Subject:** | FW: March Madness - Fire Up Teams!!! |
| **Attachments:** | image005.jpg; image002.gif; image003.gif; image006.gif; March Madness 2007.ppt |

Okay everyone, we're ~~competing against~~ my old team South County and I know they'll be out to get us!! LET'S KICK THEIR BUTTS!! Get on those phones, schedule LOTS of appointments next week so we can get LOTS of app's and ECRFs!!! W~~E WILL WIN THIS!!!!~~et's show everyone who the new number one team...Downtown, El Cenro, & Palm Desert baby!!

~~If we beat South County next week, I'll throw in an additonal reward/prize...time off?~~ lunch? ~~We'll see~~!!

From: Kyan Flynn
Sent: Thu 3/1/2007 10:00 AM
To: SD MARKETING
Cc: Kim Savich; Alice Hallmann; Andrea Beltran; Carlyn Lindsten; James Neff; Jill Winter; Kim Eaken; Kyan Flynn; Mechelle Bonilla
Subject: March Madness - Fire Up Teams!!!



# March Madness is here San Diego!

It's a new Half (2), new Quarter, new Month, and New Teams!

### Let's get Fired Up!

Are you ready for some FUN????... San Diego March Madness 2007 is here ....Take a look at the rules to participate: Starting: **Monday March 5th to Friday March 30th**, your managers will run **weekly** your **TEAMS** average/EC results of **Appt. APIN. ECRF**!!!!!

Take a look at the attached spreadsheet: It is set up just like **"March Madness"** the final 4 (for all the sports fans out there)...You will be going neck to neck with other **TEAMS** for the week....whatever **TEAM** averages the most for that week in each bracket will be teamed up the following week.

# March Madness Experience:

- Create fun for yourself, your team and your students
- Week 1 Winners: Afternoon Snack Service
- Week 2 Winners: Breakfast Delivered (Full Service <u>or</u> Continental)
- Week 3 Winners: Pizza Party (Supreme <u>or</u> Cheese)
- Week 4 Winners: Grandiose Trophy, <u>or</u> Certificates of Achievement, <u>or</u> **FLOOR CALLS for ALL Campuses for 1 Week or Tier 1 for 3 days!!!!**

- \*Race to change **360** new students lives in March

Lace up those high-tops and get ready to sprint through March ....Fire Up!!!

**Kyan Flynn, MBA, Director of Enrollment**
University of Phoenix | Axia College
San Diego Campuses | 3890 Murphy Canyon Dr. | San Diego, CA 92123
Phone: 858-576-1287 ext. 34082 | Fax: 858-966-1145 |
Email: kyan.flynn@phoenix.edu

3/28/2007

To: the attention of April Alcorn and any other interested parties
Exhibit C

# Chad McKinney

| | |
|---|---|
| **From:** | Chad McKinney |
| **Sent:** | Wednesday, March 28, 2007 6:09 PM |
| **To:** | Mechelle Bonilla |
| **Subject:** | I have a question about these leads |

Hi Mechelle,

What happened to these leads?  Why did I not get App credit, and why were these leads taken from me?  Am I being punished?  I was sick on Monday.  When I had asked you to call and reschedule my appointments for Monday, I did not realize these would be taken from me.  These were sure things.  My month in April, salary, and Tuition Reimbursement are all adversely affected by these decisions.  I had only asked you to take care of this, not Alison Herring.  Thank you very much for your time Mechelle I look forward to hearing from you.

RUBEN DIAZ IRN:  1001170841
Cody Coleman IRN:  9007515958

Sincerely,

# Chad McKinney, Educational Counselor

University of Phoenix | Axia College of University of Phoenix

San Diego Campus | 3890 Murphy Canyon Road |

San Diego, CA 92123

phone (858) 966-1597 fax (858) 966-1196

email: Chad.Mckinney@phoenix.edu

**"Do not go where the path may lead, go instead where there is no path, and leave a trail."**

~Ralph Waldo Emerson

3/28/2007



Printed

3/28./2007

11:33











## General Lead Policy

All lead inquiries are to be entered / uploaded into Galaxy on the same day they are received. Due to the high volume of incoming leads and the pre-existing electronic duplicate check process in Galaxy, the National Qualifying Center (NQC) does not perform duplicate checks prior to transferring leads to Enrollment Counselors. Therefore, it is required that Enrollment Counselors check all leads received for duplicates prior to working with them. It is expected that Enrollment Counselors will attempt to contact all new leads within 24 working hours of their receipt. It is also expected that all phone calls and e-mails are returned within 24 working hours of receipt. Management reserves the right to move / transfer leads if not contacted in a timely manner.

Voice-to-voice contact with all new leads will first be attempted via the NQC for those campuses that are setup to receive NQC calls. The NQC will attempt to make voice-to-voice contact with all new leads for a period of 3 to 5 business days. After 5 business days, any lead that the NQC was unable to contact is released back to the campus (in NEW status) for distribution to Enrollment Counselors. All leads that were contacted by the NQC that were put into NFA and NQ statuses will remain in a designated holding tank. Any lead that was contacted by the NQC but did not become a transfer to an Enrollment Counselor (put into a SHOP status by the NQC) are also put into a designated holding tank.

**Determining Lead Ownership** – Regardless of how a lead should come to an Enrollment Counselor – be it via the National Qualifying Center (NQC), the Call Center (CC), a referral, a direct call, a lead transfer, a CEL, on paper, etc. – a DUP check <u>must</u> be performed in Galaxy using the criteria described on pages 5-9. If a duplicate / similar lead is found in the system under another Enrollment Counselor, whether at the same campus or another campus, the following rules will apply:

1. If the lead is in a contacted status other than APIN, REG, STRT, NSTR, or NSTA (such as SHOP, APPH, etc.) and there **has** been a documented attempt to contact or contact, notated in Galaxy within the past 21 calendar days, the lead will remain with the Enrollment Counselor who has already been working the lead, regardless of campus or modality. *(The Enrollment Counselor who received the newest lead, the duplicate lead that cannot be worked at this time, should place his/her lead in DUP status).*

2. If a new lead comes in to an Enrollment Counselor, and it can be proven that the lead came in by any means other than by way of referral, and that lead already exists in the database with another Enrollment Counselor AND that lead is in an APIN, REG, STRT, NSTR, or NSTA status, that lead will remain with the original Enrollment Counselor **unless** the following applies: If the APIN, REG, STRT, NSTR, or NSTA lead has no attempt to contact or contact documented in the Galaxy notes section from the current

Enrollment Counselor within the last 90 calendar days (from the date of the last note from that Enrollment Counselor in Galaxy), that lead will be reassigned to the Enrollment Counselor who most recently was assigned the lead. **(The "new" Enrollment Counselor should ask his/her manager to get the lead reassigned to him/her in Galaxy. The Enrollment Manager should contact the "previous" Enrollment Counselor's Manager to let him/her know the lead is being switched over, per policy, AND the Enrollment Manager should make note of the lead switch in Galaxy).** *\*\*Note: Leads should not be placed into APIN, REG, STRT, NSTR or NSTA, unless they meet the definitions outlined for each of the lead statuses on pages 3-5.*

3. If the lead is in a contacted status other than APIN, REG, STRT, NSTR, or NSTA (such as SHOP, APPH, etc.) and it can be proven that the lead came in by any means other than by way of referral, and there has **NOT** been a documented attempt to contact as notated in Galaxy within the past 21 calendar days, the lead stays with the new Enrollment Counselor who was most recently assigned the lead. **(The "new" Enrollment Counselor should ask his/her manager to contact the "previous" Enrollment Counselor's Manager to let him/her know the lead is being worked by the "new" Enrollment Counselor, per policy. The Enrollment Manager of the "previous" Enrollment Counselor should place the lead in DUP status).**

4. If the lead is in an uncontacted status (ATC, LM2, etc.), and it can be proven that the lead was assigned to an Enrollment Counselor by way of a "live" voice to voice transfer from the NQC (as documented by the NQC rep in Galaxy), the lead will remain with the Enrollment Counselor who received the NQC transfer. **(The "new" Enrollment Counselor should ask his/her manager to contact the "previous" Enrollment Counselor's Manager to let him/her know the lead is being worked by the "new" Enrollment Counselor, per policy. The Enrollment Manager of the "previous" Enrollment Counselor should place the lead in DUP status).**

5. If the lead is in an uncontacted status (ATC, LM2, etc.) and it can be proven that the lead came in by any means other than by way of referral, and there has **NOT** been a documented attempt to contact as notated in Galaxy within the past 10 calendar days, the lead stays with the new Enrollment Counselor who was most recently assigned the lead. **(The "new" Enrollment Counselor should ask his/her manager to contact the "previous" Enrollment Counselor's Manager to let him/her know the lead is being worked by the "new" Enrollment Counselor, per policy. The Enrollment Manager of the "previous" Enrollment Counselor should place the lead in DUP status).**

## Determining Lead Ownership

| Lead Status | Last Attempt to Contact/Contact Date | Lead Owned/Worked By: |
|---|---|---|
| ATC, LM, EM | < 10 calendar days | Current Counselor |
| ATC, LM, EM | > 10 calendar days | New Counselor |
| SHOP, APPH, SCHD, HSS, NOSH, NQ, NOPE, NFA, APPT, IMTG, | < 21 calendar days | Current Counselor |
| SHOP, APPH, SCHD, HSS, NOSH, NQ, NOPE, NFA, APPT, IMTG, | > 21 calendar days | New Counselor |
| APIN, NSTA, NSTR, REG, STRT | < 90 calendar days | Current Counselor |
| APIN, NSTA, NSTR, REG, STRT | > 90 calendar days | New Counselor |

**Local Campuses Enrolling Online and/or Axia students** – Local campuses that are approved to enroll Online and/or Axia students should follow all policies within this guide. *Local Enrollment Counselors do __NOT__ need to "oil/gas" leads to Online or Axia until it is determined that the prospective student is actually going to enroll and it is documented in Galaxy.* "Oil/gas" canning a lead does not "protect" a lead in any way, as lead ownership is determined by the policies outlined above.

**Defining 'Contacted' Leads** – Documented *contact* requires that the lead be in a contacted status with appropriate notes from a conversation posted to Galaxy. A change in status on a lead alone, without appropriate notes in Galaxy documenting that conversation, does not constitute a contacted lead. See pages 3-5 for a list of 'contacted' statuses.

**Defining 'Uncontacted' Leads** – Defined as a lead where no contact has been made by either phone conversation or by way of an e-mail exchange between the Enrollment Counselor and the prospect, and where no documentation exists to prove the contact had been made (the actual e-mail exchange, notes in Galaxy, etc.). See pages 3-5 for a list of 'uncontacted' statuses.

**Leads Received on the Same Day** – Some leads enter our Galaxy system on the same day, which creates issues in determining lead assignment. Lead assignment in these cases will be determined by who made the first contact as noted in the history notes section of Galaxy and with an appropriate contacted status on the

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

THE UNITED STATES DISTRICT COURT SOUTHERN    District of    California

Chad McKinney, Pro Se

**SUMMONS IN A CIVIL CASE**

V.

APOLLO GROUP INC., UNIVERSITY OF PHOENIX, a Corporation, , MECHELLE BONILLA, an
Enrolment Manager at UNIVERSITY OF PHOENIX, KYAN FLYNN, Director of Enrollment at
UNIVERSITY OF PHOENIX, APRIL ALCORN, an Employee Relations Consultant at UNIVERSITY OF
PHOENIX,CARLYN LINDSTEN, Associate Director of Enrollment at UNIVERSITY OF PHOENIX

CASE NUMBER:

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Chad McKinney, Pro Se
6266 Madeline Street Apt. No. 61
San Diego, Ca 92115-5630

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

W. SAMUEL HAMRICK, JR.

JAN 1 5 2008

J. PARIS

CLERK                                                          DATE

(By) DEPUTY CLERK

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and Complaint was made by me | DATE | 1/31/08 |
| NAME OF SERVER  R.T. Hansell | TITLE | R.P.S. |

Check one box below to indicate appropriate method of service

☐   Served personally upon the defendant. Place where served:

☐   Left copies thereof at the defendant's dwelling, house or usual place of abode with a person of suitable age and discretion then residing therein:

       Name of person with whom the summons and complaint were left: _____

☐   Return unexecuted:

☒   Other (specify): Served Apollo Group, Inc. by leaving copies with Ellen Bowens (Administration).

**STATEMENT OF SERVICE FEES**

| TRAVEL | | SERVICES | TOTAL $ 45 | |
|---|---|---|---|---|

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service is true and correct.

Executed on:  2/12/08
              Date

Signature of Server
2445 Morena Blvd. Ste 206
Address of Server   S.D. Ca 92110

**NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE**

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT. COUNSEL FOR THE PLAINTIFF HAS RECEIVED A CONSENT FORM.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOULD BE COMMUNICATED SOLELY TO THE CLERK OF COURT. ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE TO WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGEMENTS OF THE U.S. MAGISTRATES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

::ODMA\PCDOCS\WORDPERFECT\14443\1 May 5, 1999 (11:34am)

**EXHIBIT C**



## APOLLO GROUP, INC.

UNIVERSITY OF PHOENIX
INSTITUTE FOR PROFESSIONAL DEVELOPMENT
COLLEGE FOR FINANCIAL PLANNING
WESTERN INTERNATIONAL UNIVERSITY

July 17, 2007

Chad McKinney
6266 Madeline St. #61
San Diego, CA  92115

Dear Mr. McKinney,

Our records indicate that you have not reported to work since Friday, July 13, 2007.  Your failure to report to work has resulted in you being on an unauthorized leave of absence.  Therefore, we expect you will return to work no later than Thursday, July 19, 2007 at your regularly scheduled work time.  Failure to report to work by the designated date will leave us no other alternative but to accept your voluntary resignation.

If you have any questions, please do not hesitate to contact me at (480) 557-1086.

Sincerely,

April Alcorn
Employee Relations Consultant
Apollo Group, Inc.

**EXHIBIT D**





# APOLLO GROUP, INC.

UNIVERSITY OF PHOENIX
INSTITUTE FOR PROFESSIONAL DEVELOPMENT
COLLEGE FOR FINANCIAL PLANNING
WESTERN INTERNATIONAL UNIVERSITY

July 19, 2007

Chad McKinney
6266 Madeline St. #61
San Diego, CA  92115

Dear Mr. McKinney,

Our records indicate that you have not reported to work since July 13, 2007.  Your failure to report to work has resulted in you being on an unauthorized leave of absence.  A letter was sent to your home on July 17, 2007, expecting you to return to work no later than Thursday, July 19, 2007 at your regularly scheduled work time.

You failed to report to work at the designated date and time.  Consistent with our policy, the Company has chosen to separate your employment effective July 19, 2007.

If you have any questions, please do not hesitate to contact me at (480) 557-1086.

Sincerely,

April Alcorn
Employee Relations Consultant
Apollo Group, Inc.

# EXHIBIT E



## APOLLO GROUP, INC.

UNIVERSITY OF PHOENIX
INSTITUTE FOR PROFESSIONAL DEVELOPMENT
COLLEGE FOR FINANCIAL PLANNING
WESTERN INTERNATIONAL UNIVERSITY

July 19, 2007

Chad McKinney
6266 Madeline St. #61
San Diego, CA 92115

Dear Mr. McKinney,

Thank you for bringing your workplace concerns to our attention. The Apollo Group, Inc. is committed to ensuring employees are treated fairly. Please be advised that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations. In the event that you have any questions or concerns relating to this situation, please feel free to contact me at (480) 557-1086.

Sincerely,

April Alcorn
Employee Relations Consultant
Apollo Group, Inc.

**EXHIBIT F**

CHAD MCKINNEY
6266 MADELINE STREET #61
SAN DIEGO CA 92115-5630
(619) 634-3566
Bar#          0

## IN THE UNITED STATES DISTRICT COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| CHAD MCKINNEY | Plaintiff | NO. 07CV2373WQHCAB |
| vs. | | AFFIDAVIT OF SERVICE |
| APOLLO GROUP INC., ET AL | Defendant | |

**STEVE INEICH, A.C.P.S.**            , being duly sworn, states: that he/she is duly qualified to serve process in this cause, having been so appointed by the court, that he/she received the following document(s) in this action:

SUMMONS, COMPLAINT & COVER SHEET

from CHAD MCKINNEY on 02/13/08, attorney(s) for the PLAINTIFF;
that he/she personally served the same upon the party/parties in the manner named below:

**NAME:** APRIL ALCORN

**DATE & TIME:** 02/26/08 1:33 PM
**PLACE :**     4615 EAST ELWOOD STREET PHOENIX, AZ  85040
**MANNER:** By leaving ONE true copy(ies) of the above documents with REBECCA SPRINGFIELD,
          SECURITY, AUTHORIZED.
          WORK: UNIVERSITY OF PHOENIX
          Described as female, age 50, CAUC, 5ft. 7in. tall, 150lbs., BROWN eyes, BLACK hair,

**Statement of Costs**

| | |
|---|---|
| Service | $ 16.00 |
| Mileage | $ 25.00 |
| Document Prep | $ 11.00 |
| | $   .00 |
| | $   .00 |
| | $   .00 |
| | $   .00 |
| | $   .00 |
| Total | $ 52.00 |

STEVE INEICH, A.C.P.S. Process Server registered in MARICOPA County

Subscribed and sworn to before me on _____ 02/27/08

OFFICIAL SEAL
PATRICIA PENROD
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires June 14, 2009

*Patricia Chlebana*
          Notary Public

Frontier Private Process Service 1145 West McDowell Road Phoenix, AZ 85007 (602) 258-0022
10802285-01  4783          10102

**EXHIBIT G**

# Chad McKinney

**From:**  April Alcorn
**Sent:**  Thursday, June 07, 2007 3:45 PM
**To:**  Chad McKinney
**Subject:** RE: FWW/DML Chad McKinney

Chad,

If you have workplace concerns you would like to bring forward, please feel free to contact me.

*Thank you!*
*April*

---

**From:** Mechelle Bonilla
**Sent:** Thursday, June 07, 2007 3:43 PM
**To:** April Alcorn
**Cc:** Chad McKinney; Mechelle Bonilla
**Subject:** FWW/DML Chad McKinney

Hi April,

I have approached Chad again today, June 7, 2007 to have him sign the final written warning, he has again refused to sign it. Kyan Flynn, my director will be at the campus later today to be of witness to his refusal.

Chad has also requested that I inform HR that he will "sign a voluntary resignation that will hold UOP and all affiliates harmless from any claims that he might have with the condition of a four month's pay severance package. Consultation has advised Chad to offer the prior statement versus taking legal action based upon prior ethical discrepancies he has with UOP".

Please let me know how to handle the situation from this point forward. Thank you.

**MECHELLE BONILLA,** Enrollment Manager
University of Phoenix | Axia College of University of Phoenix
San Diego Campus | 1230 Columbia Street, Ste 870 | San Diego, CA 92101
phone (858) 576-1287 ext 34514 fax (858) 966-1269 | mechelle.bonilla@phoenix.edu

Click here to enroll for an Associates Degree!

Click here to enroll for Bachelor and Master Degrees!

Click Here for Financial Aid Pin Number

Catalog

6/7/2007

**EXHIBIT H**

EMPLOYMENT DEVELOPMENT DEPT
ORANGE COUNTY ADJUDICATION CTR
P.O. BOX 66000
ANAHEIM          CA 92816

**EDD** Employment
Development
Department
State of California

### N O T I C E    O F    D E T E R M I N A T I O N / R U L I N G

DATE MAILED          08/16/07
BENEFIT YEAR BEGAN 07/15/07

C D MCKINNEY                    0060
6266 MADELINE ST APT61
SAN DIEGO          CA 92115

EDD TELEPHONE NUMBERS:
ENGLISH        1-800-300-5616
SPANISH        1-800-326-8937
CANTONESE      1-800-547-3506
MANDARIN       1-866-303-0706
VIETNAMESE     1-800-547-2058
TTY            1-800-815-9387

SSA NUMBER        321 84 8805

YOU ARE NOT ELIGIBLE TO RECEIVE BENEFITS UNDER CALIFORNIA UNEMPLOYMENT INSURANCE CODE SECTION 1256 BEGINNING 07/15/07 AND CONTINUING UNTIL YOU RETURN TO WORK AFTER THE DISQUALIFYING ACT AND EARN $1725.00 OR MORE IN BONA FIDE EMPLOYMENT, AND YOU CONTACT THE ABOVE OFFICE TO REOPEN YOUR CLAIM.

YOU WERE DISCHARGED FROM YOUR LAST JOB WITH APOLLO GROUP INC BECAUSE YOU WERE ABSENT WITHOUT PERMISSION. AFTER CONSIDERING THE AVAILABLE INFORMATION, THE DEPARTMENT FINDS THAT YOU DO NOT MEET THE LEGAL REQUIREMENTS FOR PAYMENT OF BENEFITS. SECTION 1256 PROVIDES - AN INDIVIDUAL IS DISQUALIFIED IF THE DEPARTMENT FINDS HE VOLUNTARILY QUIT HIS MOST RECENT WORK WITHOUT GOOD CAUSE OR WAS DISCHARGED FOR MISCONDUCT FROM HIS MOST RECENT WORK. SECTION 1260A PROVIDES - AN INDIVIDUAL DISQUALIFIED UNDER SECTION 1256 IS DISQUALIFIED UNTIL HE/SHE, SUBSEQUENT TO THE DISQUALIFYING ACT, PERFORMS SERVICES IN BONA FIDE EMPLOYMENT FOR WHICH HE/SHE RECEIVES REMUNERATION EQUAL TO OR IN EXCESS OF FIVE TIMES HIS OR HER WEEKLY BENEFIT AMOUNT.

YOU ARE NOT ELIGIBLE TO RECEIVE BENEFITS UNDER CALIFORNIA UNEMPLOYMENT INSURANCE CODE SECTION 1253C BEGINNING 07/15/07 AND ENDING 07/28/07  (02 WEEKS).

YOU HAVE PLACED LIMITS ON YOUR WORK BECAUSE YOU ARE ON VACATION OR LEAVE OF ABSENCE. AFTER CONSIDERING AVAILABLE INFORMATION, THE DEPARTMENT FINDS THAT YOU DO NOT MEET THE LEGAL REQUIREMENTS FOR PAYMENT OF BENEFITS. SECTION 1253C PROVIDES - AN INDIVIDUAL IS ELIGIBLE FOR BENEFITS IN A WEEK ONLY IF THE DEPARTMENT FINDS HE WAS ABLE TO WORK AND AVAILABLE FOR WORK.

YOU ARE NOT ELIGIBLE TO RECEIVE BENEFITS UNDER CALIFORNIA UNEMPLOYMENT INSURANCE CODE SECTION 1253E BEGINNING 07/15/07 AND ENDING 07/21/07  (01 WEEKS).

**EDD** Employment
Development
Department
State of California

YOU DID NOT LOOK FOR WORK FROM 07/15/07 TO 07/21/07. SECTION 1253E
PROVIDES - AN INDIVIDUAL IS ELIGIBLE FOR BENEFITS IN A WEEK ONLY IF THE
DEPARTMENT FINDS HE HAS SOUGHT WORK AS DIRECTED BY THE DEPARTMENT.

APPEAL:

YOU HAVE THE RIGHT TO FILE AN APPEAL IF YOU DO NOT AGREE WITH ALL OR PART
OF THIS DECISION.

TO APPEAL, YOU MUST DO ALL OF THE FOLLOWING:

A. COMPLETE THE ENCLOSED APPEAL FORM (DE1000M) OR WRITE A LETTER STATING
THAT YOU WANT TO APPEAL THIS DECISION. IF YOU WRITE A LETTER TO APPEAL,
EXPLAIN THE REASON WHY YOU DO NOT AGREE WITH THE DEPARTMENT'S DECISION.
WRITE YOUR SOCIAL SECURITY NUMBER ON EACH DOCUMENT YOU SUBMIT TO THE
DEPARTMENT. (TITLE 22, CALIFORNIA CODE OF REGULATIONS (CCR), SECTION
5008).

B. MAIL THE DE1000M OR YOUR LETTER TO THE ADDRESS OF THE OFFICE LISTED ON
THE FIRST PAGE OF THIS DECISION.

C. FILE YOUR APPEAL WITHIN TWENTY (20) DAYS OF THE MAIL DATE OF THIS
NOTICE OR NO LATER THAN 09/05/07.

YOUR HANDBOOK, "A GUIDE TO BENEFITS AND EMPLOYMENT SERVICES", GIVES MORE
INFORMATION ABOUT APPEALS. IF YOU DO NOT HAVE A HANDBOOK, CONTACT THE
OFFICE LISTED ON THE FIRST PAGE OF THIS NOTICE.

APPEAL INFORMATION:

WHEN YOUR APPEAL IS RECEIVED, YOUR CASE WILL BE REVIEWED. IF THE DECISION
REMAINS THE SAME, WE WILL SEND YOUR APPEAL TO THE OFFICE OF APPEALS. IF YOU
APPEAL AFTER THE 20 DAYS, YOU MUST INCLUDE THE REASON FOR THE DELAY. THE
ADMINISTRATIVE LAW JUDGE WILL DETERMINE WHETHER YOU HAD GOOD CAUSE FOR THE
DELAY. IF THE ADMINISTRATIVE LAW JUDGE DETERMINES YOU DID NOT HAVE GOOD
CAUSE FOR SUBMITTING YOUR APPEAL LATE, YOUR APPEAL WILL BE DISMISSED.

THE OFFICE OF APPEALS WILL SEND YOU A LETTER WITH THE DATE, PLACE, AND TIME
OF YOUR HEARING AND A PAMPHLET EXPLAINING APPEAL HEARING PROCEDURES. AT
THE HEARING, THE ADMINISTRATIVE LAW JUDGE WILL LISTEN TO YOU, EXAMINE THE
FACTS, AND MAKE A DECISION. YOU MAY HAVE A REPRESENTATIVE OR SOMEONE ELSE
HELP YOU.

IF YOU ARE CLAIMING CONTINUING BENEFITS:

WHILE YOU WAIT FOR THE ADMINISTRATIVE LAW JUDGE'S DECISION, YOU MUST
CONTINUE TO MAIL YOUR CLAIM FORMS TO THE EDD. IF YOU DO NOT RECEIVE CLAIM
FORMS OR A FORM FROM THE OFFICE OF APPEALS, CONTACT THE OFFICE LISTED ON
THE FIRST PAGE OF THIS NOTICE. IF THE ADMINISTRATIVE LAW JUDGE DECIDES YOU
ARE ELIGIBLE FOR BENEFITS; WE CAN ONLY PAY BENEFITS IF CLAIM FORMS WERE
RECEIVED FOR THAT WEEK.

OTHER SERVICES: CONTACT EDD FOR INFORMATION ABOUT (1) JOB REFERRALS,
(2) DISABILITY INSURANCE, (3) OTHER EDD SERVICES (4) SERVICES OFFERED BY

**EXHIBIT I**

Case Number: **2190645**

CHAD D MCKINNEY
6266 MADELINE ST APT61
SAN DIEGO, CA 92115-0000



## CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD

### SAN DIEGO OFFICE OF APPEALS
3517 Camino Del Rio South, #310
SAN DIEGO CA 92108

**(619) 521-3300**

| | |
|---|---|
| CHAD D MCKINNEY<br>SSN: 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<br>Claimant-Appellant<br><br>APOLLO GROUP, INC.<br>c/o CORPORATE COST CONTROL INC<br>Account No: 280-0427<br>Employer | Case No. **2190645**<br><br>Issue(s): 1030/32, 1256<br><br>Date Appeal Filed: 08/22/2007<br><br><br>EDD:  0060   BYB:  07/15/2007 |

**Date and Place of Hearing(s):**
(1)  10/16/2007    San Diego

**Parties Appearing:**
Claimant

## DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below.  See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

**Catriona M. Miller**, Administrative Law Judge

Date Mailed: OCT 2 9 2007

Case No.: 2190645                          **San Diego Office of Appeals**
CLT/PET:  Chad D. McKinney                 ALJ:  Catriona M. Miller
Parties Appearing:  Claimant
Parties Appearing by Written Statement:  None

---

REV

## ISSUE STATEMENT

The claimant appealed from a determination disqualifying the claimant for unemployment benefits under Unemployment Insurance Code section 1256. A ruling held the employer's reserve account was not subject to charges. The issue in this case is whether the claimant was discharged for misconduct connected with the most recent work.

## STATEMENT OF FACTS

The claimant was most recently employed as an educational counselor for about 11 months, last earning approximately $35,000 per year.  He last worked on July 13, 2007, and was discharged under the following circumstances.

During the claimant's last day of work, he was offered a leave of absence, due to stress relating to an allegedly hostile work environment.  The claimant indicated that he would consider that option.  The claimant notified his employer on July 13, 2007, that he would be taking a 10 day leave of absence, and returning to work July 26, 2007.  He received no reply from his employer, and was not told that he would be fired if he took the leave of absence.  The claimant provided a personal e-mail contact in case of any questions.  The claimant received no e-mails from the employer.

The claimant went out of town during his leave of absence.  When he returned on July 23, 2007, he received two Fed-EX letters, dated July 17 and July 19, 2007, indicating that the claimant was on an unauthorized leave of absence, and notifying the claimant that he had been terminated from employment.  The claimant felt that the termination was retaliatory against the claimant for alleging a hostile work environment.  Accordingly, he had no further communication with the employer.

The claimant had no prior warnings for the same or similar conduct.  The employer protest letter indicated that the claimant failed to return to work following a leave of absence, but in its July 19, 2007 termination letter, indicated that the claimant was never given permission to be on a leave of absence.

2190645-2                                  2

## REASONS FOR DECISION

An individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. (Unemployment Insurance Code, section 1256.)

The employer's reserve account may be relieved of benefit charges if the claimant was discharged for misconduct. (Unemployment Insurance Code, sections 1030 and 1032.)

"Misconduct connected with the work" is a substantial breach by the claimant of an important duty or obligation owed the employer, wilful or wanton in character, and tending to injure the employer. (Precedent Decision P-B-3, citing *Maywood Glass Co. v. Stewart* (1959) 170 Cal.App.2d 719.)

On the other hand, mere inefficiency, unsatisfactory conduct, poor performance as the result of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good faith errors in judgment or discretion are not misconduct.

The employer has the burden of proving misconduct. (*Prescod v. California Unemployment Insurance Appeals Board* (1976) 57 Cal.App.3d 29.)

In this case, the weight of the evidence indicated that the claimant believed he was on an authorized leave of absence. Given the lack of prior warning, and the lack of communication from the employer to the claimant regarding the leave of absence, it is concluded that the claimant was discharged for reasons other than misconduct connected with the most recent work. Accordingly, he is not disqualified for benefits under code section 1256, and the employer's reserve account is subject to benefit charges.

## DECISION

The department determination and ruling are reversed. The claimant is not disqualified for benefits under code section 1256. Benefits are payable, provided the claimant is otherwise eligible. The employer's reserve account is subject to benefit charges.

PAS: pm

CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD



### SAN DIEGO OFFICE OF APPEALS
3517 Camino Del Rio South, #310
SAN DIEGO CA 92108

(619) 521-3300

CHAD D MCKINNEY
SSN: 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
Claimant-Appellant

Case No. **2190646**

Issue(s): 1253(c), 1253(e)

Date Appeal Filed: 08/22/2007

EDD:  0060   BYB:  07/15/2007

**Date and Place of Hearing(s):**
(1)  10/16/2007    San Diego

**Parties Appearing:**
Claimant

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below.  See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

Catriona M. Miller, Administrative Law Judge

Date Mailed: OCT 2 9 2007.

·Case No.: **2190646**                  **San Diego Office of Appeals**
CLT/PET:  Chad D. McKinney          ALJ:  Catriona M. Miller
Parties Appearing:  Claimant
Parties Appearing by Written Statement:  None

---

## ISSUE STATEMENT

The claimant appealed from a determination that held the claimant not eligible for benefits under Unemployment Insurance Code section 1253(e) for the week ending July 21, 2007 and not eligible for benefits under code section 1253(c) for the two weeks ending July 28, 2007. The issues in this case are:

    (1)    Whether the claimant conducted a search for suitable work in accordance with the department's reasonable instructions; and

    (2)    Whether the claimant was able and available for work.

## STATEMENT OF FACTS

The claimant was most recently employed as an educational counselor for about 11 months, last earning approximately $35,000 per year.  He last worked on July 13, 2007, and was discharged under the following circumstances.

During the claimant's last day of work, he was offered a leave of absence, due to stress relating to an allegedly hostile work environment.  The claimant indicated that he would consider that option.  The claimant notified his employer on July 13, 2007, that he would be taking a 10 day leave of absence, and returning to work July 26, 2007.  He received no reply from his employer, and was not told that he would be fired if he took the leave of absence.  The claimant provided a personal e-mail contact in case of any questions.  The claimant received no e-mails from the employer.

The claimant went out of town during his leave of absence.  When he returned on July 23, 2007, he received two Fed-EX letters, dated July 17 and July 19, 2007, indicating that the claimant was on an unauthorized leave of absence, and notifying the claimant that he had been terminated from employment.  The claimant felt that the termination was retaliatory against the claimant for alleging a hostile work environment.  Accordingly, he had no further communication with the employer.

The claimant had no prior warnings for the same or similar conduct.  The employer protest letter indicated that the claimant failed to return to work

2190646-2                                    2

following a leave of absence, but in its July 19, 2007 termination letter, indicated that the claimant was never given permission to be on a leave of absence.

The claimant filed a claim for unemployment insurance benefits on July 24, 2007. He was able to work that week, and ready and willing to accept immediate full-time employment. He told the department that he last worked on July 13, 2007, so his claim effective date was July 15, 2007. The claimant did not look for work during the week ending July 21, 2007, as he believed he was still employed during that week. Likewise, he was not able and available for employment that week, as he was already on a leave of absence, and so believed he was employed.

<u>REASONS FOR DECISION</u>

A claimant is eligible to receive benefits with respect to any week only if he or she conducted a search for suitable work in accordance with specific and reasonable instructions of a public employment office. (Unemployment Insurance Code, section 1253(e).)

A claimant is eligible to receive benefits with respect to any week only if the claimant was able to work and available for work for that week. (Unemployment Insurance Code, section 1253(c).)

The term "able to work" requires only that a claimant be physically able to seek, obtain and perform services in gainful employment. (Precedent Decision P-B-180.)

In *Sanchez v. California Unemployment Insurance Appeals Board* (1977) 20 Cal.3d 55, the California Supreme Court held that availability for work within the meaning of section 1253(c) of the Unemployment Insurance Code "requires no more than (1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment."

In this case, because the claimant did not look for work during the week ending July 21, 2007, he is not eligible for benefits under code section 1253(e) for that week. Because he was not able and available for that week, he is also ineligible for benefits under code section 1253(c) for that week. However, because the claimant was physically able to work, and was ready and willing to accept immediate full-time employment during the week ending July 28, 2007, he is not ineligible for benefits under code section 1253(c) for that week.

## DECISION

The department determination is modified.  The claimant is ineligible for benefits under code section 1253(e) and 1253(c) for the week ending July 21, 2007. Benefits are denied for that week.  The claimant is not ineligible for benefits under code section 1253(c) for the week ending July 28, 2007.  Benefits are payable for that week, provided the claimant is otherwise eligible.

PAS: pm

 **CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD**

## NOTICE TO PARTIES

**Board Appeal**
If the enclosed decision is unfavorable, you may appeal it to the California Unemployment Insurance Appeals Board. The board generally will decide the case based on the record of the hearing before the administrative law judge, without a new hearing.

Send your board appeal in writing. You **must** include your name and address, the name and social security number of any claimant who is a party, and your account number if you are an employer. If a representative files your board appeal, it must include the representative's name and address. You **may** include other information such as your telephone and fax numbers, your e-mail address, the case number of the administrative law judge's decision, and a brief statement of your reasons.

Sending a timely board appeal is the only requirement to obtain a board review and decision in your case. You may also request a copy of the record, submit written argument, or apply to submit more evidence. If you do so, it may take more time to process your case. We will send you information about these additional procedures upon request or if a board appeal is filed.

**New Hearing Request**
If the enclosed decision is unfavorable, **and you did not appear in a hearing, or you withdrew your appeal**, you may request a new hearing and decision in your case. You **must** make your request, and specify your reasons, in writing. If warranted by your request, a hearing will be scheduled before an administrative law judge who will decide whether there is good cause to grant your request.

**Deadline and Address**
You **must** send your board appeal or new hearing request **within 20 calendar days** after the enclosed decision was sent to you. Send it to:

CUIAB – San Diego Office of Appeals
3517 Camino Del Rio South, #310
San Diego, CA  92108-4027
Phone: (619) 521-3300  Fax: (619) 521-3334

If you miss the deadline, you **must** include the reasons for your delay. A late board appeal or new hearing request will be dismissed or denied unless good cause is found for the delay.

**Claim Forms**
If you are the claimant and you are still unemployed or disabled, you **must** file claim forms while your case is pending as required by EDD. If you do not have claim forms, contact EDD.

**Governing Procedure**
This notice gives general information. The governing procedure is in the rules of the California Unemployment Insurance Appeals Board, Title 22, California Code of Regulations, Sections 5000-5200, available on the Internet at http://ccr.oal.ca.gov, or from the Office of Appeals without charge.

-Versión en español en el dorso-

CU