1  Christy D. Joseph (#136785)
   cjoseph@swlaw.com
2  Nathan W. Hicks (#236269)
   nhicks@swlaw.com
3  SNELL & WILMER L.L.P.
   600 Anton Boulevard, Suite 1400
4  Costa Mesa, CA 92626-7689
   Telephone: (714) 427-7000
5  Facsimile: (714) 427-7799

6

7  Attorneys for The University of Phoenix, Inc.

8        UNITED STATES DISTRICT COURT – SOUTHERN DISTRICT OF

9                                CALIFORNIA

10

11  CHAD MCKINNEY, an individual,          CASE NO. 07-CV-2373 WQH CAB

12             Plaintiff,                  **DECLARATION OF NATHAN W. HICKS IN SUPPORT OF THE**
13  v.                                     **UNIVERSITY OF PHOENIX, INC.'S MOTION TO DISMISS**
14  APOLLO GROUP, INC.,                    **PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE MOTION FOR**
    UNIVERSITY OF PHOENIX, a               **MORE DEFINITE STATEMENT**
15  Corporation, MECHELLE
    BONILLA, an Enrollment Manager         **[FRCP 12(b)(6); 12(e).]**
16  at UNIVERSITY OF PHOENIX,
    KYAN FLYNN, Director of                **NO ORAL ARGUMENT, UNLESS**
17  Enrollment at UNIVERSITY OF            **REQUESTED BY THE COURT**
    PHOENIX, APRIL ALCORN, an
18  Employees Relations Consultant at
    UNIVERSITY OF PHOENIX,
19  CARLYN LINDSTEN, Associate             Date:  October 20, 2008
    Director of Enrollment at              Time:  11:00 AM
20  UNIVERSITY OF PHOENIX                  Courtroom: 4
                                           Judge: Hon. William Q. Hayes
21             Defendants
                                           DATE OF FILING: December 19, 2007
22

23

24

25

26

27

28

9058923

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

I, Nathan W. Hicks, declare and state as follows:

1.    I am an attorney licensed to practice law before all courts of the State of California and I am a member of the law firm of Snell & Wilmer, attorneys of record for defendant The University of Phoenix, Inc. in this matter. I have personal knowledge of the matters set forth in this declaration, and if called upon as a witness, I could competently testify to them.

2.    On or about October 18, 2007, plaintiff, Chad McKinney ("McKinney"), filed a Notice of Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging Apollo Group, Inc. engaged in retaliation against him in violation of Title VII of the Civil Rights Act of 1964, as amended. On November 9, 2007, the EEOC sent a Dismissal and Notice of Rights in response to McKinney's Charge. True and correct copies of McKinney's Charge and the EEOC's Notice of Dismissal as obtained from the EEOC are attached as Exs. 1 and 2.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 29, 2008                    s/ Nathan Hicks
                                          Nathan W. Hicks

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# EXHIBIT 1

Exhibit 1 Page 1

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Mr. Chad D. McKinney
6266 Madeline Street, Apt. 61
San Diego, CA 92115

From: Equal Employment Opportunity Commission
401 'B' Street, Suite 1550
San Diego, CA 92101

# COPY

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2007-00775 | Roger Owen | (619) 557-7235 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ X ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Raul Green_
Raul Green, Supervisor Local Office

11/9/2007
*(Date Mailed)*

Enclosure(s)

cc:    Apollo Group

Exhibit 1 Page 2

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 488-2007-00775<br>and EEOC |

| | State or local Agency, if any | | |
|---|---|---|---|

| Name (Indicate Mr., Ms., Mrs.)<br>**Mr. Chad D. Mckinney** | Home Phone (Incl. Area Code)<br>**(619) 634-3566** | Date of Birth<br>**03-29-1981** |
|---|---|---|

Street Address                City, State and ZIP Code
**6266 Madeline St., #61, San Diego, CA 92115**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**APOLLO GROUP** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(480) 557-1280** |
|---|---|---|

Street Address                City, State and ZIP Code
**4615 E. Elwood Street, Phoenix, AZ 85040**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address                City, State and ZIP Code

---

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-07-2006**   Latest **07-19-2007**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s).):

1. ( See attached six page Statement of Facts )

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| ⟨10/18/2007⟩  ⟨signature⟩<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Exhibit 1 Page 3

## Statement of Facts

1) I was hired on August 7th 2006 as an Enrollment Counselor for the University of Phoenix. I was interviewed by Kyan Flynn, Barbara Keramati, and Andrea Beltran.

2) During the interviewing process I was told this was a salary position and there was not any mention that my salary would go down if I did not meet quotas for new applicants.

3) It was communicated to me that my salary could increase if I were to successfully meet the goals my employment matrix outlined. These goals were not completely outlined for me at that time, however Kyan Flynn communicated to me that laborious efforts, dedication, and job competency were required for an increase in salary to take effect.

4) After two months I realized that my salary was based on enrollment quotas.

5) There is a lot of pressure to meet sales quotas via harassing emails, vocalization of threats, and contests. Rewards, bonuses [of monetary value], and/or special treatment are given to those who enroll the most students.

6) The Higher Education Act prohibits universities from using sales quotas for enrollment counselors.

7) Though I often met my weekly "Osira" goals of; 3.5 appointments, 1.5 applications, and 2 referrals, it was often communicated to me that this was not enough. In several one on one meetings with my first manager Barbara Keramati I was reminded that I was a student with the University and that my tuition reimbursement would be revoked should I fail to meet my "goal" of enrolling at least four students per month, she stated to me several times that she did not wish for that to occur.

8) On the 19th of December, 2006 it was communicated via an email written by my manager Barbara Keramati and forwarded to the Directors of the company; Kyan Flynn and Kim Savich that my job performance was exceptional "kudos to Chad McKinney...Chad you are my hero!!!!!!!! 7 appointments and 6 apins [applications]..can it get any better that that?" Other employees were even encouraged to contact me for advice on how to improve their performance.

9) On a multitude of occasions from the end of February until I was terminated I received countless

Exhibit 1 Page 4

harassing emails from the Associate Director of
Enrollment; Carlyn Lindsten.  These emails;
threatened reductions in pay if enrollment quotas
were not met, questioned the level of dedication I
afforded to my job duties and if I was truly serious
about my career with the company, why quotas for
student enrollment were not met, and asked to "step
it up" in condescending threatening fashion.  These
types of emails were sent out almost daily, and
sometimes multiple times in one day.

10)  I felt the enrollment practices of this company
presented an ethical dilemma and decided to apply
for a position as an Academic Counselor in the
Academic department.  I was also encouraged to do so
by my then manager Barbara Keramati via email and
one on one conversation.  In late February I
submitted my resume to Thomas Graneau Jr.

11)  At the end of February or the beginning of March I
was transferred from the Kearny Mesa campus to the
downtown campus by Associate Director of Enrollment
Carlyn Lindsten after voicing my concerns with the
decision to her.

12)  I was granted an interview for the Academic position
and met with Thomas Graneau Jr. and Colleen Bjornson
in early March.

13)  I was not selected for the position of Academic
Counselor.

14)  Although Mechelle Bonilla was not my manager for the
month of February she pressured me to sign a
"Discussion Memo" that stated my performance fell
below expectations of; appointments seen,
applications, and students whom started class and
that "failure to improve your performance may result
in further disciplinary action up to and including
termination."

15)  Some of my applicants were given to other people in
disregard to corporate policy on the 26th of March,
2007 because I questioned the legality of the
university's enrollment practices in a previous
conversation in early March with my second manager;
Mechelle Bonilla.

16)  My "lead base" [number of students in my data base
available for contact] was reduced drastically by my
manager Mechelle Bonilla from March until I was
terminated, and several of these students were
transferred and assigned to Alison Herring.

Exhibit 1 Page 5

17) My work schedule was changed without consultation by the Associate Director of Enrollment Carlyn Lindsten on the 26th of March, 2007 in order to make everyone available for "QC" [Qualifying Center] telephone calls to "help everyone hit their goal!" The amount of QC calls I received dwindled from March onward, and I did not receive any QC calls in June or July of 2007.

18) I was asked then pressured to sign documents that I felt were untrue relating to my performance.

19) My salary was reduced because I did not "meet goal" in May from $37,000 to $35,500.

20) I contacted the independent office of Ombuds Services anonymously in the beginning of June to research my options in hopes of protecting myself from further retaliatory acts taken by the company against me for voicing concerns with company policy.

21) I submitted my claims, and evidence in support of said claims, to the Human Resources department, Employee Relations Consultant; April Alcorn, on June 11, 2007.

22) I was told in a telephone conversation on the 11th of June, 2007 by April Alcorn that the issue would be resolved in two weeks.

23) On the 12th of June, 2007 April Alcorn sent me an email stating "I received your fax and will be looking into your concerns."

24) The university continued to create a hostile work environment for myself, after I had demanded that it cease and desist. I was harassed with emails threatening termination on the 20th of June, 2007 by co-worker Alison Herring and approved of by my manager Mechelle Bonilla if I did not participate and perform adequately in a team "blitz" at 11:30. Team "blitzs" are designated times [by the manager], three times a day, in which we are expected to not leave our cubicle, make as many telephone dials as possible, and schedule as many students possible for appointments. The subject title read "IF YOU DON['-]T BLITZ AT 11:30 MECHELLE SAYS YOU'RE FIRED!" The top performing Enrollment Counselor on Mechelle Bonilla's "team"; Bertha Castillo even responded to this email to justify her absence from this "blitz". Enrollment Counselor Fran Beadles also called in from the Palm Desert campus to Mechelle Bonilla on that day to voice her concerns with the email. At the conclusion of the telephone conversation she was

Exhibit 1 Page 6

berated in the Downtown office by Mechelle Bonilla and Alison Herring for being a "nuisance" and was also referred to as an "idiot".

25) I received an overnight Federal Express package dated June 14th, 2007 from April Alcorn thanking me for bringing my workplace concerns to her attention and that she will be contacting me at a later time to "discuss the findings".

26) At the end of June 2007 I was harassed by Mechelle Bonilla for my attire on casual Friday; flip flops, jeans, and a shirt.  I viewed this action as discriminatory and retaliatory due to the fact that Alison Herring, Tiffany Jones, and Davina Mendoza had all worn the same attire [as well as tank tops] previously unpunished [not limited to "casual Friday"].

27) I immediately contacted April Alcorn to notify her of my concerns regarding my perceived bias and harassment by Mechelle Bonilla in relation to the casual Friday dress code.

28) On the 2nd of July, 2007 I was asked by Mechelle Bonilla to search the websites for the dress code, because she was "too busy".  I could not find any information on the company websites regarding the dress code, as could she.

29) The situation was not resolved in the time frame that April Alcorn had communicated via telephone conversation, which was to be the 6th of July, 2007. This date had originally been set much earlier via telephone conversation by April Alcorn.

30) I was extremely stressed out over the situation, and had communicated this to April Alcorn, as well as my manager, Michelle Bonilla, on several occasions via email, telephone and one on one conversation.

31) I began grinding my teeth, vomiting, and receiving stomach pains in response to the hostile work environment, harassment and stress I had endured while at work.

32) I saw Dr. Calixto on July 3rd, 2007 at Beautiful Smile Dentistry to seek advice on how to stop grinding my teeth.

33) I was then told by April Alcorn via telephone conversation that she had completed her investigation and the issue would be resolved by the 12th of July, 2007.

34) I then received an email from April Alcorn on the 12th of July, 2007 at 9:47 a.m. stating that she had

Exhibit 1 Page 7

"submitted the investigation documentation to my management team for review", which was contrary to her previous promise of resolution.

35) I immediately telephoned April Alcorn in response to this contradiction and she assured me that this would finally be resolved within twenty four hours.

36) I again voiced my distress to April Alcorn regarding the hostile work environment and harassment that I continued to endure.

37) I was contacted, by Angie Jibben, and told that I should take a leave of absence on July 12th 2007 around four p.m. via telephone. I stated that I would prefer to wait for the resolution which was promised to me by April Alcorn, thanked her for the offer, and said that I would consider this an option should the need dictate so. The offer was never retracted, and was again encouraged before the completion of the telephone call by Angie Jibben as a solution to my endured stress and harassment from the company.

38) I did not receive any type of notification of resolution from April Alcorn or any other interested parties regarding my claims against the company by one o'clock in the afternoon. When I attempted to contact April Alcorn after 1:00 on the 13th of July, 2007 a gentleman [whose name I do not recall] answered her personal work line. He attempted to pry me for information regarding my claims and agreed to leave a message for her.

39) On July 13th, 2007 at 6:00 p.m., I did not receive any information regarding my claims against the company and the issue still had not been resolved as was communicated it would be by April Alcorn.

40) On July 13th, 2007, I could not take the stress anymore and accepted the offer to leave the hostile work environment until my issues were resolved.

41) On July 13th, 2007, I notified April Alcorn and Mechelle Bonilla via email that I would take a 10 day non-paid vacation in order to provide them enough time to rectify the situation. I provided my personal email account, should they need to contact me immediately.

42) On July 16th, 2007 I left for vacation in an attempt to alleviate my stress.

43) While I was gone, three overnight Federal Express packages were left at my door from April Alcorn.

Exhibit 1 Page 8

44) The first package was dated July 17th, 2007, and stated in a letter that I needed to return to work no later than Thursday, July 19th, 2007 at my regularly scheduled work time. "Failure to report to work by the designated date will leave us no other alternative but to accept your voluntary resignation."

45) I never received any information pertaining to this on the contact email I had made available to April Alcorn and Mechelle Bonilla.

46) The second and third packages were dated July 19th, 2007.

47) The second letter stated, "You failed to report to work at the designated date and time. Consistent with our policy, the Company has chosen to separate your employment effective July 19th, 2007."

48) The third and final letter stated, "Please be advised that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations."

Exhibit 1 Page 9

# EXHIBIT 2

Exhibit 2 Page 1

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| ⌐ **APOLLO GROUP**<br>**4615 E. Elwood Street**<br>**Phoenix, AZ 85040** ⌐ | **Chad D. Mckinney** |
| | THIS PERSON (check one or both)<br>☐ Claims To Be Aggrieved<br>☐ Is Filing on Behalf of Other(s) |
| └ ⌐ ┘ | EEOC CHARGE NO.<br>**488-2007-00775** |

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

☒ Title VII of the Civil Rights Act        ☐ The Americans with Disabilities Act

☐ The Age Discrimination in Employment Act        ☐ The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. ☒ No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. ☐ Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☐ Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Roger A. Owen,<br>Investigator | **San Diego Local Office**<br>**401 B Street**<br>**Suite 510**<br>**San Diego, CA 92101** |
|---|---|
| *EEOC Representative* | |
| Telephone **(619) 557-7283** | |

Enclosure(s): ☒ Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN   ☐ AGE   ☐ DISABILITY   ☒ RETALIATION   ☐ OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **October 29, 2007** | **Joyce E. Cooper,**<br>**Local Office Director** | *Joyce Cooper* |

Exhibit 2 Page 2

*Enclosure with EEOC*
*Form 131 (5/01)*

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge,* for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

Exhibit 2 Page 3

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 488-2007-00775 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Chad D. Mckinney | (619) 634-3566 | 03-29-1981 |

Street Address — City, State and ZIP Code
6266 Madeline St., #61, San Diego, CA 92115

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| APOLLO GROUP | 500 or More | (480) 557-1280 |

Street Address — City, State and ZIP Code
4615 E. Elwood Street, Phoenix, AZ 85040

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 08-07-2006    Latest: 07-19-2007

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. ( See attached six page Statement of Facts )

OCT 2 3 1357
EEOC-SD

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

10/18/2007 x C L M K
Date — Charging Party Signature

Exhibit 2 Page 4

## Statement of Facts

1) I was hired on August 7th 2006 as an Enrollment Counselor for the University of Phoenix. I was interviewed by Kyan Flynn, Barbara Keramati, and Andrea Beltran.

2) During the interviewing process I was told this was a salary position and there was not any mention that my salary would go down if I did not meet quotas for new applicants.

3) It was communicated to me that my salary could increase if I were to successfully meet the goals my employment matrix outlined. These goals were not completely outlined for me at that time, however Kyan Flynn communicated to me that laborious efforts, dedication, and job competency were required for an increase in salary to take effect.

4) After two months I realized that my salary was based on enrollment quotas.

5) There is a lot of pressure to meet sales quotas via harassing emails, vocalization of threats, and contests. Rewards, bonuses [of monetary value], and/or special treatment are given to those who enroll the most students.

6) The Higher Education Act prohibits universities from using sales quotas for enrollment counselors.

7) Though I often met my weekly "Osira" goals of; 3.5 appointments, 1.5 applications, and 2 referrals, it was often communicated to me that this was not enough. In several one on one meetings with my first manager Barbara Keramati I was reminded that I was a student with the University and that my tuition reimbursement would be revoked should I fail to meet my "goal" of enrolling at least four students per month, she stated to me several times that she did not wish for that to occur.

8) On the 19th of December, 2006 it was communicated via an email written by my manager Barbara Keramati and forwarded to the Directors of the company; Kyan Flynn and Kim Savich that my job performance was exceptional "kudos to Chad McKinney…Chad you are my hero!!!!!!!!!! 7 appointments and 6 apins [applications]..can it get any better that that?" Other employees were even encouraged to contact me for advice on how to improve their performance.

9) On a multitude of occasions from the end of February until I was terminated I received countless

Exhibit 2 Page 5

harassing emails from the Associate Director of Enrollment; Carlyn Lindsten. These emails; threatened reductions in pay if enrollment quotas were not met, questioned the level of dedication I afforded to my job duties and if I was truly serious about my career with the company, why quotas for student enrollment were not met, and asked to "step it up" in condescending threatening fashion. These types of emails were sent out almost daily, and sometimes multiple times in one day.

10) I felt the enrollment practices of this company presented an ethical dilemma and decided to apply for a position as an Academic Counselor in the Academic department. I was also encouraged to do so by my then manager Barbara Keramati via email and one on one conversation. In late February I submitted my resume to Thomas Graneau Jr.

11) At the end of February or the beginning of March I was transferred from the Kearny Mesa campus to the downtown campus by Associate Director of Enrollment Carlyn Lindsten after voicing my concerns with the decision to her.

12) I was granted an interview for the Academic position and met with Thomas Graneau Jr. and Colleen Bjornson in early March.

13) I was not selected for the position of Academic Counselor.

14) Although Mechelle Bonilla was not my manager for the month of February she pressured me to sign a "Discussion Memo" that stated my performance fell below expectations of; appointments seen, applications, and students whom started class and that "failure to improve your performance may result in further disciplinary action up to and including termination."

15) Some of my applicants were given to other people in disregard to corporate policy on the 26th of March, 2007 because I questioned the legality of the university's enrollment practices in a previous conversation in early March with my second manager; Mechelle Bonilla.

16) My "lead base" [number of students in my data base available for contact] was reduced drastically by my manager Mechelle Bonilla from March until I was terminated, and several of these students were transferred and assigned to Alison Herring.

Exhibit 2 Page 6

17) My work schedule was changed without consultation by the Associate Director of Enrollment Carlyn Lindsten on the 26th of March, 2007 in order to make everyone available for "QC" [Qualifying Center] telephone calls to "help everyone hit their goal!" The amount of QC calls I received dwindled from March onward, and I did not receive any QC calls in June or July of 2007.

18) I was asked then pressured to sign documents that I felt were untrue relating to my performance.

19) My salary was reduced because I did not "meet goal" in May from $37,000 to $35,500.

20) I contacted the independent office of Ombuds Services anonymously in the beginning of June to research my options in hopes of protecting myself from further retaliatory acts taken by the company against me for voicing concerns with company policy.

21) I submitted my claims, and evidence in support of said claims, to the Human Resources department, Employee Relations Consultant; April Alcorn, on June 11, 2007.

22) I was told in a telephone conversation on the 11th of June, 2007 by April Alcorn that the issue would be resolved in two weeks.

23) On the 12th of June, 2007 April Alcorn sent me an email stating "I received your fax and will be looking into your concerns."

24) The university continued to create a hostile work environment for myself, after I had demanded that it cease and desist. I was harassed with emails threatening termination on the 20th of June, 2007 by co-worker Alison Herring and approved of by my manager Mechelle Bonilla if I did not participate and perform adequately in a team "blitz" at 11:30. Team "blitzs" are designated times [by the manager], three times a day, in which we are expected to not leave our cubicle, make as many telephone dials as possible, and schedule as many students possible for appointments. The subject title read "IF YOU DON[']T BLITZ AT 11:30 MECHELLE SAYS YOU'RE FIRED!" The top performing Enrollment Counselor on Mechelle Bonilla's "team"; Bertha Castillo even responded to this email to justify her absence from this "blitz". Enrollment Counselor Fran Beadles also called in from the Palm Desert campus to Mechelle Bonilla on that day to voice her concerns with the email. At the conclusion of the telephone conversation she was

Exhibit 2 Page 7

berated in the Downtown office by Mechelle Bonilla and Alison Herring for being a "nuisance" and was also referred to as an "idiot".

25)  I received an overnight Federal Express package dated June 14th, 2007 from April Alcorn thanking me for bringing my workplace concerns to her attention and that she will be contacting me at a later time to "discuss the findings".

26)  At the end of June 2007 I was harassed by Mechelle Bonilla for my attire on casual Friday; flip flops, jeans, and a shirt.  I viewed this action as discriminatory and retaliatory due to the fact. that Alison Herring, Tiffany Jones, and Davina Mendoza had all worn the same attire [as well as tank tops] previously unpunished [not limited to "casual Friday"].

27)  I immediately contacted April Alcorn to notify her of my concerns regarding my perceived bias and harassment by Mechelle Bonilla in relation to the casual Friday dress code.

28)  On the 2nd of July, 2007 I was asked by Mechelle Bonilla to search the websites for the dress code, because she was "too busy".  I could not find any information on the company websites regarding the dress code, as could she.

29)  The situation was not resolved in the time frame that April Alcorn had communicated via telephone conversation, which was to be the 6th of July, 2007.  This date had originally been set much earlier via telephone conversation by April Alcorn.

30)  I was extremely stressed out over the situation, and had communicated this to April Alcorn, as well as my manager, Michelle Bonilla, on several occasions via email, telephone and one on one conversation.

31)  I began grinding my teeth, vomiting, and receiving stomach pains in response to the hostile work environment, harassment and stress I had endured while at work.

32)  I saw Dr. Calixto on July 3rd, 2007 at Beautiful Smile Dentistry to seek advice on how to stop grinding my teeth.

33)  I was then told by April Alcorn via telephone conversation that she had completed her investigation and the issue would be resolved by the 12th of July, 2007.

34)  I then received an email from April Alcorn on the 12th of July, 2007 at 9:47 a.m. stating that she had

Exhibit 2 Page 8

"submitted the investigation documentation to my management team for review", which was contrary to her previous promise of resolution.

35) I immediately telephoned April Alcorn in response to this contradiction and she assured me that this would finally be resolved within twenty four hours.

36) I again voiced my distress to April Alcorn regarding the hostile work environment and harassment that I continued to endure.

37) I was contacted, by Angie Jibben, and told that I should take a leave of absence on July 12th 2007 around four p.m. via telephone. I stated that I would prefer to wait for the resolution which was promised to me by April Alcorn, thanked her for the offer, and said that I would consider this an option should the need dictate so. The offer was never retracted, and was again encouraged before the completion of the telephone call by Angie Jibben as a solution to my endured stress and harassment from the company.

38) I did not receive any type of notification of resolution from April Alcorn or any other interested parties regarding my claims against the company by one o'clock in the afternoon. When I attempted to contact April Alcorn after 1:00 on the 13th of July, 2007 a gentleman [whose name I do not recall] answered her personal work line. He attempted to pry me for information regarding my claims and agreed to leave a message for her.

39) On July 13th, 2007 at 6:00 p.m., I did not receive any information regarding my claims against the company and the issue still had not been resolved as was communicated it would be by April Alcorn.

40) On July 13th, 2007, I could not take the stress anymore and accepted the offer to leave the hostile work environment until my issues were resolved.

41) On July 13th, 2007, I notified April Alcorn and Mechelle Bonilla via email that I would take a 10 day non-paid vacation in order to provide them enough time to rectify the situation. I provided my personal email account, should they need to contact me immediately.

42) On July 16th, 2007 I left for vacation in an attempt to alleviate my stress.

43) While I was gone, three overnight Federal Express packages were left at my door from April Alcorn.

Exhibit 2 Page 9

44) The first package was dated July 17th, 2007, and stated in a letter that I needed to return to work no later than Thursday, July 19th, 2007 at my regularly scheduled work time. "Failure to report to work by the designated date will leave us no other alternative but to accept your voluntary resignation."

45) I never received any information pertaining to this on the contact email I had made available to April Alcorn and Mechelle Bonilla.

46) The second and third packages were dated July 19th, 2007.

47) The second letter stated, "You failed to report to work at the designated date and time. Consistent with our policy, the Company has chosen to separate your employment effective July 19[th], 2007."

48) The third and final letter stated, "Please be advised that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations."

Exhibit 2 Page 10

11/08/2007 THU 11:07 FAX

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

JOB NO.              4470
DESTINATION ADDRESS  917144277799
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME             11/08 11:03
USAGE T              03'51
PGS.                   10
RESULT               OK
```

4635 East Elwood Street
Phoenix, Arizona 85040
480 557-1707
Fax 480 929-7399



# Fax

| To: | Christy Joseph | From: | April Harper |
|-----|----------------|-------|--------------|
| **Company:** | Snell and Wilmer | | Apollo Group, Inc. |
| **Fax:** | 714-427-7799 | **Pages:** | 10 w/ cover |
| **Phone:** | | **Date:** | 11/08/07 |
| **Re:** | EEOC: Chad McKinney | **CC:** | |

☑ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Included in this package:

- Enclosed is the charge regarding Chad McKinney. I am providing the charge for your records specific to the Qui Tam. We are not directing you to enter an appearance on this charge, as we will handle the charge on our side. Please contact Matt Mitchell once received, 480-557-3558. Thank you,

Exhibit 2 Page 11

## PROOF OF SERVICE

**McKinney v. Apollo Group, Inc., et al.**
**USDC, Southern – Case No. 07-CV-2373**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California 92626-7689.

On September 2, 2008, I served, in the manner indicated below, the foregoing document described as **DECLARATION OF NATHAN W. HICKS IN SUPPORT OF THE UNIVERSITY OF PHOENIX, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

| | |
|---|---|
| Chad McKinney<br>6266 Madeline Street, Apt. #61<br>San Diego, CA 92115 | Plaintiff, Pro Se<br>Tel: (619) 634-3566<br><br>TRACKING # 797075185540 |
| United States District Court<br>Attention: Hon. Judge William Q. Hayes<br>Courtroom 4<br>940 Front Street, Room 4290<br>San Diego, CA 92101-8900 | Courtesy Copy<br>Tel: (619) 557-5600<br><br>TRACKING # 796076073808 |

I am employed in the office of a member of the bar of this court at whose direction the service was made.

☒        BY FEDERAL EXPRESS: I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 2, 2008, at Costa Mesa, California.

_____
Anh Dufour

8626180

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000