Christy D. Joseph (#136785)
cjoseph@swlaw.com
Nathan W. Hicks (#236269)
nhicks@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, CA  92626-7689
Telephone: (714) 427-7000
Facsimile: (714) 427-7799

Attorneys for Defendant April Alcorn

UNITED STATES DISTRICT COURT – SOUTHERN DISTRICT OF

CALIFORNIA

| | |
|---|---|
| CHAD MCKINNEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>APOLLO GROUP, INC., UNIVERSITY OF PHOENIX, a Corporation, MECHELLE BONILLA, an Enrollment Manager at UNIVERSITY OF PHOENIX, KYAN FLYNN, Director of Enrollment at UNIVERSITY OF PHOENIX, APRIL ALCORN, an Employees Relations Consultant at UNIVERSITY OF PHOENIX, CARLYN LINDSTEN, Associate Director of Enrollment at UNIVERSITY OF PHOENIX<br><br>Defendants | CASE NO. 07-CV-2373 WQH CAB<br><br>**EXHIBIT TO DECLARATION OF NATHAN W. HICKS IN SUPPORT OF APRIL ALCORN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**<br><br>**[FRCP 12(b)(2); 12(b)(5); 12(b)(6); 12(e).]**<br><br>Date:  October 20, 2008<br>Time: 11:00 a.m.<br>Courtroom:  4<br>Judge:  Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>DATE OF FILING:  December 19, 2007 |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# INDEX

| Exhibit | Description | Page |
|---|---|---|
| 1 | Court Order setting aside Default of Mechelle Bonilla, Kyan Flynn and Carlyn Lindsten ................................................................2 | |
| 2 | August 1, 2008 Letter to Chad McKinney ....................................13 | |
| 3 | EEOC Notice of Dismissal .............................................................15 | |
| 4 | McKinney's Charge ........................................................................23 | |

Dated: September 5, 2008

s/ Nathan Hicks
Nathan W. Hicks

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

9089512

USDC-SOUTHERN DISTRICT CALIFORNIA
CASE NO. 07-CV-2373 WQH CAB

INDEX

# EXHIBIT 1

**Page 1**

FILED

2008 JUL 23  AM 8: 53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD MCKINNEY, an individual,<br><br>                           Plaintiff,<br>    vs.<br>APOLLO GROUP INC., UNIVERSITY OF PHOENIX, a Corporation, MECHELLE BONILLA, an Enrollment Manager at UNIVERSITY OF PHOENIX, KYAN FLYNN, Director of Enrollment at UNIVERSITY OF PHOENIX, APRIL ALCORN, an Employee Relations Consultant at UNIVERSITY OF PHOENIX, CARLYN LINDSTEN, Associate Director of Enrollment at UNIVERSITY OF PHOENIX,<br><br>                         Defendants. | CASE NO. 07cv2373 WQH (CAB)<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the (1) Motion for Default Judgment as to Apollo Group, Inc. (Doc. # 6), (2) Motion to Set Aside Default by Apollo Group, Inc. (Doc. # 9), (3) Motion to Dismiss for Lack of Jurisdiction by Apollo Group, Inc. (Doc. # 10), (4) Motion for Default Judgment as to Mechelle Bonilla (Doc. # 29), (5) Motion for Default Judgment as to Kyan Flynn (Doc. # 30), (6) Motion for Default Judgment as to Carlyn Lindsten (Doc. # 31), (7) Motion to Dismiss Plaintiff's Complaint, or In the Alternative, Motion for More Definite Statement by Kyan Flynn, Mechelle Bonilla and Carlyn Lindsten (Doc. # 40), (8) Motion to Set Aside Default by Kyan Flynn, Mechelle Bonilla and Carlyn Lindsten (Doc. # 41), (9)

1   Motion for Default Judgment as to April Alcorn (Doc. # 42), (10) Motion for Default

2   Judgment as to University of Phoenix (Doc. # 43), (11) Motion to Dismiss for Lack of

3   Jurisdiction by University of Phoenix (Doc. # 44), (12) Motion to Dismiss for Lack of

4   Jurisdiction by April Alcorn (Doc. # 46), (13) Motion to Set Aside Default by University of

5   Phoenix (Doc. # 47), (14) Motion to Set Aside Default by April Alcorn (Doc. # 49), and (15)

6   Plaintiff's Motion to Strike the Defendants' Notice of Non-Opposition (Doc. # 69).

7   I.    **Background**

8           On December 19, 2007, Plaintiff Chad McKinney initiated this action by filing the

9   Complaint (Doc. # 1).  The Complaint alleges that Plaintiff's claims "arise[] primarily from

10  the defendant's discriminatory behavior against the plaintiff while the plaintiff was employed

11  by the defendant, including but not limited to the wrongful termination of the plaintiff."

12  *Complaint*, ¶ 1.  The Complaint alleges claims against the following Defendants: Apollo

13  Group, Inc. ("Apollo Group"), the parent company of the University of Phoenix; the University

14  of Phoenix, a Corporation; Michelle Bonilla, Enrollment Manager of the University of

15  Phoenix; Kyan Flynn, Director of Enrollment of the University of Phoenix; Carlyn Lindsten,

16  Associate Director of Enrollment of the University of Phoenix; and April Alcorn, Human

17  Resources Manager of the University of Phoenix (collectively referred to as "Defendants").

18  The Complaint alleges the following causes of action: (1) Retaliation, in violation of the False

19  Claims Act; (2) Retaliation, in violation of Title VII of the 1964 Civil Rights Act; (3)

20  Wrongful Termination; (4) False Imprisonment; (5) Intentional Infliction of Emotional

21  Distress; (6) Defamation; and (7) Equal Pay.

22          After the Complaint was filed and pursuant to Plaintiff's requests, the Clerk of the

23  Court entered default as to each Defendant, pursuant to Rule 55(a) of the Federal Rules of

24  Civil Procedure (Docs. # 5, 16, 19, 20, 38, 39).  Following the Clerk's entry of default,

25  Plaintiff filed Motions for Default Judgment as to each Defendant (collectively referred to as

26  the "Motions for Default Judgment") (Docs. # 6, 29, 30, 31, 42, 43).  Defendants filed

27  Oppositions to the Motions for Default Judgment (Docs. # 11, 28, 48, 50).  Plaintiff filed

28  Replies (Docs. # 52, 55, 61, 63).  Following Plaintiff's Motions for Default Judgment,

1   Defendants filed Motions to Set Aside Default (collectively referred to as the "Motions to Set

2   Aside") (Docs. # 9, 41, 47, 49). Plaintiff filed Oppositions to the Motions to Set Aside (Docs.

3   # 51, 65, 67). Defendants filed Replies (Docs. # 84, 85). Defendants also filed Motions to

4   Dismiss for Lack of Jurisdiction, or in the Alternative, Motions to Strike (collectively referred

5   to as the "Motions to Dismiss") (Docs. # 10, 40, 44, 46). Defendants filed a notice of non-

6   opposition to the Motions to Dismiss filed by Defendants. In response, Plaintiff filed a Motion

7   to Strike the Defendants' Notice of Non-Opposition to the Motion to Dismiss (Doc. # 69).

8   Plaintiff filed Oppositions to the Motions to Dismiss (Docs. # 76, 77, 78, 79). Defendants filed

9   Replies (Docs. # 80, 81, 82, 83).

10   **II.   Analysis - Sufficiency of Service of Process**

11       **A.   Defendants' Contentions Regarding Service of Process**

12           *(i)*   The Corporate Defendants

13   Apollo Group and the University of Phoenix (collectively referred to as the "Corporate

14   Defendants") contend that Plaintiff did not effect service of process pursuant to Rule 4(h) of

15   the Federal Rules of Civil Procedure, which governs service on a corporation, because Plaintiff

16   did not serve the summons and complaint on an officer, general manager or designated agent

17   for service of process. The Corporate Defendants contend that Plaintiff instead "simply

18   dropped off an envelope to a [University of Phoenix] employee, Ellen Bowens, and expected

19   this to constitute sufficient service of process . . . . This is unacceptable under California law

20   and the Federal Rules." (Docs. # 10, 44, p. 5). The Corporate Defendants move the Court to

21   set aside the Clerk's entry of default pursuant to Rule 55, and to dismiss the Complaint for lack

22   of jurisdiction pursuant to Rules 12(b)(2) and 12(b)(5) on grounds that Plaintiff did not

23   properly serve them.

24       The Corporate Defendants each submitted an identical declaration of Ellen Bowens,

25   who according to Plaintiff, accepted service on behalf of them. Bowens attests that on January

26   31, 2008 (the date on which Plaintiff asserts he effected service on the Corporate Defendants),

27   she was the operations manager for University of Phoenix's San Diego campus. Bowens

28   attests that she "did not, and do not, have management responsibilities to direct" the Corporate

- 3 -

**Page 4**

1  Defendants, and that she has "never been an officer, managing agent, general manager or

2  authorized agent able to accept service of process" on behalf of the Corporate Defendants.

3  (Doc. # 47-4). Bowens further attests:

> On or around the end of January 2008, I was asked by a subordinate receptionist
> to help with a man trying to 'serve' court papers at her desk. I do not recall the
> man identifying himself, but I informed him that neither I nor the receptionist
> was authorized to accept service on behalf of [the Corporate Defendants]. I then
> informed the man that [the Corporate Defendants] had an agent for service of
> process, CT Corporation. The man then stated that we 'did not know the law,'
> left the papers on a table and stormed away. . . . I . . . called [the Corporate
> Defendants'] Human Resources Department and mailed the papers to that
> department. I do not know what happened to that stack of legal papers since that
> time.

*Id.*

   (ii)   The Individual Defendants

Bonilla, Flynn, Lindsten and Alcorn (collectively referred to as the "Individual

Defendants") contend that Plaintiff did not effect service of process pursuant to Rule 4(e) of

the Federal Rules of Civil Procedure, which governs service of process on an individual. The

Individual Defendants contend that "[a]ccording to [Plaintiff's] proofs of return service, he

attempted to serve the [Individual Defendants] under California law through substitute service

at [their] place of work." (Docs. # 40, p. 5; 49, p. 6). The Individual Defendants contend that

Plaintiff "failed to comply with the requirements of California law, and therefore FRCP Rule

4(e), because he did not demonstrate that he made a good faith attempt at personal service nor

that he provided mail copies of the summons and complaint to the Individual Defendants via

pre-paid first class mail." *Id.*

Individual Defendants Bonilla, Flynn and Lindsten each submitted the declaration of

Bowens, who according to Plaintiff, accepted service on behalf of Bonilla, Flynn and Lindsten.

The declarations of Bowens submitted by Bonilla, Flynn and Lindsten are identical to the

declarations submitted by the Corporate Defendants, discussed above. Individual Defendant

Alcorn submitted the declaration of Rebecca Springfield who, according to Plaintiff, accepted

service on behalf of Alcorn. Springfield attests:

> [A]round the end of February 2008, a gentleman approached me and attempted
> to hand me a stack of legal papers. I told the gentleman that I was not allowed
> to accept any legal papers on behalf of anyone for Apollo and attempted to give

1  him the contact information for the proper place to do so, CT Corporation. The
2  gentleman refused to listen and just dropped the papers on the desk in front of
   me and walked away.

3  I do not know or work with April Alcorn and did not know that the papers left
   by the gentleman were intended for her or if they were ever given to her.

4
5  (Doc. # 49-5).    The Individual Defendants also submitted their own declarations.  Each

   Individual Defendant attests: "I was never personally served with any legal document
6
7  regarding this matter, nor have I been made aware of any attempts to be personally served with

8  legal documents in this matter. Furthermore, I have never received a copy of the summons and

9  complaint in this matter either by mail or any other means" from Plaintiff.  (Docs. # 41-3, 41-

10 4, 41-5, 49-4).

11     B.    Plaintiff's Contentions Regarding Service of Process

       Plaintiff contends that the Corporate Defendants were properly served.  With respect
12
   to the service of process on each Corporate Defendant, Plaintiff states:
13
14     The defendant was served at its San Diego office by professional certified
       service processor Mr. R. T. Hansell.  The Defendant was properly served,
15     henceforth is subject to the jurisdiction of the Court.  [Each Corporate
       Defendant] did in fact receive proper service as can be evidenced by" the
16     Declaration of R.T. Hansell.

17 (Docs. # 79, p. 3).

18     Plaintiff contends that the Individual Defendants were also properly served.  With

   respect to the service of process on Bonilla, Flynn and Lindsten, Plaintiff states:
19
20     The defendants were served at their San Diego office by professional certified
       service processor Mr. R. T. Hansell. [Bonilla, Flynn and Lindsten] were properly
21     served, henceforth are subject to the jurisdiction of the Court. [Bonilla, Flynn
       and Lindsten] did in fact receive proper service as can be evidenced by" the
22     Declaration of R.T. Hansell.

23 (Docs. # 76, p. 3).   With respect to the service of process on Alcorn, Plaintiff states that

24 service on Alcorn was proper "as is again demonstrated in . . . a sworn affidavit of service by

25 Steve Ineich, A.C.P.S. Process Server registered in Maricopa County . . . stating that he

26 properly served the Defendant April Alcorn 'by leaving one true copy(ies) of the above

27 documents [summons, complaint & cover sheet] with Rebecca Springfield, Security

28 Authorized.'" (Doc. # 77, p. 2-3).

1    In support of his contention that service on the Corporate Defendants and Individual

2  Defendants Bonilla, Flynn and Lindsten was proper, Plaintiff submitted the declaration of

3  Hansell, who attests that "[o]n the 31st of January, 2008, according to the Federal Rules of

4  Civil Procedure 4(e)(1) I properly served" these Defendants.  (Docs. # 76, 79 Exhibit C).

5  Hansel attests:

6        At the time of service, Ellen Bowens declared herself to be an Administrator and
        the only person available.  Ellen Bowens, who is actually the Operations
7        Manager for the University of Phoenix, a wholly owned subsidiary of Apollo
        Group, Inc. refused to cooperate and produce the defendant employees for
8        personal service, or any other person to accept for the defendant companies.
        Substitute service was then effected.

9
   *Id.*   In support of his argument that service on Individual Defendant Alcorn was properly
10
   effected, Plaintiff submitted the affidavit of Steve Ineich, A.C.P.S., who attests that service on
11
   Alcorn was effected "[b]y leaving one true copy(ies) of the above documents with Rebecca
12
   Springfield, Security, Authorized."  (Doc. # 77, Exhibit C).
13
        C.    Applicable Law Governing Service of Process
14
        "Without a proper basis for jurisdiction, or in the absence of service of process, the
15
   district court has no power to render any judgment against the defendant's person or property
16
   unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v.*
17
   *Ross,* 504 F.3d 1130 (9th Cir. 2007). "A federal court is without personal jurisdiction over a
18
   defendant unless the defendant has been served in accordance" with Rule 4 of the Federal
19
   Rules of Civil Procedure. *Id.* at 1130.  Once service is challenged, the plaintiff bears the
20
   burden of establishing sufficiency of process. *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir.
21
   2004).  Rule 4 of the Federal Rules of Civil Procedure governs service of process.  Although
22
   Rule 4 is a flexible rule that should be liberally construed, "neither actual notice nor simply
23
   naming the defendant in the complaint will provide personal jurisdiction absent 'substantial
24
   compliance with Rule 4." *Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir. 1986).
25
        Rule 4(e) governs service on individuals within a judicial district of the United States.
26
   Rule 4(e) provides that a plaintiff may serve an individual by:
27
        (1) following state law for serving a summons in an action brought in courts of
28        general jurisdiction in the state where the district court is located or where
        service is made; or

- 6 -                                    07cv2373 WQH (CAB)

(2) doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). California state law allows for service upon an individual by delivering a copy of the summons and complaint by "personal delivery or any authorized agent for service of process;""[s]ubstitute service coupled with mailing after a good faith effort at personal service has been attempted;" or "[s]ervice by publication." Cal. Code Civ. Proc. §§ 415.10, 415.20, 415.30, 415.50.

Rule 4(h) governs service on a "domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name" within a judicial district of the United States. Rule 4(h) provides that service may be effected:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant.

FED. R. CIV. P. 4(h). California state law allows for service upon a corporation by delivering a copy of the summons and complaint "[t]o the person designated as agent for service of process;" or "[t]o the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10.

Pursuant to Rule 55(c), a court may set aside an entry of default for good cause. FED. R. CIV. P. 55(c). "Failure to properly serve a defendant with process pursuant to Fed. R. Civ. P. 4 constitutes good cause to set aside an entry of default." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 245 F.R.D. 470, 472 (C.D. Cal. 1992). The court has broad discretion in deciding whether to set aside the entry of default pursuant to Rule 55(c). *Mendoza v. Wight Vineyard Management*, 783 F.2d 941. 945 (9th Cir. 1986). There is a strong preference for

- 7 -

1   trial on the merits, and any doubts should be resolved in favor of setting aside the default.

2   *Direct Mail Specialists v. Eclat Computerized Technologies,* 840 F.2d 685, 690 (9th Cir.

3   1988).

4        When a court determines that service of process is insufficient, it has broad discretion

5   to either dismiss the action without prejudice or retain the case but quash the service of

6   process. *Oyama v. Sheehan,* 253 F.3d 507, 513 (9th Cir. 2001); *see also* 5 C. Wright & A.

7   Miller, *Federal Practice and Procedure* § 1354, at 585-86 (1969). A court should generally

8   quash service of process instead of dismissing the action when there is a reasonable prospect

9   that the plaintiff ultimately will be able to serve the defendant properly. *Brockmemer,* 383 F.3d

10  at 801. "Pro se litigants are allowed more latitude than litigants represented by counsel to

11  correct defects in service of process and pleadings." *Moore v. Agency for Int'l Development,*

12  301 U.S. App. D. C. 327 (D.C. Cir. 1993).

13       D.    Analysis Regarding Service of Process on Defendants

14       To demonstrate that they were not properly served, Defendants submitted evidence that

15  demonstrates that, at the time Plaintiff asserts Defendants were served, neither Bowens nor

16  Springfield were officers, or managing or general agents of Apollo Group or the University of

17  Phoenix, and were not otherwise authorized to receive service of process. Defendants also

18  submitted evidence that demonstrates that the Individual Defendants were never personally

19  served with copies of the summons and complaint, and never received copies of the summons

20  and complaint in the mail. To demonstrate that Defendants were properly served, Plaintiff

21  submitted the declaration of Hansell, who attests he properly served the Corporate Defendants

22  and Individual Defendants Bonilla, Flynn and Lindsten by leaving copies of the summons and

23  complaint with Bowens, who declared herself to be an administrator. Plaintiff submitted the

24  declaration of Ineich, who attests that he properly served Individual Defendant Alcorn by

25  leaving copies of the summons and complaint with "Rebecca Springfield, Security,

26  Authorized." (Doc. # 77, Exhibit C). However, Plaintiff has failed to submit any evidence to

27  rebut Defendants' showing that Bowens and Springfield were not the appropriate people to

28  accept service of process on behalf of any of the Defendants under Rule 4. Plaintiff also failed

1   to submit any evidence that demonstrates that he made a good-faith effort to personally serve

2   the Individual Defendants, or that a copy of the summons and complaint was mailed to the

3   Individual Defendants after substitute service was effected, as required by Rule 4(e). Plaintiff

4   does not assert that the summons and complaint were delivered to any of the Individual

5   Defendants personally, that the summons and complaint were left at the dwelling or abode of

6   any of the Individual Defendants with someone of suitable age and discretion who resides

7   there, or that service was effected by publication. Plaintiff does not assert that any of the

8   Defendants consented to jurisdiction or waived the lack of process.

9           In light of the foregoing, the Court concludes that Plaintiff has failed to properly serve

10  any of the Defendants. The Court concludes that good cause exists to set aside the entry of

11  default pursuant to Rule 55(c) because Plaintiff has failed to effect service on any of the

12  Defendants. In light of Plaintiff's pro se status and there being a reasonable prospect that

13  Plaintiff can correct the defects in the service of process on the Defendants, the Court will

14  retain the case, but quash service of process. The Court concludes that consideration of the

15  Motions for Default Judgment and the Motions to Dismiss to the extent they seek dismissal for

16  failure to state a claim is improper at this time because Defendants have not been properly

17  served.

18                                          **Conclusion**

19          IT IS HEREBY ORDERED that the Motion to Set Aside Default by Apollo Group,

20  Inc. (Doc. # 9), Motion to Set Aside Default by Kyan Flynn, Mechelle Bonilla and Carlyn

21  Lindsten (Doc. # 41), Motion to Set Aside Default by University of Phoenix (Doc. # 47), and

22  Motion to Set Aside Default by April Alcorn (Doc. # 49) are **GRANTED.**

23          IT IS FURTHER ORDERED that service of process upon each Defendant is

24  **QUASHED.** Plaintiff has forty-five (45) days from the date of this order in which to either

25  (1) properly serve each Defendant in accordance with applicable law, or (2) file a waiver of

26  service. The Motion to Dismiss for Lack of Jurisdiction by Apollo Group, Inc. (Doc. # 10),

27  Motion to Dismiss Plaintiff's Complaint, or In the Alternative, Motion for More Definite

28  Statement Kyan Flynn, Mechelle Bonilla and Carlyn Lindsten (Doc. # 40), Motion to Dismiss

1  for Lack of Jurisdiction by University of Phoenix (Doc. # 44), and Motion to Dismiss for Lack

2  of Jurisdiction by April Alcorn (Doc. # 46) are **DENIED without prejudice.**

3       IT IS FURTHER ORDERED that the Motion for Default Judgment as to Apollo Group,

4  Inc. (Doc. # 6), Motion for Default Judgment as to Mechelle Bonilla (Doc. # 29), Motion for

5  Default Judgment as to Kyan Flynn (Doc. # 30), the Motion for Default Judgment as to Carlyn

6  Lindsten (Doc. # 31), Motion for Default Judgment as to April Alcorn (Doc. # 42), and Motion

7  for Default Judgment as to University of Phoenix (Doc. # 43) are **DENIED without**

8  **prejudice.**

9       IT IS FURTHER ORDERED that Plaintiff's Motion to Strike the Defendants' Notice

10 of Non-Opposition (Doc. # 69) is **DENIED without prejudice.**

11

12

13

14 DATE: 7/22/08

15                                         WILLIAM Q. HAYES
                                           UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

07cv2373 WQH (CAB)

# EXHIBIT 2



**Snell & Wilmer**
———— L.L.P. ————.
LAW OFFICES

600 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626-7689
714.427.7000
714.427.7799 (Fax)
www.swlaw.com

DENVER

LAS VEGAS

ORANGE COUNTY

PHOENIX

SALT LAKE CITY

TUCSON

Nathan Hicks
714.427.7424
nhicks@swlaw.com

August 1, 2008

Chad McKinney, Pro Se
6266 Madeline Street Apt. No. 61
San Diego, CA 92115-5630

     Re:    McKinney v. Apollo Group, Inc., et al; Court's Order / Waiver of Service
            Inquiry

Dear Mr. McKinney:

    As you may be aware, the Court in this matter has set aside the previous entry of defaults, quashed your previous attempts at service upon all of the named defendants and ordered you to either re-serve all of the defendants or obtain a waiver of service from them. If you wish to discuss obtaining a waiver of service from the defendants, please contact me at your earliest convenience.

                    Sincerely,

                    Snell & Wilmer

                    Nathan Hicks

# EXHIBIT 3

Page 14

MAR-06-2008 THU 03:11 PM APOLLO GROUP HR                FAX NO. 480 557 1299              P. 05/12

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 488-2007-00775 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Chad D. Mckinney | (619) 634-3566 | 03-29-1981 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6266 Madeline St., #61, San Diego, CA 92115 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| APOLLO GROUP | 500 or More | (480) 557-1280 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4615 E. Elwood Street,  Phoenix, AZ 85040 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 08-07-2006    Latest 07-19-2007

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. ( See attached six page Statement of Facts )

OCT 2 3 2007
EEOC SDLO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/18/2007   x C_ _ M_ K_
Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**Page 15**

MAR-06-2008 THU 03:12 PM APOLLO GROUP HR          FAX NO. 480 557 1299          P. 06/12

## Statement of Facts

1) I was hired on August 7th 2006 as an Enrollment Counselor for the University of Phoenix. I was interviewed by Kyan Flynn, Barbara Keramati, and Andrea Beltran.

2) During the interviewing process I was told this was a salary position and there was not any mention that my salary would go down if I did not meet quotas for new applicants.

3) It was communicated to me that my salary could increase if I were to successfully meet the goals my employment matrix outlined. These goals were not completely outlined for me at that time, however Kyan Flynn communicated to me that laborious efforts, dedication, and job competency were required for an increase in salary to take effect.

4) After two months I realized that my salary was based on enrollment quotas.

5) There is a lot of pressure to meet sales quotas via harassing emails, vocalization of threats, and contests. Rewards, bonuses [of monetary value], and/or special treatment are given to those who enroll the most students.

6) The Higher Education Act prohibits universities from using sales quotas for enrollment counselors.

7) Though I often met my weekly "Osira" goals of; 3.5 appointments, 1.5 applications, and 2 referrals, it was often communicated to me that this was not enough. In several one on one meetings with my first manager Barbara Keramati I was reminded that I was a student with the University and that my tuition reimbursement would be revoked should I fail to meet my "goal" of enrolling at least four students per month, she stated to me several times that she did not wish for that to occur.

8) On the 19th of December, 2006 it was communicated via an email written by my manager Barbara Keramati and forwarded to the Directors of the company; Kyan Flynn and Kim Savich that my job performance was exceptional "kudos to Chad McKinney…Chad you are my hero!!!!!!!!!!!!..7 appointments and 6 spins [applications]..can it get any better that that?" Other employees were even encouraged to contact me for advice on how to improve their performance.

9) On a multitude of occasions from the end of February until I was terminated I received countless

EXHIBIT C PAGE 2

Page 16

harassing emails from the Associate Director of Enrollment; Carlyn Lindsten. These emails; threatened reductions in pay if enrollment quotas were not met, questioned the level of dedication I afforded to my job duties and if I was truly serious about my career with the company, why quotas for student enrollment were not met, and asked to "step it up" in condescending threatening fashion. These types of emails were sent out almost daily, and sometimes multiple times in one day.

10) I felt the enrollment practices of this company presented an ethical dilemma and decided to apply for a position as an Academic Counselor in the Academic department. I was also encouraged to do so by my then manager Barbara Keramati via email and one on one conversation. In late February I submitted my resume to Thomas Graneau Jr.

11) At the end of February or the beginning of March I was transferred from the Kearny Mesa campus to the downtown campus by Associate Director of Enrollment Carlyn Lindsten after voicing my concerns with the decision to her.

12) I was granted an interview for the Academic position and met with Thomas Graneau Jr. and Colleen Bjornson in early March.

13) I was not selected for the position of Academic Counselor.

14) Although Mechelle Bonilla was not my manager for the month of February she pressured me to sign a "Discussion Memo" that stated my performance fell below expectations of; appointments seen, applications, and students whom started class and that "failure to improve your performance may result in further disciplinary action up to and including termination."

15) Some of my applicants were given to other people in disregard to corporate policy on the 26th of March, 2007 because I questioned the legality of the university's enrollment practices in a previous conversation in early March with my second manager; Mechelle Bonilla.

16) My "lead base" [number of students in my data base available for contact] was reduced drastically by my manager Mechelle Bonilla from March until I was terminated, and several of these students were transferred and assigned to Alison Herring.

**Page 17**

17) My work schedule was changed without consultation by the Associate Director of Enrollment Carlyn Lindsten on the 26th of March, 2007 in order to make everyone available for "QC" [Qualifying Center] telephone calls to "help everyone hit their goal!" The amount of QC calls I received dwindled from March onward, and I did not receive any QC calls in June or July of 2007.

18) I was asked then pressured to sign documents that I felt were untrue relating to my performance.

19) My salary was reduced because I did not "meet goal" in May from $37,000 to $35,500.

20) I contacted the independent office of Ombuds Services anonymously in the beginning of June to research my options in hopes of protecting myself from further retaliatory acts taken by the company against me for voicing concerns with company policy.

21) I submitted my claims, and evidence in support of said claims, to the Human Resources department, Employee Relations Consultant; April Alcorn, on June 11, 2007.

22) I was told in a telephone conversation on the 11th of June, 2007 by April Alcorn that the issue would be resolved in two weeks.

23) On the 12th of June, 2007 April Alcorn sent me an email stating "I received your fax and will be looking into your concerns."

24) The university continued to create a hostile work environment for myself, after I had demanded that it cease and desist. I was harassed with emails threatening termination on the 20th of June, 2007 by co-worker Alison Herring and approved of by my manager Mechelle Bonilla if I did not participate and perform adequately in a team "blitz" at 11:30. Team "blitzs" are designated times [by the manager], three times a day, in which we are expected to not leave our cubicle, make as many telephone dials as possible, and schedule as many students possible for appointments. The subject title read "IF YOU DON['']T BLITZ AT 11:30 MECHELLE SAYS YOU'RE FIRED!" The top performing Enrollment Counselor on Mechelle Bonilla's "team"; Bertha Castillo even responded to this email to justify her absence from this "blitz". Enrollment Counselor Fran Beadles also called in from the Palm Desert campus to Mechelle Bonilla on that day to voice her concerns with the email. At the conclusion of the telephone conversation she was

berated in the Downtown office by Mechelle Bonilla and Alison Herring for being a "nuisance" and was also referred to as an "idiot".

25) I received an overnight Federal Express package dated June 14th, 2007 from April Alcorn thanking me for bringing my workplace concerns to her attention and that she will be contacting me at a later time to "discuss the findings".

26) At the end of June 2007 I was harassed by Mechelle Bonilla for my attire on casual Friday; flip flops, jeans, and a shirt. I viewed this action as discriminatory and retaliatory due to the fact that Alison Herring, Tiffany Jones, and Davina Mendoza had all worn the same attire [as well as tank tops] previously unpunished [not limited to "casual Friday"].

27) I immediately contacted April Alcorn to notify her of my concerns regarding my perceived bias and harassment by Mechelle Bonilla in relation to the casual Friday dress code.

28) On the 2nd of July, 2007 I was asked by Mechelle Bonilla to search the websites for the dress code, because she was "too busy". I could not find any information on the company websites regarding the dress code, as could she.

29) The situation was not resolved in the time frame that April Alcorn had communicated via telephone conversation, which was to be the 6th of July, 2007. This date had originally been set much earlier via telephone conversation by April Alcorn.

30) I was extremely stressed out over the situation, and had communicated this to April Alcorn, as well as my manager, Michelle Bonilla, on several occasions via email, telephone and one on one conversation.

31) I began grinding my teeth, vomiting, and receiving stomach pains in response to the hostile work environment, harassment and stress I had endured while at work.

32) I saw Dr. Calixto on July 3rd, 2007 at Beautiful Smile Dentistry to seek advice on how to stop grinding my teeth.

33) I was then told by April Alcorn via telephone conversation that she had completed her investigation and the issue would be resolved by the 12th of July, 2007.

34) I then received an email from April Alcorn on the 12th of July, 2007 at 9:47 a.m. stating that she had

"submitted the investigation documentation to my
management team for review", which was contrary to
her previous promise of resolution.

35)  I immediately telephoned April Alcorn in response to
this contradiction and she assured me that this
would finally be resolved within twenty four hours.

36)  I again voiced my distress to April Alcorn regarding
the hostile work environment and harassment that I
continued to endure.

37)  I was contacted, by Angie Jibben, and told that I
should take a leave of absence on July 12th 2007
around four p.m. via telephone. I stated that I
would prefer to wait for the resolution which was
promised to me by April Alcorn, thanked her for the
offer, and said that I would consider this an option
should the need dictate so. The offer was never
retracted, and was again encouraged before the
completion of the telephone call by Angie Jibben as
a solution to my endured stress and harassment from
the company.

38)  I did not receive any type of notification of
resolution from April Alcorn or any other interested
parties regarding my claims against the company by
one o'clock in the afternoon. When I attempted to
contact April Alcorn after 1:00 on the 13th of July,
2007 a gentleman [whose name I do not recall]
answered her personal work line. He attempted to
pry me for information regarding my claims and
agreed to leave a message for her.

39)  On July 13th, 2007 at 6:00 p.m., I did not receive
any information regarding my claims against the
company and the issue still had not been resolved as
was communicated it would be by April Alcorn.

40)  On July 13th, 2007, I could not take the stress
anymore and accepted the offer to leave the hostile
work environment until my issues were resolved.

41)  On July 13th, 2007, I notified April Alcorn and
Mechelle Bonilla via email that I would take a 10
day non-paid vacation in order to provide them
enough time to rectify the situation. I provided my
personal email account, should they need to contact
me immediately.

42)  On July 16th, 2007 I left for vacation in an attempt
to alleviate my stress.

43)  While I was gone, three overnight Federal Express
packages were left at my door from April Alcorn.

**Page 20**

44) The first package was dated July 17th, 2007, and stated in a letter that I needed to return to work no later than Thursday, July 19th, 2007 at my regularly scheduled work time. "Failure to report to work by the designated date will leave us no other alternative but to accept your voluntary resignation."

45) I never received any information pertaining to this on the contact email I had made available to April Alcorn and Mechelle Bonilla.

46) The second and third packages were dated July 19th, 2007.

47) The second letter stated, "You failed to report to work at the designated date and time. Consistent with our policy, the Company has chosen to separate your employment effective July 19th, 2007."

48) The third and final letter stated, "Please be advised that the Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations."

# EXHIBIT 4

**Page 22**

MAR-06-2008 THU 03:10 PM APOLLO GROUP HR          FAX NO. 480 557 1299          P. 02/12

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Mr. Chad D. McKinney
6266 Madeline Street, Apt. 61
San Diego, CA. 92115

From: Equal Employment Opportunity Commission
401 'B' Street, Suite 1550
San Diego, CA 92101

**COPY**

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2007-00775 | Roger Owen | (619) 557-7235 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ X ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ . ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*Paul Green* 
Paul Green, Supervisor Local Office

*11/9/2007*
*(Date Mailed)*

Enclosure(s)

cc:    Apollo Group

**Page 23**

MAR-06-2008 THU 03:10 PM APOLLO GROUP HR          FAX NO. 480 557 1299          P. 03/12

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| **APOLLO GROUP**<br>4615 E. Elwood Street<br>Phoenix, AZ 85040 | **PERSON FILING CHARGE**<br><br>**Chad D. Mckinney**<br>THIS PERSON (check one or both)<br>☐ Claims To Be Aggrieved<br>☐ Is Filing on Behalf of Other(s)<br><br>EEOC CHARGE NO.<br>488-2007-00775 |

### NOTICE OF CHARGE OF DISCRIMINATION
(See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act                    ☐ The Americans with Disabilities Act

☐ The Age Discrimination in Employment Act            ☐ The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. ☐ Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☐ Please respond fully by _____ to the specific request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____.
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| | |
|---|---|
| **Roger A. Owen,**<br>**Investigator**<br>*EEOC Representative*<br>Telephone    **(619) 557-7283** | **San Diego Local Office**<br>**401 B Street**<br>**Suite 510**<br>**San Diego, CA 92101** |

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN   ☐ AGE   ☐ DISABILITY   [X] RETALIATION   ☐ OTHER

**See enclosed copy of charge of discrimination**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| October 29, 2007 | **Joyce E. Cooper,**<br>**Local Office Director** | *Joyce Cooper* |

**Page 24**

MAR-06-2008 THU 03:11 PM APOLLO GROUP HR          FAX NO. 480 557 1289          P. 04/12

*Enclosure with EEOC*
*Form 131 (5/01)*

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

Section 1602.14  Preservation of records made or kept. . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

**Page 25**

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

**PROOF OF SERVICE**

2

**McKinney v. Apollo Group, Inc., et al.**
**USDC, Southern – Case No. 07-CV-2373**

3

4       I am employed in the County of Orange, State of California.  I am over the age of

5   18 and not a party to the within action; my business address is 600 Anton Boulevard,
Suite 1400, Costa Mesa, California 92626-7689.

6       On September 9, 2008, I served, in the manner indicated below, the foregoing
document described as **EXHIBIT TO DECLARATION OF NATHAN W. HICKS IN**

7   **SUPPORT OF APRIL ALCORN'S MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE**

8   **STATEMENT** on the interested parties in this action by placing true copies thereof,
enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

9

| | |
|---|---|
| 10   Chad McKinney<br>6266 Madeline Street, Apt. #61<br>11   San Diego, CA 92115 | Plaintiff, Pro Se<br>Tel: (619) 634-3566<br><br>TRACKING # 798508102292 |
| 12 | |
| 13   United States District Court<br>Attention: Hon. Judge William Q. Hayes<br>14   Courtroom 2<br>940 Front Street, Room 4290<br>15   San Diego, CA 92101-8900 | Courtesy Copy<br>Tel: (619) 557-5600<br><br>TRACKING # 792104054237 |

16

17       I am employed in the office of a member of the bar of this court at whose direction

18   the service was made.

19       ☒       BY FEDERAL EXPRESS:  I caused such envelopes to be delivered by air
courier, with next day service, to the offices of the addressees. (C.C.P. §

20                1013(c)(d)).

21

22       I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

23       Executed on September 9, 2008, at Costa Mesa, California.

24

25       _____
Anh Dufour

26

27

28

8626180