1  Christy D. Joseph (#136785)
   cjoseph@swlaw.com
2  Nathan W. Hicks (#236269)
   nhicks@swlaw.com
3  SNELL & WILMER L.L.P.
   600 Anton Boulevard, Suite 1400
4  Costa Mesa, CA 92626-7689
   Telephone: (714) 427-7000
5  Facsimile: (714) 427-7799

6

7  Attorneys for Defendant April Alcorn

8          UNITED STATES DISTRICT COURT – SOUTHERN DISTRICT OF

9                                    CALIFORNIA

10

11  CHAD MCKINNEY, an individual,      | CASE NO. 07-CV-2373 WQH CAB

12                    Plaintiff,       | **EXHIBITS TO DECLARATION OF APRIL ALCORN IN SUPPORT OF**
13  v.                                 | **APRIL ALCORN'S MOTION TO DISMISS PLAINTIFF'S**
14  APOLLO GROUP, INC.,                | **COMPLAINT OR, IN THE**
    UNIVERSITY OF PHOENIX, a           | **ALTERNATIVE, MOTION FOR**
15  Corporation, MECHELLE              | **MORE DEFINITE STATEMENT**
    BONILLA, an Enrollment Manager     |
16  at UNIVERSITY OF PHOENIX,          | **[FRCP 12(b)(2); 12(b)(5); 12(b)(6);**
    KYAN FLYNN, Director of            | **12(e).]**
17  Enrollment at UNIVERSITY OF        |
    PHOENIX, APRIL ALCORN, an          | Date: October 20, 2008
18  Employees Relations Consultant at  | Time: 11:00 a.m.
    UNIVERSITY OF PHOENIX,             | Courtroom: 4
19  CARLYN LINDSTEN, Associate         | Judge: Hon. William Q. Hayes
    Director of Enrollment at          |
20  UNIVERSITY OF PHOENIX              | **NO ORAL ARGUMENT UNLESS**
                                       | **REQUESTED BY THE COURT**
21                    Defendants       |

22

23                                     | DATE OF FILING: December 19, 2007

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# INDEX

| Exhibit | Description | Page |
|---------|-------------|------|
| 1 | McKinney Summons and Complaint served via Mail | 2 |
| 2 | Envelope of McKinney service of Summons and Complaint | 24 |

9090675

USDC-SOUTHERN DISTRICT CALIFORNIA
CASE NO. 07-CV-2373 WQH CAB

ALCORN INDEX

# EXHIBIT 1

%AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

THE UNITED STATES DISTRICT COURT SOUTHERN          District of          California

Chad McKinney, Pro Se

**SUMMONS IN A CIVIL CASE**

V.

APOLLO GROUP INC., UNIVERSITY OF PHOENIX, A Corporation, MICHELLE BONILLA, an
Enrollment Manager at UNIVERSITY OF PHOENIX, RYAN FLYNN, Director of Enrollment at
UNIVERSITY OF PHOENIX, APRIL ALCORN, an Employee Relations Consultant at UNIVERSITY OF
PHOENIX, CARLYN LINDSTEN, Associate Director of Enrollment at UNIVERSITY OF PHOENIX

CASE NUMBER:

07 CV 23 7~ WQHCAB

TO: (Name and address of Defendant)      University of Phoenix
Attention of : April Alcorn
4615. E. Elwood St.
Phoenix, Az  85040

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Chad McKinney, Pro Se
6266 Madeline Street Apt. No. 61
San Diego, Ca 92115-5630

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

W. SAMUEL HAMRICK, JR.

JAN 1 5 2008

CLERK

(By) DEPUTY CLERK

DATE

**Page 2**

*AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ G  Served personally upon the third-party defendant. Place where served: _____

☐ G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ G  Returned unexecuted: _____

☐ G  Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                  Date                    *Signature of Server*

                                     _____
                                     *Address of Server*

*(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# CIVIL COVER SHEET

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Chad McKinney, 6266 Madeline Street Apt. 61, San Diego CA
92115-5630 Tel- 619-634-3566

(b) County of Residence of First Listed Plaintiff    SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
CHAD MCKINNEY, PRO SE (contact information listed above)

## DEFENDANTS

APOLLO GROUP INC., MECHELLE BONILLA,
KYAN FLYNN, APRIL ALCORN, CARLYN LINDSTEN

County of Residence of First Listed Defendant    SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                 and One Box for Defendant)

|  | PTF | DEF |  |  | PTF | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

Appeal to District
Judge from Magistrate Judgment

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      another district
      (specify)

☐ 6  Multidistrict
      Litigation

☐ 7  Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
False Claims Act (31 USC §§3729-3733) & CIVIL RIGHTS ACT 1964 & 1991 TITLE VII AMENDMENTS

Brief description of cause:
RETALIATION-WRONGFUL TERMINATION, FALSE CLAIMS ACT- RETALIATION

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

**DEMAND $**
250,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
12/17/2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Page 4**

1

2   Chad McKinney
    Pro Se
3   6266 Madeline St Apt #61
    San Diego, CA 92115
4   619-634-3566

5
      THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
6

7                                              )  CIV. Case No. 07-CV-2373
    CHAD MCKINNEY, an individual,              )
8                                              )  FOR VIOLATION OF FEDERAL
                                               )  FALSE CLAIMS ACT AND FOR
9                                              )  VIOLATION OF THE
                                               )  THE CIVIL RIGHTS ACT 1964 AND
10                                             )   THE AMENDMENTS TO TITLE
                                               )  VII OF THE CIVIL RIGHTS ACT OF
11                                             )  1991
                                               )
12            Plaintiff,                        )
                                               )
13                                             )
                                               )  RETALIATION- WRONGFUL
14                                             )   TERMINATION &
                                               )  EMPLOYENT DISCRIMINATION
15                                             )     CIVIL ACTION
                                               )
16   v.                                        )
                                               )
17   APOLLO GROUP INC., UNIVERSITY OF          )
     PHOENIX , a Corporation, MECHELLE         )
18   BONILLA, an Enrollment Manager at         )
     UNIVERSITY OF PHOENIX, KYAN               )
19   FLYNN, Director of Enrollment at          )
     UNIVERSITY OF PHOENIX, APRIL              )
20   ALCORN, an Employee Relations             )
     Consultant at UNIVERSITY OF PHOENIX       )  Demand for Trial By Jury Pursuant
     CARLYN  LINDSTEN, Associate Director of   )  to U.S. Constitution, 7th Amendment
21   Enrollment at UNIVERSITY OF PHOENIX       )
                                               )  Filed:
22            Defendants                       )  December 19th, 2007
                                               )
23   _____   )

24
                                    1

## STATEMENT OF THE CASE

1.

This instant arises primarily from the defendant's discriminatory behavior against the plaintiff while the plaintiff was employed by the defendant, including but not limited to the wrongful termination of the plaintiff. More specifically, this case arises out of the defendant retaliating against the plaintiff in violation of the Federal False Claims Act § 3729. In 1986, Congress added provisions in 31 U.S.C. Sec. 3730(h):   "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of his employer or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole."

The Defendant's discriminatory behavior against the Plaintiff is also in violation of Title VII of the CIVIL RIGHTS ACT of 1964 and amendments to Title VII of the CIVIL RIGHTS ACT of 1991.

Various common laws were also broken by the defendant in violation of the rights of the plaintiff.

2

1

2

3

4

2.                                  **JURISDICTION**

5

6

7     The plaintiff asks the Court to recognize the jurisdiction of this case as the case meets the

8     requirement of jurisdiction under the Federal False Claims Act and Title VII of the Civil

9     Rights act of 1964 as amended in 1991. It should be further noted that the EEOC

10    recognized jurisdiction in evaluating the case and submitted to the plaintiff a 90 day

11    "right to sue" letter.

12

13

3.                                  **VENUE**

14

15    The employer APOLLO GROUP INC, UNIVERSITY OF PHOENIX, is located

      in San Diego at the following locations.

16

17            Apollo Group, Inc
              University of Phoenix
18            3890 Murphy Canyon Road
              San Diego, CA 92123

19

20            Apollo Group, Inc
              University of Phoenix
21            1230 Columbia Street
              San Diego, CA 92101

22            The venue is proper for this action.

23

24
                                        3

4.  **TIMELINESS OF PETETION**

This action is timely filed within the statute of limitations as provided by the EEOC. As required by law, a complaint was filed with the EEOC before filing this action.

This action is also timely within the Federal False Claims act.

5.  **PARTIES**

Plaintiff Chad McKinney is an American citizen residing at 6266 Madeline St., APT #61, San Diego, CA, 92115.

Defendant Apollo Group Inc., University of Phoenix is located at:

Apollo Group, Inc
University of Phoenix
3890 Murphy Canyon Road
San Diego 92123

Defendant, MECHELLE BONILLA, Enrollment Manager of UNIVERSITY PHOENIX, was employed at the San Diego office located at:

Apollo Group, Inc
University of Phoenix
1230 Columbia Street
San Diego, CA 92101

Defendant KYAN FLYNN, Director of Enrollment of UNIVERSITY PHOENIX, and Defendant CARLYN LINDSTEN, Associate Director of Enrollment of UNIVERSITY OF PHOENIX, both were employed at the San Diego office located at:

Apollo Group, Inc
University of Phoenix
3890 Murphy Canyon Road
San Diego 92123

4

1

2   Defendant APRIL ALCORN a Human Resources Manager of UNIVERSITY OF
    PHOENIX, was employed at the corporate headquarters, located at:

3

4                   Apollo Group, Inc
                    University of Phoenix
                    4615 E. Elwood St.
5                   Phoenix, AZ 85040

6

7                       **STATEMENT OF FACTS**

8
        1)   Plaintiff was hired on August 7th 2006 as an Enrollment Counselor for the
9
             University of Phoenix. Plaintiff was interviewed by Kyan Flynn, Barbara
10
             Keramati, and Andrea Beltran.
11

12
        2)   During the interviewing process Plaintiff was told the job was a salary
13
             position and there was no mention to the Plaintiff that his salary would
14
             decrease if the Plaintiff did not meet quotas for new applicants.
15

16
        3)   It was communicated to Plaintiff that his salary could increase if he were to
17
             successfully meet the goals of the defendant's employment matrix. The
18
             specifics of the matrix were not outlined to the Plaintiff during the interview.
19
             Kyan Flynn did communicate to the Plaintiff that "laborious efforts,
20
             dedication, and job competency" were required for an increase in salary to
21
             take effect.
22

23

24
                                        5

4)    After two months of employment the Plaintiff discovered that his salary was based on enrollment quotas via discussions of the "employment matrix" and discussions with other employees.

5)    The Plaintiff received harassing emails, vocalization of threats (from his manager), and was entered into contests to encourage sales quotas. Rewards, bonuses [of monetary value], and/or special treatment were given to those who enrolled the most students.

6)    The Plaintiff, after discovering that the Higher Education Act prohibits universities from using sales quotas for enrollment counselors, mentioned this concern to his manager, and direct supervisor, Mechelle Bonilla.

7)    Even after the Plaintiff mentioned that he believed that the Higher Education Act prohibited sales quotas for Universities, the Plaintiff's manager still asked the Plaintiff to meet a weekly program called "Osira", which was a sales goals of: 3.5 appointments, 1.5 applications, and 2 referrals per week. It was often communicated to the Plaintiff that sales quotas were required. In several one on one meetings the Plaintiff's first manager, Barbara Keramati, reminded the Plaintiff that he was not only an employee but also a student with the University, and that his tuition reimbursement would be revoked if he failed to meet the "goal" of enrolling at least four students per month. Ms. Keramati stated to the Plaintiff on several occasions that she did not wish to enforce that revocation and encouraged the Plaintiff to meet a quota.

6

8) On the 19th of December, 2006 it was communicated via an email written by the Plaintiff's manager, Barbara Keramati, and forwarded to the Directors of the company; Kyan Flynn and Kim Savich that the Plaintiff's job performance was exceptional: "kudos to Chad McKinney...Chad you are my hero!!!!!!!!! 7 appointments and 6 apins [applications]..can it get any better that that?" Other employees were even encouraged to contact the Plaintiff for advice on how to improve their performance.

9) On a multitude of occasions from the end of February 2007 until the Plaintiff was terminated, he received multiple harassing emails from the Associate Director of Enrollment; Carlyn Lindsten. These emails threatened reductions in pay if enrollment quotas were not met, questioned the level of dedication of the Plaintiff and asked the Plaintiff if he was truly serious about his career with the company. She also asked why quotas for student enrollment were not met, and asked the Plaintiff to "step it up" in condescending threatening fashion. These types of emails were sent out almost daily, and sometimes multiple times in one day.

10) The Plaintiff felt the enrollment practices of this company presented an ethical dilemma and decided to apply for a position as an Academic Counselor in the Academic department. He was encouraged to do so by his first manager Barbara Keramati via email and a one on one conversation. In late February

7

1    2007 the Plaintiff submitted his resume to Thomas Graneau Jr., an employee

2    of the Defendant.

3

4    11)    Around the time of late February 2007 but no later than that of early March

5    2007, the Plaintiff was transferred from the Kearny Mesa campus to the

6    downtown campus by Associate Director of Enrollment Carlyn Lindsten.

7    This transfer was soon after the Plaintiff again voiced concerns to Ms.

8    Lindsten of the legality of the quota system and the Defendant's San Diego

9    office. .

10

11   12)    The Plaintiff was granted an interview for the Academic position and met with

12   Thomas Graneau Jr. and Colleen Bjornson in early March. He was not

13   selected for the position of Academic Counselor.

14

15   13)    Although Mechelle Bonilla was not the Plaintiff's manager for the month of

16   February of 2007, she told the Plaintiff to sign a "Discussion Memo" that

17   stated his performance fell below expectations of the  appointments seen,

18   applications, and students whom started class and that "failure to improve

19   your performance may result in further disciplinary action up to and including

20   termination."

21   Although the Plaintiff did not agree with the quota system he accepted the

22   reprimand and signed the Discussion Memo.

23

24

8

14) Many of the Plaintiff's applicants were subsequently transferred to other San Diego staff to maintain in disregard to corporate policy. This started on the 26th of March, 2007, soon after the plaintiff questioned the legality of the university's enrollment practices in a previous conversation in early March with his second manager; Mechelle Bonilla.

15) The Plaintiff's "lead base" [number of students in his data base available for contact] was reduced drastically by his manager Mechelle Bonilla from March 2007 until he was terminated. Several of these students were transferred and assigned to Alison Herring.

16) Plaintiff 's work schedule was changed without consultation of Plaintiff by the Associate Director of Enrollment Carlyn Lindsten on the 26th of March, 2007 in order to make everyone available for "QC" [Qualifying Center] telephone calls to "help everyone hit their goal!" The amount of QC calls the Plaintiff received dwindled from March onward. Plaintiff did not receive any QC calls in June or July of 2007.

17) Plaintiff was asked and pressured by San Diego management to sign documents that the Plaintiff felt were untrue relating to his performance.

18) Plaintiff's salary was reduced from $37,000 to $35,500 in May. Defendant states that the reasons were because he did not "meet goal" in May. Plaintiff contacted the independent office of Ombuds Services anonymously in the

9

1   beginning of June 2007 to research his options in the hopes of protecting

2   himself from further retaliatory acts taken by the company against him for

3   voicing concerns about the company policy of using quotas.

4

5   19)   Plaintiff submitted evidence to the Human Resources department, Employee

6   Relations Consultant; April Alcorn, on June 11, 2007 supporting his claim

7   that the San Diego office was using harassment and intimidation to get the

8   plaintiff to quit employment or accept the sales quota system.

9

10  20)   The Plaintiff was told in a telephone conversation on the 11th of June, 2007 by

11  April Alcorn that the issue the Plaintiff described in San Diego would be

12  resolved in two weeks.

13

14  21)   On the 12th of June, 2007 April Alcorn sent an email stating to the Plaintiff:

15  "I received your fax and will be looking into your concerns."

16

17  22)   The university continued to create a hostile work environment for Plaintiff

18  even after he demanded to HR that it cease and desist. He was harassed with

19  emails threatening termination on the 20th of June, 2007 by co-worker Alison

20  Herring and approved of by his manager Mechelle Bonilla stating that if he

21  did not participate and perform adequately in a team "blitz" at 11:30 he could

22  be terminated. Team "blitzs" are designated times [by the manager], three

23  times a day, in which employees were expected to not leave their cubicle, and

24

10

make as many telephone dials as possible, and schedule as many students possible for appointments. The subject title read "IF YOU DON[']T BLITZ AT 11:30 MECHELLE SAYS YOU'RE FIRED!" The top performing Enrollment Counselor on Mechelle Bonilla's "team"; Bertha Castillo even responded to this email to justify her absence from this "blitz". Enrollment Counselor Fran Beadles also called in from the Palm Desert campus to Mechelle Bonilla on that day to voice her concerns with the email. At the conclusion of the telephone conversation she was berated in the Downtown office by Mechelle Bonilla and Alison Herring for being a "nuisance" and was also referred to as an "idiot".

23) The Plaintiff received an overnight Federal Express package dated June 14th, 2007 from April Alcorn thanking him for bringing his workplace concerns to her attention and that she would be contacting him at a later time to "discuss the findings".

24) At the end of June 2007 the plaintiff was reprimanded by Mechelle Bonilla for his attire on a casual Friday (flip flops, jeans, and a t-shirt). This action was discriminatory and retaliatory since Alison Herring, Tiffany Jones, and Davina Mendoza had all worn the same attire [as well as tank tops] and were previously unpunished [not limited to "casual Friday"].

11

25) Plaintiff immediately contacted April Alcorn to notify her of his concerns regarding the bias and harassment by Mechelle Bonilla in relation to the casual Friday dress code.

26) On the 2nd of July, 2007 the Plaintiff was asked by Mechelle Bonilla to search the websites for the dress code, because she was "too busy". Plaintiff could not find any information on the company websites regarding the dress code, neither could Mechelle Bonilla.

27) The situation of harassment, which was informed to April Alcorn, (who had promised to get back to the Plaintiff in 2 weeks) was not resolved in the time frame that April Alcorn had communicated via telephone conversation, which was to be the 6th of July, 2007. This date had originally been set much earlier via telephone conversation by April Alcorn.

28) The Plaintiff was extremely stressed out over the situation, and had communicated this to April Alcorn, as well as his manager, Mechelle Bonilla, on several occasions via email, telephone and one on one conversation.

29) The Plaintiff's stress increased daily soon after the original harassment in March 2007. Plaintiff began grinding his teeth, vomiting, and receiving stomach pains in response to the hostile work environment.

12

1    30)   Plaintiff decided to see Dr. Calixto on July 3rd, 2007 at Beautiful Smile

2            Dentistry to seek advice on how to stop grinding his teeth.

3

4    31)   Plaintiff was told in early July by April Alcorn via telephone conversation that

5            she had completed her investigation and the issue would be resolved by the

6            12th of July, 2007.

7

8    32)   Plaintiff received an email from April Alcorn on the 12th of July, 2007 at 9:47

9            a.m. stating that she had "submitted the investigation documentation to my

10          management team for review", which was contrary to her previous promise of

11          resolution on such date. Plaintiff immediately telephoned April Alcorn in

12          response to this contradiction and she assured him that this would finally be

13          resolved within twenty four hours. Plaintiff again voiced his distress to April

14          Alcorn regarding the hostile work environment and harassment that he

15          continued to endure.

16

17    33)   Plaintiff was contacted, by Angie Jibben, and told that he should take a leave

18          of absence during an afternoon call on July 12th 2007. Defendant stated that

19          he would prefer to wait for the resolution which was promised to him by April

20          Alcorn, thanked her for the offer, and said that he would consider this an

21          option should the need dictate so. The offer was never retracted, and was

22          again encouraged before the completion of the telephone call by Angie Jibben

23          as a solution to the Plaintiff's endured stress and harassment from the

24          company.

13

34) Plaintiff did not receive any type of notification of resolution from April
Alcorn or any other interested parties regarding his claims against the
company by one o'clock the afternoon of July 13th. When Plaintiff attempted
to contact April Alcorn after 1:00 on the 13th of July, 2007 a gentleman
[whose name he did not recall] answered her personal work line. He
attempted to pry the Plaintiff for information regarding his claims and agreed
to leave a message for her.

35) On July 13th, 2007 at 6:00 p.m., the Plaintiff did not receive any information
regarding his claims against the company and the issue still had not been
resolved as was communicated to him by April Alcorn.

36) On July 13th, 2007, based upon the mental stress, and the tooth grinding
condition which started soon after the stressful work environment at the
Defendant's location, the Plaintiff decided to take the leave of absence offered
earlier by Angie Jibben. The Plaintiff felt that this would allow for some
needed rest and also allow the defendant even more time to resolve the hostile
working conditions that were stressing him out.

37) On July 13th, 2007, the Plaintiff notified April Alcorn and Mechelle Bonilla
via email that he would take a 10 day non-paid vacation in order to provide

14

1    them enough time to rectify the situation. He provided his personal email

2    account, should they need to contact him.

3

4    38)    On July 16th, 2007 the Plaintiff left for vacation in an attempt to alleviate his

5    stress and allow the defendant time to resolve the work environment issue.

6

7    39)    While the Plaintiff was on Leave of Absence, he received three overnight

8    Federal Express packages were left at his door from April Alcorn. The first

9    package was dated July 17th, 2007, and stated in a letter that he needed to

10    return to work no later than Thursday, July 19th, 2007 at his regularly

11    scheduled work time. "Failure to report to work by the designated date will

12    leave us no other alternative but to accept your voluntary resignation." The

13    Plaintiff never received any information pertaining to this on the contact email

14    he had made available to April Alcorn and Mechelle Bonilla.

15

16

17    40)    The second and third packages were dated July 19th, 2007.

18

19    41)    The second letter stated, "You failed to report to work at the designated date

20    and time. Consistent with our policy, the Company has chosen to separate

21    your employment effective July 19th, 2007."

22

23

24

15

42)  The third and final letter stated, "Please be advised that the Apollo Group, Inc.
has reviewed your concerns and we find no evidence to support any findings
of the San Diego Enrollment Department violating Company policies or
procedures as outlined by your allegations."

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

#### *RETALIATION*

1986, Congress added anti-retaliation protections to the **False Claims Act** § 3729. These
provisions, which did not exist previously, are contained in 31 U.S.C. Sec. 3730(h):

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in
> any other manner discriminated against in the terms and conditions of
> employment by his or her employer because of lawful acts done by the employee
> on behalf of his employer or others in furtherance of an action under this section,
> including investigation for, initiation of, testimony for, or assistance in an action
> filed or to be filed under this section, shall be entitled to all relief necessary to
> make the employee whole.

### SECOND CAUSE OF ACTION

#### *RETALIATION (Under Title VII)*

Title VII of the 1964 Civil Rights Act and the amendment in 1991 of the Civil Rights
Act.

16

1
2
3

**THIRD CAUSE OF ACTION**

*WRONGFUL TERMINATION*

4

**FOURTH CAUSE OF ACTION**

5

FALSE IMPRISONMENT

6

7

**FIFTH CAUSE OF ACTION**

8

*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

9

10

**SIXTH CAUSE OF ACTION**

11

*DEFAMATION*

12

13

**SEVENTH CAUSE OF ACTION**

14

*EQUAL PAY*

15
16
17
18
19
20

**CONCLUSION**

21
22   The Plaintiff discovered that the Defendant was required by federal law to not use quotas

23   as part of its student recruitment process. When the Plaintiff asked the Defendant to cease

24   and desist, the Defendant retaliated via harassment and eventually terminated the

17

1  Plaintiff. Harassing and discriminatory actions by the defendant included, but were not

2  limited to Equal Pay discrimination (arbitrarily cutting the Plaintiff's salary) and creating

3  working conditions to intentionally inflict emotional distress.

4

5                              **RELIEF REQUESTED**

6

7

8  1- Trial by jury on all issues triable by jury

9  2- Actual (compensatory) damages to in the amount to be determined by a jury

10  3- Maximum Statutory damages

11  4- Punitive damages in the amount of $250,000, or the maximum allowable by law.

12  5- Costs related to bringing this action, including reasonable attorney fees

13  6- Leave to amend this complaint pursuant to F.R.C.P 15(a), once discovery in this action

14  has been completed

15  7 -Any other relief as this honorable court deems just, proper and equitable

16

17

18

19  Dated: 12/27/2007

20          12/27/2007                              Chad McKinney

21

22

23

24

                                   18

# EXHIBIT 2

This packaging is the property of the U.S. Postal Service and is provided solely for use in sending Priority Mail®.
Misuse may be a violation of federal law. This packaging is not for resale. ™© 2002 U.S. POSTAL SERVICE.



U.S. POSTAGE
PAID
SAN DIEGO,CA
APOLLO,CA
AUG 29 08
AMOUNT
$7.00
00098130-12

85040

SIGNATURE CONFIRMATION™
United States Postal Service®

2305 1590 0001 5531 4633

PLEASE PRESS FII

PLEASE PRESS FIRMLY

Print postage online - Go to usps.com/postageonline

# PRIORITY® MAIL

STATES POSTAL SERVICE

## Flat Rate Mailing Envelope

**For Domestic and International Use**

Visit us at usps.com

**From/Expéditeur:**

Chad McKinney
6266 Madeline St #61
San Diego, CA 92115

**To/Destinataire:**

University of Phoenix
Attention of: April Alcorn
4615 E Elwood St.
Phoenix, AZ 85040

**Country of Destination/Pays de destination:**

U.S.A.

TIONAL RESTRICTIONS:
ONS ON CONTENT:
g Priority Mail, restrictions apply for cash
uivalents and hazardous materials may be

SED INTERNATIONALLY 4 POUND
LIMIT APPLIES.
country-specific prohibitions/restrictions
: See International Mail Manual (IMM)
ages for details.

IS:
ational use affix customs declaration PS Form

**1. Complete Address Area**
Type or Print required return address
and addressee information in customer
block area or on label.

**2. Payment Method**
Affix postage or meter strip to area
indicated in upper right hand corner.

**3. Acceptance**
Bring your Flat Rate Priority Mail
envelope to a Post Office, or to schedule
pickup of your postage paid envelopes
visit us at usps.com/pickup.

Cradle to Cradle Certification is awarded to products that pursue

EP14F

# PROOF OF SERVICE

**McKinney v. Apollo Group, Inc., et al.**
**USDC, Southern – Case No. 07-CV-2373**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California 92626-7689.

On September 9, 2008, I served, in the manner indicated below, the foregoing document described as **EXHIBITS TO DECLARATION OF APRIL ALCORN IN SUPPORT OF APRIL ALCORN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

| | |
|---|---|
| Chad McKinney<br>6266 Madeline Street, Apt. #61<br>San Diego, CA 92115 | Plaintiff, Pro Se<br>Tel: (619) 634-3566<br><br>TRACKING # 798508102292 |
| United States District Court<br>Attention: Hon. Judge William Q. Hayes<br>Courtroom 4<br>940 Front Street, Room 4290<br>San Diego, CA 92101-8900 | Courtesy Copy<br>Tel: (619) 557-5600<br><br>TRACKING # 792104054237 |

I am employed in the office of a member of the bar of this court at whose direction the service was made.

☒    BY FEDERAL EXPRESS: I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. § 1013(c)(d)).

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 9, 2008, at Costa Mesa, California.

Anh Dufour

8626180

PROOF OF SERVICE

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000