||||
|---|---|---|
|1|||
|2|||
|3|||
|4|||
|5|||
|6|||
|7|||
|8|**UNITED STATES DISTRICT COURT**||
|9|**SOUTHERN DISTRICT OF CALIFORNIA**||
|10|||
|11|CHAD MCKINNEY, an individual,|CASE NO. 07cv2373 WQH (CAB)|
|12|Plaintiff,|**ORDER**|
|13|vs.<br>APOLLO GROUP, INC.; et al.,||
|14|Defendants.||

15  HAYES, Judge:

16      The matters before the Court are the (1) Motion to Dismiss by Apollo Group, Inc. (Doc.
17  # 91), (2) Motion to Dismiss by University of Phoenix (Doc. # 92), (3) Motion to Dismiss by
18  April Alcorn (Doc. # 93), (4) Motion to Dismiss by Mechelle Bonilla, Kyan Flynn, Carlyn
19  Lindsten (Doc. # 94), (5) Ex Parte Motion to Shorten Time for Hearing on Motion to Amend
20  by Chad McKinney (Doc. # 96), (6) Motion for Leave to Amend Original Complaint by Chad
21  McKinney (Doc. # 97), (7) Ex Parte Motion to Shorten Time for Hearing on Motion to Amend
22  by Chad McKinney (Doc. # 99), (8) Motion for Leave to Amend Original Complaint by Chad
23  McKinney (Doc. # 100), and (9) Motion for Extension of Time to File Response to
24  Defendants' Motion to Dismiss (Doc. # 108).

25                                    **Background**

26      On December 19, 2007, Plaintiff initiated this action by filing the Complaint (Doc. #
27  1). The Complaint alleges that on August 7, 2006, Plaintiff was hired as an Enrollment
28  Counselor for Defendant University of Phoenix. *Complaint,* p. 5. The Complaint alleges that

during his interview for the position, Plaintiff was told that the job was a salary position, and "there was no mention to the Plaintiff that his salary would decrease if the Plaintiff did not meet the quotas for new applicants." *Id.* The Complaint alleges that after two months of employment, "Plaintiff discovered that his salary was based on enrollment quotas." *Id.* at 6. The Complaint alleges that "after discovering that the Higher Education Act prohibits universities from using sales quotas from enrollment counselors, [Plaintiff] mentioned this concern to his manager, and direct supervisor, [Defendant] Michelle Bonilla," the Enrollment Manager of the University of Phoenix. *Id.* The Complaint alleges that despite this conversation with Bonilla, "[i]t was often communicated to the Plaintiff that sales quotas were required," and that "his tuition reimbursement would be revoked if he failed to meet the 'goal' of enrolling at least four students per month." *Id.*

The Complaint alleges that beginning in February 2007, Plaintiff began to receive harassing emails from Defendant Carlyn Lindsten, the Associate Director of Enrollment at the University of Phoenix, which threatened reduction in Plaintiff's pay if he failed to meet enrollment quotas. The Complaint alleges that Plaintiff applied for a position as an Academic Counselor in the Academic department because he felt that "the enrollment practices of this company presented an ethical dilemma." *Id.* at 7. The Complaint alleges that Lindsten transferred Plaintiff from the Kearny Mesa campus to the downtown San Diego campus after again "voic[ing] concerns to Ms. Lindsten of the legality of the quota system." *Id.* The Complaint alleges that Plaintiff was not selected for the position of Academic Counselor.

The Complaint alleges that in March 2007, Plaintiff again "questioned the legality of the university's enrollment practices" with Bonilla. *Id.* at 9. The Complaint alleges that thereafter, Bonilla reduced the number of students in his data base available for contact, which limited Plaintiff's ability to meet his enrollment quotas. The Complaint also alleges that Lindsten changed Plaintiff's work schedule without Plaintiff's consultation and reduced Plaintiff's salary.

1         The Complaint alleges that in June 2007, Plaintiff submitted evidence to Defendant April Alcorn, the Human Resources Manager of the University of Phoenix, "that the San Diego office was using harassment and intimidation to get the plaintiff to quit employment or accept the sales quota system." *Id.* at 10. The Complaint alleges that the "university continued to create a hostile work environment for Plaintiff even after he demanded to [Human Resources] that it cease and desist." *Id.* The Complaint alleges that Plaintiff was harassed with emails threatening termination, and was reprimanded for his attire on a casual Friday in a discriminatory and retaliatory manner. The Complaint alleges that Plaintiff's stress over the situation increased, and "Plaintiff began grinding his teeth, vomiting, and receiving stomach pains in response to the hostile work environment." *Id.* at 12.

        The Complaint alleges that, having received no response with regard to his complaints, Plaintiff decided to take a ten-day non-paid vacation, beginning on July 16, 2007, "in order to provide [Defendants] with enough time to rectify the situation." *Id.* at 14-15. The Complaint alleges that while on leave, Plaintiff received three overnight Federal Express packages: the first was a letter stating he needed to return to work no later than July 19, 2007; the second was letter, dated July 19, 2007, stating that "the Company has chosen to separate your employment effective July 19, 2007" for failure to report to work at the designated date and time; and the third was a letter, dated July 19, 2007, stating that Defendants reviewed Plaintiff's concerns, and "find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations." *Id.* at 15-16.

        The Complaint alleges claims against the following Defendants: Apollo Group, Inc.; the University of Phoenix (collectively referred to as the "Corporate Defendants"); Bonilla; Lindsten; Alcorn; and Kyan Flynn, Director of Enrollment at the University of Phoenix (collectively referred to as the "Individual Defendants"). The Complaint alleges the following causes of action: (1) Retaliation, in violation of the False Claims Act, 31 U.S.C. section 3730(h) (the "FCA"), (2) Retaliation, in violation of Title VII of the 1965 Civil Rights Act ("Title VII"), (3) Wrongful Termination, (4) False Imprisonment, (5) Intentional Infliction of Emotional Distress, (6) Defamation, and (7) Equal Pay.

On July 23, 2008, the Court issued an Order quashing service of process upon each Defendant, and granting Plaintiff leave to either properly serve each Defendant in accordance with applicable law or file a waiver of service (Doc. # 87). On August 25, 2008 and August 26, 2008, Plaintiff filed executed summonses for Apollo Group, Inc. (Docs. # 88, 89), and on August 26, 2008, Plaintiff filed an executed summons for University of Phoenix (Doc. # 90). Plaintiff has not filed an executed summons for any of the Individual Defendants.

On September 9, 2008, each Corporate Defendant filed a Motion to Dismiss. On September 9, 2008, Individual Defendant April Alcorn filed a Motion to Dismiss, and Individual Defendants Mechelle Bonilla, Kyan Flynn, and Carlyn Lindsten filed a Motion to Dismiss. On October 6, 2008, Plaintiff filed a Response in Opposition to Apollo Group, Inc.'s and University of Phoenix's Motions to Dismiss (Doc. # 95). On October 6, 2008, Plaintiff filed two Ex Parte Motions to Shorten Time for Hearing on Motion to Amend, and two Motions for Leave to Amend Original Complaint. On October 10, 2008, Apollo Group, Inc. and the University of Phoenix filed Replies to the Response in Opposition to the Motion to Dismiss (Docs. # 101, 102). On October 13, 2008, Apollo Group, Inc. and the University of Phoenix filed Responses in Opposition to the Motions for Leave to Amend Original Complaint (Docs. # 103, 104). On October 16, 2008, Plaintiff filed the Motion for Extension of Time to File Responses to Defendants' Motions to Dismiss. On October 22, 2008, Plaintiff filed Responses in Opposition to the Individual Defendants' Motions to Dismiss (Docs. # 110, 113). On October 24, 2008, the Individual Defendants filed Replies to the Responses in Opposition to their Motions to Dismiss (Docs. # 114, 117). On October 24, 2008, the Individual Defendants also filed Responses in Opposition to the Motion for Extension of Time to File Responses (Docs. # 115, 116).

## Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *See Bell*

*Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See id.* (citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996). "Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).

## Analysis

**I.  The Individual Defendants' Motions to Dismiss**

The Individual Defendants state that Plaintiff "simply mailed a copy of the Complaint to the Individual Defendants' place of work with a blank proof of service document." (Doc. # 93, p. 7; Doc. # 94, p. 5). The Individual Defendants state that Plaintiff "did not attempt to personally serve the Complaint upon [the Individual Defendants] and hence failed to comply with the requirements for service under both federal and California law." *Id.* The Individual Defendants contend that Plaintiff did not obtain a waiver of service from any of the Individual Defendants. The Individual Defendants move to dismiss on grounds that Plaintiff failed to serve the Individual Defendants in compliance with Rule 4(e) of the Federal Rules of Civil Procedure.

Plaintiff contends that he properly served the Individual Defendants by mailing a copy of the summons and the Complaint to the Individual Defendants. (Doc. # 110, p. 9; Doc. # 113, p. 7). Plaintiff contends that service was effected on August 26, 2008, when the summons and Complaint arrived at the Individual Defendants' usual place of business. *Id.* Plaintiff contends that the documents were signed for and accepted. *See* Doc. # 113, Exhibits A-D. Plaintiff further contends that the Individual Defendants admit that they received a copy of the summons and their complaint in their work mailboxes. *See id.,* Exhibits E-G. Plaintiff contends that in light of the foregoing, the Individual Defendants have been properly served

in accordance with federal and California law.

"Without a proper basis for jurisdiction, or in the absence of service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross,* 504 F.3d 1130 (9th Cir. 2007). "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance" with Rule 4 of the Federal Rules of Civil Procedure. *Id.* at 1130. Once service is challenged, the plaintiff bears the burden of establishing sufficiency of process. *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004). Rule 4 of the Federal Rules of Civil Procedure governs service of process. Although Rule 4 is a flexible rule that should be liberally construed, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction absent 'substantial compliance with Rule 4." *Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir. 1986).

Rule 4(e) governs service on individuals within a judicial district of the United States. Rule 4(e) provides that a plaintiff may serve an individual by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally; or
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). California state law allows for service upon an individual by delivering a copy of the summons and complaint by "personal delivery or any authorized agent for service of process;" "[s]ubstitute service coupled with mailing after a good faith effort at personal service has been attempted;" or "[s]ervice by publication." Cal. Code Civ. Proc. §§ 415.10, 415.20, 415.30, 415.50.

Plaintiff does not assert that he personally served any of the Individual Defendants; that he left a copy of the summons and Complaint at the dwelling or usual place of above of any of the Individual Defendants with someone of suitable discretion and age who resides there; that he delivered a copy of the summons and Complaint to an agent authorized to receive such service of process on behalf of the Individual Defendants; or that he attempted to serve the Individual Defendants by publication. Although Plaintiff asserts that the summons and Complaint were mailed to the Individual Defendants' usual place of business and signed for and accepted at the Individual Defendants' usual place of business, this is insufficient to properly effect service of process. Even if Plaintiff effected substitute service, Plaintiff does not assert that he made a good faith effort to effect personal service on the Individual Defendants. Plaintiff does not assert that he personally delivered the summons and Complaint to an authorized agent for service of process on the Individual Defendants. In light of the foregoing, the Court concludes that Plaintiff has failed to satisfy his burden of demonstrating that he substantially complied with Rule 4 of the Federal Rules of Civil Procedure. The Court dismisses the Complaint as to the Individual Defendants on grounds that Plaintiff failed to properly effect service of process.

**II.    The Corporate Defendants' Motions to Dismiss[1]**

    A.    <u>Plaintiff's Claim under the False Claims Act</u>

The Corporate Defendants contend that the Complaint does not allege sufficient facts to invoke whistle blower provision under the FCA, which protects employees who assist the government in the investigation and prosecution of violations of the FCA. The Corporate Defendants contend that aside from the Complaint's allegation that "[t]he Plaintiff, after discovering that the Higher Education Act prohibits universities from using sales quotas for enrollment counselors, mentioned this concern to his manager," the Complaint is devoid of any

---

[1] The Motions to Dismiss filed by the Individual Defendants raise the same arguments as the Motions to Dismiss filed by the Corporate Defendants with respect to the Complaint's failure to state a claim. However, as previously discussed, Plaintiff's claims against the Individual Defendants are dismissed on jurisdictional grounds for failure to effect service of process. Unlike the Individucal Defendants, the Corporate Defendants do not assert that Plaintiff failed to properly serve them.

facts supporting any "investigation for, initiating of, testimony for, or assistance in" an action filed under the FCA. (Docs. # 102, p. 4; 101, p. 4) (quoting *Complaint,* ¶ 6). The Corporate Defendants contend that Plaintiff does not allege any facts indicating that Plaintiff "has performed lawful acts in furtherance of an existing 'action' under the FCA." (Doc. # 91, p. 6; Doc. # 92, p. 4). The Corporate Defendants further assert that Plaintiff's claim under the FCA is barred because the Corporate Defendants "are already involved in a qui tam action with the government regarding the identical facts that McKinney asserts regarding incentive pay for enrollment counselors." (Doc. # 102, p. 5; 101, p. 5). For these reasons, the Corporate Defendants contend that the Complaint fails to state a claim under the FCA.

Plaintiff contends that the FCA prohibits an employer from harassing or retaliating against an employee for attempting to uncover or report fraud on the federal government. Plaintiff contends that the alleged conduct of Defendants is "in direct violation of FCA § 3729(a)(3) because [Defendants] conspired to defraud the Government by getting a false or fraudulent claim allowed or paid." (Doc. # 95, p. 9). Plaintiff contends that the Complaint alleges facts to demonstrate that an action brought by either the Attorney General or in the name of the United States Government exists through allegations that "Plaintiff believed [Defendants'] business practices were in violation of the Higher Education Act." *Id.,* at 7-8. Plaintiff contends that the FCA "applies to the Plaintiff because he asserts that he was retaliated against, and terminated by Apollo for bringing his workplace concerns to the attention of the company." *Id.* at 7. Plaintiff further contends that the Complaint alleges that he performed lawful acts in furtherance of an existing action under the FCA through allegations that he notified his employer and "initiated an investigation into the company's alleged illegal activities." *Id.* Plaintiff finally contends that he has direct and independent knowledge of which his allegations are based, and therefore is an original source of information.

///
///
///

31 U.S.C. section 3730(h) is the FCA's whistle blower provision. Section 3730(h) provides that an employee who

> is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h). "Mere dissatisfaction with one's treatment on the job is not, of course, enough [to state a claim under section 3730(h)]. Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations." *United States ex rel. Yesudian v. Howard University,* 153 F.3d 731, 742 (D.C. Cir. 1998).

Pursuant to 31 U.S.C. section 3730(b), a private person may bring a civil action for violation of the FCA "for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b). Section 3730(c) governs the rights of the parties to qui tam actions, and provides: "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action." 31 U.S.C. § 3730(c). Section 3730(e) provides that "[i]n no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e).

The Corporate Defendants are involved in a qui tam action, which is ongoing and was filed in 2004. *See United States of America, ex rel. Mary Hendow and Julie Albertson v. University of Phoenix,* 2004 U.S. Dist. LEXIS 28990 (E.D. Cal., May 19, 2004); *reversed and remanded*, 461 F.3d 1166 (9th Cir. 2006 (the "Hendow action"). The United States is a party to the Hendow action, and the Hendow action alleges identical facts to those alleged by Plaintiff with respect to incentive pay for enrollment counselors. The Court also notes that Plaintiff does not assert that he brought this action in the name of the United States Government, as required by section 3730(b). The Court concludes that section 3730(e) bars

Plaintiff from bringing this action under 31 U.S.C. § 3730(b) for violation of the FCA.

Plaintiff asserts that the Complaint has stated a claim under the FCA through Plaintiff's initiation of an investigation into Defendants' alleged non-compliance with federal law. However, the Complaint alleges that Plaintiff was retaliated against for investigating Defendants' alleged non-compliance with federal or state regulations, which is insufficient to state a claim under section 3730(h). Furthermore, the Complaint is devoid of allegations that Plaintiff assisted the government in, or otherwise performed lawful acts in furtherance of an existing action under the FCA. Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to state a claim under 31 U.S.C. § 3730(h) for violation of the FCA's whistle blower provision.

B. <u>Plaintiff's Claim under Title VII of the Civil Rights Act of 1964</u>

The Corporate Defendants contend that in order to state a disparate treatment claim under Title VII, the plaintiff must allege that he is a member of a protected class, and in order to state a claim for retaliation under Title VII, the plaintiff must allege that he engaged in protected conduct. The Corporate Defendants contend that the Complaint does not allege that Plaintiff engaged in conduct protected by Title VII or that he was a member of a protected class. For these reasons, the Corporate Defendants contend that the Complaint fails to state a claim under Title VII.

Plaintiff responds:

> The Plaintiff believes he has made it abundantly clear that he notified [the Corporate Defendants] and its employees that he was opposed to, and initiated an investigation into, the unlawful practices of the company. As a result of this, the Plaintiff believes that he has suffered discrimination, harassment, and retaliation leading to his eventual wrongful termination by [the Corporate Defendants]. It should be evidence to any reasonable person that the Plaintiff felt he was protected under the auspices of SEC. 2000e-3 (section 704) of Title VII from what he believed to be discriminatory, nefarious acts by a company and its employees.

*Id.* at 11.

Title VII makes it unlawful for covered employers to hire or discharge any individual, or otherwise discriminate against any individual on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e, *et seq.* To state a retaliation claim under Title VII, the

1  plaintiff must allege that he (1) engaged in some conduct protected by Title VII, (2) suffered
2  an adverse employment action, and (3) the adverse employment action was taken against him
3  because of the protected activity. *Trent v. Elect. Assoc.,* 41 F.3d 524, 526 (9th Cir. 1994). To
4  establish the first element, the plaintiff must show that he had a "reasonable belief that the
5  employment practice [he] protested was prohibited under Title VII." *Id.* (internal quotations
6  omitted). To state a claim for discriminatory treatment under Title VII, the plaintiff must
7  allege that he (1) is a member of a protected class, (2) was capable of performing his job, and
8  (3) was treated differently because of his protected class status. *Pejic v. Hughs Helicopters,*
9  *Inc.,* 840 F.2d 667, 672 (9th Cir. 1988).

10    The Complaint alleges that Defendants discriminated against Plaintiff based on his
11 investigation into the legality of Defendants' employment practice of requiring employees to
12 meet enrollment quotas. However, the Complaint does not allege that Plaintiff was a member
13 of a class protected under Title VII, or that the employment practice about which Plaintiff
14 complained was protected under Title VII, which prohibits discrimination against employees
15 on the basis of race, color, religion, sex or national origin. The Complaint is devoid of any
16 allegations that Defendants actions were taken on the basis of race, color, religion, sex or
17 national origin. The Court concludes that the Complaint fails to state a claim for violation of
18 Title VII because the Complaint not allege that Plaintiff's conduct was protected under Title
19 VII or that Plaintiff was a member of a protected class.

20   C.   <u>Plaintiff's Remaining Claims</u>

21    The Corporate Defendants contend that "[t]o the extent [Plaintiff] is asserting these or
22 any other claims against [the Corporate Defendants] (which is, itself, unclear from the wording
23 of the Complaint), [Plaintiff] has failed to describe these claims with any specificity or to set
24 forth the required elements of those claims." (Doc. # 91, p. 8; Doc. # 92, p. 6). The Corporate
25 Defendants further contend that they are unable to determine which of the remaining claims
26 are being asserted against them. The Corporate Defendants contend that the Complaint fails
27 to state a claim for wrongful termination, false imprisonment, intentional infliction of
28 emotional distress, defamation, or equal pay.

With respect to the Complaint's claim for wrongful termination, Plaintiff states: "The Plaintiff believes he was wrongfully terminated," and Defendants may therefore be responsible for statutory penalties and damages. (Doc. # 95, p. 12). With respect to the claim for false imprisonment, Plaintiff states: "The Plaintiff believes that he was falsely imprisoned. A person falsely imprisoned may sue the offender for damages." *Id.* Plaintiff contends that he has stated a claim for intentional infliction of emotional distress because "California has long recognized the right to recover damages for the intentional and unreasonable infliction of mental or emotional distress which results in foreseeable physical injury to plaintiff." *Id.* at 12-13. With respect to the remaining claims: "The Plaintiff also believes that he is entitled to relief under his claim that he suffered Defamation as a result of the actions taken against him by all Defendant parties. He also believes that [Defendants] violated his rights under the Equal Pay Act, and he is entitled to relief under this cause of action as well." *Id.* at 13.

       *i.*      Wrongful Termination

To state a claim for wrongful termination in violation of public policy, a plaintiff must establish that there was an employer-employee relationship; a termination of employment or other adverse employment action; that the termination was a violation of public policy; and that the termination was the legal cause of plaintiff's damage and that the plaintiff suffered damage. *City of Moorpark v. Super. Ct.,* 18 Cal. 4th 1143, 1159 (1998). Aside from the conclusory assertion that Defendants are liable for wrongful termination, Plaintiff does not allege that any of the Defendants violated public policy or otherwise articulate facts supporting a claim for wrongful termination. Viewing the facts in the light most favorable to Plaintiff, the Court concludes that the Complaint fails to state a claim for wrongful termination.

       *ii.*      False Imprisonment

To state a claim for false imprisonment, the plaintiff must allege that he was intentionally confined without consent, without lawful privilege, and for an appreciable period of time. *Easton v. Sutter Coast Hosp.,* 80 Cal. App. 4th 485, 496 (2000). The Complaint is devoid of any facts alleging that Plaintiff was confined without his consent, or that any confinement was intentionally effectuated by any of the Defendants. The Court concludes that


the Complaint fails to state a claim or false imprisonment.

### iii. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Cervantez v. J.C. Penney Co.,* 24 Cal. 3d 579, 593 (1979). The Complaint does not allege that Defendants' conduct was extreme or outrageous; that Defendants acted with the requisite intent to cause Plaintiff emotional distress; or that Plaintiff has suffered severe or extreme emotional distress as a result of Defendants' outrageous or extreme conduct. In light of the foregoing, the Court concludes that the Complaint fails to state a claim for intentional infliction of emotional distress.

### iv. Defamation

To state a claim for defamation, the plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado,* 72 Cal. App. 4th 637, 645 (1999). The Complaint does not allege that Defendants published any statement of fact about Plaintiff, or that Defendants intentionally published any statement that was unprivileged, had a natural tendency to injure or which caused special damage to Plaintiff. The Court concludes that the Complaint fails to state a claim for defamation.

### v. Equal Pay

Plaintiff's grounds for relief under the seventh cause of action are unclear because the cause of action conclusorily alleges: "Equal Pay." *Complaint,* p. 17. However, assuming the Complaint is seeking to state a claim under the Equal Pay Act of 1963, such a claim fails because Plaintiff does not allege that Defendants discriminated against Plaintiff on the basis of his status as a member of a protected class by paying him lower wages.

## **Conclusion**

IT IS HEREBY ORDERED that the (1) Motion to Dismiss by Apollo Group, Inc. (Doc. # 91), (2) Motion to Dismiss by University of Phoenix (Doc. # 92), (3) Motion to Dismiss by April Alcorn (Doc. # 93), (4) Motion to Dismiss by Mechelle Bonilla, Kyan Flynn, Carlyn Lindsten (Doc. # 94), and (5) Motion for Extension of Time to File Response to Defendants' Motion to Dismiss (Doc. # 108) are **GRANTED.** The above-captioned action is **DISMISSED with leave to amend.** Plaintiff shall file a First Amended Complaint no later than Monday, January 12, 2009. It is further ordered that the (6) Ex Parte Motion to Shorten Time for Hearing on Motion to Amend by Chad McKinney (Doc. # 96), (7) Motion for Leave to Amend Original Complaint by Chad McKinney (Doc. # 97), (8) Ex Parte Motion to Shorten Time for Hearing on Motion to Amend by Chad McKinney (Doc. # 99), and (9) Motion for Leave to Amend Original Complaint by Chad McKinney (Doc. # 100) are **DENIED as moot.**

DATED: December 10, 2008

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge