1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11     CHAD MCKINNEY, an individual,                    CASE NO. 07cv2373 WQH (CAB)

12                                    Plaintiff,        **ORDER**

            vs.
13     APOLLO GROUP, INC., a Corporation,
       et al.,
14

15                                    Defendants.

HAYES, Judge:

16

       The matter before the Court is the Amended Motion to Dismiss (Doc. # 122).

17

## Background

18

       On December 19, 2007, Plaintiff initiated this action by filing a complaint (Doc. # 1).

19

The complaint alleged the following causes of action:  (1) retaliation, in violation of the False

20

Claims Act, 31 U.S.C. section 3730(h) (the "FCA"), (2) retaliation, in violation of Title VII

21

of the 1964 Civil Rights Act ("Title VII"), (3) wrongful termination, (4) false imprisonment,

22

(5) intentional infliction of emotional distress, (6) defamation, and (7) equal pay.  On July 23,

23

2008, the Court issued an Order dismissing the complaint (the "July 23 Order") (Doc. # 87).

24

The Court concluded that the complaint failed to state a claim pursuant to Rule 12(b)(6) of the

25

Federal Rules of Civil Procedure.  The Court granted Plaintiff leave to amend.

26

       On January 12, 2009, Plaintiff filed the First Amended Complaint ("FAC"), which is

27

the operative pleading in this case (Doc. # 119).  The FAC alleges that on August 7, 2006,

28

Plaintiff  was  hired  as  an  enrollment  counselor  for  Defendant  University  of  Phoenix

("Phoenix").  The FAC alleges that Plaintiff was told the job was a salary position, and that "there was no mention to the Plaintiff that his salary would decrease if the Plaintiff did not meet quotas for new students enrolled into the university."  *FAC*, ¶ 8.  The FAC alleges that "[a]fter two months of employment, the Plaintiff alleges to have discovered that his salary was based on enrollment quotas."  *Id.,* ¶ 10.  The FAC alleges that Defendants Mechelle Bonilla ("Bonilla"), Carlyn Lindsten ("Lindsten"), and Kyan Flynn ("Flynn"), employees of the University of Phoenix, "entered Plaintiff into various contests that [Plaintiff] believes encouraged sales quotas."  *Id.,* ¶ 11.  The FAC alleges that "[a]fter the Plaintiff discovered that the Higher Education Act prohibits enrollment counselors from using incentives and bonuses to enroll individuals into the university, he vocalized this concern to his first direct supervisor, Barbara Keramati" ("Keramati").  *Id.,* ¶ 12.  The FAC alleges that despite Plaintiff's concerns, "Keramati informed Plaintiff that his tuition reimbursement would be revoked if he failed to meet the 'goal' of enrolling at least four students per month."  *Id.,* ¶ 13.

The FAC alleges that on December 19, 2006, Plaintiff was informed that his job performance was exceptional.  The FAC alleges, however, that "[o]n a multitude of occasions from the end of February 2007 until the Plaintiff was terminated, [Plaintiff] believes that he received multiple harassing emails from" Lindsten, which "threatened reduction in pay if enrollment quotas were not met, questioned the level of dedication demonstrated by the Plaintiff, and asked the Plaintiff if he was truly serious about his career with the company."  *Id.,* ¶ 15.  The FAC alleges that "Plaintiff perceived these communications initiated by Lindsten to be condescending, threatening, and harassing in nature."  *Id.*

The FAC alleges that employees were required to participate in mandatory "blitzes" whereby "Lindsten would ring a repeating siren throughout the entire building."  *Id.*  The FAC alleges that "[d]uring this time, employees were led to believe that they were not allowed to leave their cubicle."  *Id.*  The FAC alleges that blitzes occurred three times a day.

The FAC alleges that in late February 2007 or early March 2007, Lindsten transferred Plaintiff from the Kearny Mesa campus to the downtown San Diego campus.  The FAC alleges that "[t]he transfer occurred soon after the Plaintiff vocally repeated his concerns to Lindsten,

regarding the legality of the quota system being used by Apollo's San Diego Enrollment Department." *Id.,* ¶ 17.  The FAC alleges that Bonilla "told the Plaintiff to sign a 'Discussion Memo' that stated his performance fell below expectations of appointments seen, applications taken, and students whom started class," and which stated that "failure to improve your performances may result in further disciplinary action up to and including termination." *Id.,* ¶ 19.  The FAC alleges that thereafter, "[m]any of Plaintiff's applicants were subsequently transferred to other San Diego staff to enroll into school;" that "Plaintiff's 'lead base' (number of students in his data base available for contact) was reduced drastically by Bonilla;" and that Plaintiff's "work schedule was changed, without consultation, by Lindsten." *Id.,* ¶¶ 21-22.

The FAC alleges that Lindsten and Bonilla "stated on multiple occasions that they had made [potential students] cry on the telephone, and that 'it was our job to do the same.'" *Id.,* ¶ 22.  The FAC alleges that this behavior "was perceived by the Plaintiff to be harassing, and conducted in a condescending, demanding, and braggart manner," and that the behavior also "cause[d] potential students emotional distress." *Id.*  The FAC alleges that Plaintiff complained to Defendants "that he believed the employment practices mandated by the company forced Enrollment Counselors to enroll students who were not qualified or ready to go to school, or to deceive students into enrolling into the University of Phoenix." *Id.*

The FAC alleges that "Plaintiff feels that [] retaliatory acts were taken against him by the company, and its associates, for voicing concerns about the San Diego Enrollment Department using quotas for enrolling students into school." *Id.,* ¶ 24.  The FAC alleges that "Bonilla and Flynn asked the Plaintiff to sign documents that he felt were untrue relating to his performance as an enrollment counselor," and that "Plaintiff's salary was reduced from $37,000 to $35,000 in May . . . because he did not 'meet goal' in May." *Id.,* ¶¶ 23-24.

The FAC alleges that on June 11, 2007, Plaintiff submitted evidence to human resources which Plaintiff believes "supported his claim that the San Diego office was using harassment, intimidation, and discrimination to get the plaintiff to quit employment, or accept the sales quota system." *Id.,* ¶ 25.  The FAC alleges that Defendants "continued to create a hostile work environment for [Plaintiff] even after he had demanded to [human resources] that the

Defendants cease and desist what he felt were threatening, harassing, and retaliatory actions." *Id., ¶* 28.  The FAC alleges that Defendants represented that Plaintiff's complaints would be examined and resolved, but continued to postpone the date on which Plaintiff's complaints would be resolved.  The FAC alleges that "Plaintiff believes [Defendants] were playing games with him, and willfully allowing for further discrimination and harassment to occur against the Plaintiff in an effort to force [Plaintiff] to resign from the company."  *Id., ¶* 38.

The FAC alleges that in June 2007, Plaintiff "was reprimanded by Bonilla for his attire (flip flops, jeans, and a t-shirt) on a casual Friday."  *Id., ¶* 30.  The FAC alleges that "Plaintiff believes that this action was discriminatory, retaliatory, and harassing" because three female employees "had all worn the same attire (as well as tank tops) and were previously unpunished."  *Id.*

The FAC alleges that "Plaintiff was extremely stressed out over the situation," and communicated his stress to Defendants."  *Id., ¶* 34.  The FAC alleges that Plaintiff's stress increased daily, and that Plaintiff "began grinding his teeth, vomiting, and experiencing severe stomach pains as a result of the harassment and stress that he claims to have endured at the hand of the Defendants."  *Id., ¶* 35.

The FAC alleges that Plaintiff was unable to work due to his stress, and "was forced to suffer another day at home without pay."  *Id., ¶* 38.  The FAC alleges that on June 12, 2007, Plaintiff received a telephone call while at home whereby Plaintiff was informed that he could take a leave of absence from work.  The FAC alleges that, having heard nothing regarding the resolution of his complaint and evidence submitted to human resources, that Plaintiff decided to take the leave of absence.  The FAC alleges that on July 13, 2007, "Plaintiff notified Alcorn and Bonilla via email that he would take a 10 day non-paid vacation in order to provide them enough time to rectify the situation," and "provided his personal email account, should they need to contact."  *Id., ¶* 43.  The FAC alleges that while Plaintiff was on leave of absence, three overnight Federal Express packages were left at Plaintiff's residence.  The FAC alleges that the first package contained a letter stating that Plaintiff needed to return to work no later than July 19, 2007; the second package contained a letter stating that the "Company has chosen

to separate your employment effective July 19th, 2007" on grounds that Plaintiff failed to report to work at the designated date and time; and the third package contained a letter stating that "Apollo Group, Inc. has reviewed your concerns and we find no evidence to support any findings of the San Diego Enrollment Department violating Company policies or procedures as outlined by your allegations." *Id., ¶¶* 45-48.

The FAC alleges the following causes of action: (1) retaliation in violation of the FCA; (2) retaliation in violation of Title VII; (3) wrongful termination; (4) false imprisonment; (5) intentional infliction of emotional distress; (6) defamation; and (7) violation of the Equal Pay Act ("EPA").   In support of the cause of action for retaliation in violation of the FCA, the FAC alleges that "Plaintiff was retaliated against, and discharged from Apollo, for bringing his concerns regarding the legal and ethical practices of the company to the attention" of Defendants. *Id., ¶* 49.  In support of the cause of action for retaliation in violation of Title VII, the FAC alleges that Defendants discriminated against Plaintiff based on his dress, even though he was dressed no less professional than his female co-workers; and that Plaintiff "had heard from several other company employees that . . . a manager of the Finance Department, was discriminated against" because he was male. *Id., ¶* 50.  In support of the cause of action for wrongful termination, the FAC alleges that Defendants wrongfully terminated Plaintiff "in an attempt to silence and quash the Plaintiff's opposition to what he believed were unlawful practices by Apollo and its employees in violation of public policy." *Id., ¶* 51.  In support of the cause of action for false imprisonment, the FAC alleges that Defendants "used threats and the show of apparent authority to falsely imprison the Plaintiff to his office cubicle," and that "Plaintiff was not allowed to leave his desk to get water, use the restroom, or exit the room for multiple periods of time, often exceeding beyond the duration of thirty minutes." *Id., ¶* 52. In support of the cause of action for intentional infliction of emotional distress, the FAC alleges that Plaintiff "suffered severe and extreme emotional distress as a result of Defendants' outrageous and extreme conduct." *Id., ¶* 53.  In support of the cause of action for defamation, the FAC alleges that "Plaintiff suffered defamation when Bonilla attacked his personal character, in private, as well as in front of other employees at Apollo;" when Bonilla and Flynn

1   "demanded that he sign documents published as statements of fact that he felt were untrue

2   relating to his professional performance and character;" when Plaintiff "was told in an initial

3   telephone conversation with Alcorn that the stress and harassment he received was his 'fault;'"

4   and when "the company allowed its associates . . . under the auspices of its authority, to

5   continually violate his rights as an employee of Apollo." *Id.,* ¶ 54.  In support of the cause of

6   action for violation of the EPA, the FAC alleges that Defendants "discriminated against the

7   Plaintiff on the basis of his status as a member of a protected class by paying him lower

8   wages." *Id.,* ¶ 55.

9          On January 29, 2009, Defendants filed the Amended Motion to Dismiss ("Motion to

10  Dismiss").   On February 17, 2009, Plaintiff filed a Response in Opposition to the Motion to

11  Dismiss (Doc. # 122).  On February 23, 2009, Defendants filed a Reply (Doc. # 123).

12                                   **Standard of Review**

13         A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests

14  the legal sufficiency of the pleadings.  *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

15  1978).  A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where

16  the factual allegations do not raise the right to relief above the speculative level.  *See Bell*

17  *Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Conversely, a complaint may not be

18  dismissed for failure to state a claim where the allegations plausibly show that the pleader is

19  entitled to relief.  *See id.* (citing Fed R. Civ. P. 8(a)(2)).  In ruling on a motion pursuant to Rule

20  12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and

21  must accept as true all material allegations in the complaint, as well as any reasonable

22  inferences to be drawn therefrom.  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003);

23  *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).  "Courts have a duty to construe pro se

24  pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles*

25  *County*, 339 F.3d 920, 925 (9th Cir. 2003).

26         Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short

27  and plain statement of the claim showing that the pleader is entitled to relief . . . ."  FED R. CIV.

28  P. 8(a)(2).  While the Federal Rules adopt a flexible pleading policy, every complaint must,

at a minimum, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*, 127 S. Ct. at 1964 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

<u>**Analysis**</u>

Defendants move to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on grounds that it fails to provide a basis upon which relief can be granted. Defendants further contend that the FAC is "incoherent, rambling [and] unreadable," and therefore fails to comply with Rule 8 of the Federal Rules of Civil Procedure. *Mot. to Dismiss,* p. 17. Defendants contend that Plaintiff "has filed a protracted, rambling, incomprehensible FAC that utterly fails to allege any facts to support any of his claims," and that Plaintiff "has had numerous attempts to provide an adequate pleading and cannot assert anything in a newly amended pleading that will give merit to his baseless claims." *Id.* at 18. Defendants therefore request that the Court dismiss the FAC with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

Plaintiff contends that dismissal of the FAC is not proper because the FAC provides a basis upon which relief can be granted. Plaintiff "believes that the FAC alleged the necessary facts to move this case into the discovery phase of litigation." *Opposition,* p. 34. Plaintiff states: "[i]f, for whatever reason it is found by this honorable Court to be lacking, [Plaintiff] respectfully requests leave to submit a second amended complaint." *Id.*

    A.   <u>Cause of Action for Retaliation in Violation of the False Claims Act</u>

Defendants contend that the FAC fails to allege "facts supporting any 'investigation for, initiating of, testimony for, or assistance in a FCA suit' as required to support a claim under 31 U.S.C. section 3730(h)." *Mot. to Dismiss,* p. 5 (quoting 31 U.S.C. section 3730(h)). Defendants contend that the allegation in the FAC that Defendants "utilized a list of preferred third party lenders that it referred its students to in order to apply for financial aid is not improper, is common place among colleges and universities and most certainly does not qualify as facts to support a claim of false statements or other corrupt or fraudulent conduct." *Id.* (internal quotations omitted). Defendants contend the FAC and Opposition "are devoid of

any claims that [Plaintiff] reported any violations of the FCA and only concern purported violations of the Higher Education Act." *Reply,* p. 4. Defendants therefore contend that the FAC "fails to allege any facts supporting that [Plaintiff] told anyone anything about purported FCA violations or g[a]ve notice of a FCA suit, qui tam action or that [Plaintiff] intended to report or assist the government in the investigation of a FCA violation." *Id.* Defendants further contend that an employee cannot claim retaliation under the whistleblower protections for "re-reporting the same claims that an employer is already aware of." *Mot. to Dismiss,* p. 6. Defendants contend that Plaintiff is not entitled to protection under the FCA because the claims alleged in the FAC are identical to those alleged in *Hendow v. University of Phoenix,* 2004 U.S. Dist. LEXIS 28990 (E.D. Cal., May 19, 2004), *reversed and remanded* 461 F.3d 1166 (9th Cir. 2006) (the "*Hendow* action").

Plaintiff contends that in his formal complaint to human resources, he gives "pointed reference to the Higher Education Act, specific use of the term 'illegal,' and notification to the defendants that he was considering legal action against the University." *Opposition,* p. 14-15. Plaintiff contends that the FAC "alleges that the Defendants deliberately directed potential students to specific lenders from that list of preferred third party lenders" thereby intimidating, harassing and demanding enrollment counselors to coerce potential students into selecting a specific lender. *Id.* at 15-16. Plaintiff contends that the FAC alleges that "Plaintiff contributed to the furtherance of an investigation which may have been brought forth in the name of the United States government at a later time" because "on numerous occasions [Plaintiff] initiated an investigation into his complaint that the Defendants were in violation of the FCA." *Id.* at 12. Plaintiff further contends that Defendants are not immune from suit based on the *Hendow* action because the facts alleged in the *Hendow* action are not identical to those in the FAC. Based on the foregoing, Plaintiff contends that the FAC pleads sufficient facts to invoke the whistleblower protection under the FCA.

31 U.S.C. section 3730(h) is the FCA's whistle blower provision. Section 3730(h) provides that an employee who

is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h).  "Mere dissatisfaction with one's treatment on the job is not, of course, enough [to state a claim under section 3730(h)].  Nor is an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations."  *United States ex rel. Yesudian v. Howard University,* 153 F.3d 731, 742 (D.C. Cir. 1998).

Pursuant to 31 U.S.C. section 3730(b), a private person may bring a civil action for violation of the FCA "for the person and for the United States Government.  The action shall be brought in the name of the Government."  31 U.S.C. § 3730(b).  Section 3730(c) governs the rights of the parties to qui tam actions, and provides: "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action.  Such person shall have the right to continue as a party to the action."  31 U.S.C. § 3730(c).  Section 3730(e) provides that "[i]n no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  31 U.S.C. § 3730(e).

The FAC alleges that Plaintiff reported his concern that Defendants' enrollment scheme violated the Higher Education Act, and that Defendants coerced students into obtaining loans through specific lenders.  The FAC, however, does not allege facts to support that Plaintiff reported any violation of the FCA or otherwise allege facts to support that Plaintiff was retaliated against because of lawful acts done by Plaintiff in furtherance of an action under the FCA.  Instead, the FAC alleges that Defendants retaliated against Plaintiff for investigating Defendants' alleged non-compliance with federal or state regulations, which is insufficient to state a claim under section 3730(h).  Furthermore, Plaintiff does not dispute that Defendants are involved in a qui tam action, which is ongoing and was filed in 2004.  *See Hendow,* 2004 U.S. Dist. LEXIS 28990.  The *Hendow* action challenges the legality of offering incentive pay

for enrollment counselors, and the facts alleged in the FAC with respect to this claim are essentially identical to the facts alleged in the *Hendow* action.  As previously discussed, Plaintiff's claims that do not relate to Defendants' enrollment practices, such as the claim relating to coercive lending policies, do not allege facts sufficient to support a claim under the FCA.  Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to state a claim under 31 U.S.C. § 3730(h), and that section 3730(e) bars Plaintiff from bringing this action under 31 U.S.C. § 3730(b) for violation of the FCA.  The cause of action for retaliation in violation of the FCA is dismissed.

> B.    Cause of Action for Retaliation in Violation of Title VII

Defendants contend that the "only two instances of perceived sexual discrimination [] were: (1) being reprimanded once for his attire; and (2) overhearing a workplace rumor about someone in a different department whom he never worked with."  *Reply,* p. 6.  With respect to the claim that Plaintiff was discriminated against based on his attire, Defendants contend that Plaintiff "never asserts that he was replaced by a person outside the protected class, that similarly situated non-protected employees were treated more favorably or that he was treated differently because of his sex."  *Mot. to Dismiss,* p. 10.  Defendants further contend that "isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment," and that "[c]ourts have routinely held that employers may establish moderately different dress and grooming standards for male and female employees."  *Id.*  Regarding the claim that Plaintiff heard that another male employee was discriminated against, Defendants contend that a "plaintiff cannot support a sexual harassment/discrimination claim when the alleged harassment/discrimination occurred out of plaintiff's sight and orbit in venues in which [the plaintiff] did not work."  *Id.* at 10-11 (internal quotations omitted).

Plaintiff contends that the "claims under Title VII are not based on one conversation with [Plaintiff's] manager."  *Opposition,* p. 22.  Plaintiff contends that the FAC does allege that "similarly situated employees were treated more favorable and that [Plaintiff] was treated differently because of his sex" through allegations that he dressed no less professional than his

female co-workers, yet was the only employee reprimanded for his dress. *Id.* Plaintiff contends that the FAC "alleged several instances of discrimination." *Id.*

Title VII makes it unlawful for covered employers to hire or discharge any individual, or otherwise discriminate against any individual on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e, *et seq.* To state a retaliation claim under Title VII, the plaintiff must allege that he (1) engaged in some conduct protected by Title VII, (2) suffered an adverse employment action, and (3) the adverse employment action was taken against him because of the protected activity. *Trent v. Elect. Assoc.,* 41 F.3d 524, 526 (9th Cir. 1994). To state a claim for discriminatory treatment under Title VII, the plaintiff must allege that he (1) is a member of a protected class, (2) was capable of performing his job, and (3) was treated differently because of his protected class status. *Pejic v. Hughs Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir. 1988). Sexual harassment "is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 270 (2001) (internal quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* Courts "have long recognized that companies may differentiate between men and women in appearance and grooming policies." *Jesperson v. Harrah's Operating Co. Inc.,* 444 F.3d 1104, 1110 (9th Cir. 2008). "The material issue under our settled law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an unequal burden for the plaintiff's gender." *Id.* (internal quotations omitted). A party does not have standing under Title VII to allege injury because of third-party discrimination. *See Patee v. Pacific Northwest Bell Tel.,* 803 F.2d 476, 478 (9th Cir. 1986); *see also Leibovitz v. New York City Transit Auth.,* 252 F.3d 179, 189 (2d Cir. 2001) (plaintiff cannot support a sexual harassment claim when the "women who were allegedly harassed were working in another part of the employer's premises, out of [the plaintiff's] sight and regular orbit; . . . the experiences of those women came to [the plaintiff's] notice via hearsay").

The FAC alleges two instances of perceived sexual discrimination.  First, the FAC alleges that Plaintiff was reprimanded for his attire, and that females wearing the same attire were not reprimanded.  With respect to this claim, the FAC alleges only one incident of discrimination on the basis of Plaintiff's attire, which does not constitute "extremely serious" discrimination. *Breeden,* 532 U.S. at 270.  Furthermore, a company may differentiate between men and women in appearance policies, and the FAC does not allege facts to support that Defendants' appearance policy creates an unequal burden for Plaintiff's gender. *Jesperson,* 444 F.3d at 1110.  Second, the FAC alleges that Plaintiff heard that another male employee suffered sexual discrimination. With respect to this claim, the FAC alleges that Plaintiff "had heard from several other company employees" about the discrimination, and that the discrimination occurred against an employee that works in a different department than Plaintiff. *FAC,* ¶ 50.  The allegations with respect to discrimination against a manager of the finance department constitute allegations of third party discrimination, which are insufficient to support a claim for violation of Title VII.  Based on the foregoing, the Court concludes that the FAC fails to allege facts sufficient to support a claim under Title VII.  The cause of action for retaliation in violation of Title VII is dismissed.

### C.   Cause of Action for Wrongful Termination

Defendants contend that since Plaintiff's claim under the FCA "should be dismissed, his use of a violation of this statute as the basis for his claim of wrongful termination must also fail." *Mot. to Dismiss,* p. 11.  Defendants contend that Plaintiff's "admission of facts that he was given a warning and then fired after not returning to work essentially eliminates any claim of wrongful termination." *Id.* at 12.  Defendants contend that Plaintiff may not explain away the fact that Plaintiff was given a written warning to return to work "by blaming the Corporate Defendants for not sending him this warning using the 'modality' of communication he preferred." *Reply,* p. 7.

Plaintiff contends that he has stated a claim under the FCA such that dismissal of his claim for wrongful termination on grounds that Plaintiff fails to state a claim under the FCA is not proper.  Plaintiff contends that the FAC alleges that Plaintiff provided Defendants with

his personal email address should they need to contact him while he was on his leave of absence.  Plaintiff contends that he "did not admit that he was given a warning to return to work" because, as alleged in the FAC, Plaintiff "did not receive any correspondence from the Defendants in his personal email account after he had notified them that this was the modality in which to contract him during his ten day leave of absence." *Opposition,* p. 24-25.

To state a claim for wrongful termination in violation of public policy, a plaintiff must establish that there was an employer-employee relationship; a termination of employment or other adverse employment action; that the termination was a violation of public policy; and that the termination was the legal cause of plaintiff's damage and that the plaintiff suffered damage. *City of Moorpark v. Super. Ct.,* 18 Cal. 4th 1143, 1159 (1998).

The bases alleged in the FAC in support of the cause of action for wrongful termination are that Plaintiff "was terminated by [Defendants] for acting as a whistle blower," and that Plaintiff was discharged in an attempt to "silence or quash the Plaintiff's opposition to what he believed were unlawful practices . . . in violation of public policy." *Opposition,* p. 35-36. However, as previously discussed, the FAC fails to allege facts sufficient to invoke the whistle-blower protections of the FCA, or to state a claim under Title VII.  Plaintiff provides no basis to support a finding that Defendants failure to send him a warning to return to work using the modality of communication that Plaintiff preferred violates public policy.  The FAC fails to describe how this conduct otherwise violates public policy.   The Court concludes that the FAC fails to state a claim for wrongful termination.  The cause of action for wrongful termination is dismissed.

D.   <u>Cause of Action for False Imprisonment</u>

Defendants contend that "all enrollment counselors were required to do the very same tasks" underlying the false imprisonment claim "at the very same times - each and every day." *Mot. to Dismiss,* p. 13.  Defendants contend that the FAC "does not allege that [Plaintiff] was detained by the Corporate Defendants, confined to a room or physically barred from leaving the premises," or that Plaintiff "suffered any damages since he was paid his regular wages during this time." *Id.*  Defendants contend that Plaintiff's "complaint of having to be at his

- 13 -

desk and make phone calls during a pre-designated scheduled work time is precisely the type of action that employees are barred from bringing against their employers since it was clearly an action that was a normal part of the employment relationship." *Id.* (internal quotations omitted).

Plaintiff contends that the "false imprisonment alleged by [Plaintiff] is said to have occurred on multiple occasions." *Opposition,* p. 26. Plaintiff contends that the "blitz" periods during which Plaintiff was confined to his desk were not a normal part of the employment relationship because "Plaintiff has alleged facts to state that the Defendants conspired to, and deliberately performed acts to humiliate, harass, and intimidate him." *Id.* at 27. Plaintiff contends that his confinement was not voluntary because "he received an email threatening termination if he did not blitz." *Id.*

To state a claim for false imprisonment, the plaintiff must allege that he was intentionally confined without consent, without lawful privilege, and for an appreciable period of time. *Easton v. Sutter Coast Hosp.,* 80 Cal. App. 4th 485, 496 (2000). Employees may not take action against their employers for "actions which are a normal part of the employment relationship." *Cole v. Fair Oaks Fire Protection District,* 43 Cal. 3d 148, 160 (1987). "[I]n order to plead false imprisonment in a civil action, a plaintiff/ employee would have to allege rather specific, and fairly uncommon, acts of involuntary and criminal confinement." *Fermino v. Fedco, Inc.,* 7 Cal. 4th 701, 717 (1994).

The blitzes alleged in the FAC are tantamount to "actions which are a normal part of the employment relationship" because all enrollment counselors were required to participate in blitzes, and the FAC does not allege that Plaintiff was physically confined to the room and barred from leaving the premises. *Cole,* 43 F. 3d at 160. Furthermore, the FAC does not allege "fairly uncommon [] acts of involuntary and criminal confinement." *Fermino,* 7 Cal. 4th at 717. Although the FAC alleges facts that Plaintiff had a subjective belief that he would be subject to adverse employment action if he did not participate in the blitzes, the FAC does not allege facts to support a claim for false imprisonment. The cause of action for false imprisonment is dismissed.

1

E.    <u>Cause of Action for Intentional Infliction of Emotional Distress</u>

Defendants contend that "[b]ased on the FAC, [Plaintiff's] claims of discrimination and harassment all derive from his claims made under the FCA and Title VII.  Accordingly, since [Plaintiff's] claims under these statutes should be dismissed, his claim for [intentional infliction of emotional distress] should be dismissed as well." *Mot. to Dismiss,* p. 14.

Plaintiff contends that the FAC sufficiently alleges a claim for intentional infliction of emotional distress because Plaintiff "has stated that his employer singled him out and subjected him to an extreme and outrageous campaign of humiliation, discrimination, intimidation, and harassment for the purpose of causing emotional distress." *Opposition,* p. 29.

To state a claim for intentional infliction of emotional distress, Plaintiffs must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citing *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991)).  In order to be "outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Garamendi v. Golden Eagle Ins. Co.*, 128 Cal. App. 4th 452, 480 (2005).  Severe emotional distress "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Hailey v. California Physicians' Service*, 158 Cal. App. 4th 452,476 (9th Cir. 2007).

The FAC does not allege that Defendants acted with the intent of causing Plaintiff emotional distress.  Rather, the allegations in the FAC support that Defendants tried to accommodate Plaintiff in light of his concerns by granting him a leave of absence and investigating his complaint.  Furthermore, the factual allegations in the FAC do not support a claim for violation of Title VII, violation of the FCA, false imprisonment, or wrongful termination, and the FAC does not articulate how Defendants' conduct is otherwise extreme or outrageous.  The Court concludes that the FAC fails to state a claim for intentional infliction of emotional distress because the FAC fails to allege facts to show that Defendants conduct

07cv2373 WQH (CAB)

1  was extreme or outrageous, and that Defendants acted with the intent to cause Plaintiff

2  emotional distress.   The cause of action for intentional infliction of emotional distress is

3  dismissed.

4        F.      Cause of Action for Defamation

5        Defendants contend that courts disfavor claims of libel brought by a plaintiff against

6  his former employer for receiving a poor performance evaluation.  Defendants contend that all

7  of the "comments alleged by [Plaintiff] are privileged under the employer employee privilege

8  since they concerned work-related issues and were not made to anyone not employed by the

9  Corporate Defendants." *Mot. to Dismiss,* p. 15.

10        Plaintiff contends that FAC alleges that the comments underlying his defamation claim

11  "poisoned the well and changed the course of Plaintiff's career with the company."

12  *Opposition,* p. 30.  Plaintiff contends that the comments "were fabricated as a pretext for

13  prohibited discrimination."  *Id.*  Plaintiff contends that "had the articles under question of

14  defamation not been entered into the Plaintiff's employee file, it is reasonable to assume that

15  his salary would not have been reduced, and he may have remained at the Kearny Mesa

16  campus and progressed along a different career path with the Defendants."  *Id.*

17        To state a claim for defamation, the plaintiff must establish "the intentional publication

18  of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which

19  causes special damage."   *Smith v. Maldonado,* 72 Cal. App. 4th 637, 645 (1999).   A

20  publication "must contain a false statement of *fact* to give rise to liability for defamation.

21  *Jensen v. Hewlett Packard Co.,* 14 Cal. App. 4th 958, 969-70 (1993) (emphasis in original).

22  "[T]he word 'evaluation' denotes opinion, not fact."  *Id.* at 970.  No action lies unless "an

23  employer's performance evaluation falsely accuses an employee of criminal conduct, lack of

24  integrity, dishonest, incompetence or reprehensible personal characteristics or behavior."  *Id.*

25  at 965.  "This is true even when the employer's perceptions about the employee's efforts,

26  attitude, performance, potential or worth to the enterprise are objectively wrong and cannot be

27  supported by reference to concrete, provable facts."  *Id.*  "[W]here an employee alleges the

28  employer's negative evaluations are feigned, the only potentially available remedy lies in

contract." *Id.*

The allegations in the FAC underlying Plaintiff's defamation claim concern Defendants' alleged comments relating to Plaintiff's performance.  Defendants' evaluations of Plaintiff's performance evaluations constitute opinions, and therefore do not give rise to liability for defamation.  *See Jensen,* 14 Cal. App. 4th at 970.  The FAC does not allege that Defendants' have falsely accused Plaintiff of "criminal conduct, lack of integrity, dishonest, incompetence or reprehensible personal characteristics or behavior."  *Id.* at 965.  The FAC fails to state a claim for defamation because the defamation claim relates to Defendants' comments regarding Plaintiff's performance, and the FAC does not allege facts sufficient to support the requisite conduct to state a claim for defamation in the employee-employer context.  The cause of action for defamation is dismissed.

G.    Cause of Action for Violation of the Equal Pay Act

Defendants contend that the FAC "fails to aver any facts supporting that Corporate Defendants paid men less than women for the same type of work or that only men had their pay reduced for poor performance and that women did not."  *Mot. to Dismiss,* p. 16. Defendants contend that Plaintiff "also never alleges facts to support that he was paid less because of his sex and instead simply infers that because his performance caused his pay to decrease, it could only be because he was a male."  *Id.*

Plaintiff contends that the "FAC more than accurately articulates the merits of the Plaintiff's allegations in accusing the Defendants of violating his right to protection under the Equal Pay Act."  *Opposition,* p. 32.

29 U.S.C. section 206(d)(1) states:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to . . . (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

1    29 U.S.C. § 206(d)(1).

2         Aside from the conclusory allegation that Defendants "discriminated against the

3    Plaintiff on the basis of his status as a member of a protected class by paying him lower

4    wages," the FAC does not allege sufficient facts to support that Plaintiff was paid less than

5    women for performing essentially the same type of duties.  *Id.,* ¶ 55.  Furthermore, the FAC

6    alleges that employees were also paid pursuant to a system which measures earnings by

7    quantity or quality of production.  29 U.S.C. § 206(d)(1)(iii).  The Court concludes that the

8    FAC fails to state a claim under the EPA.  The cause of action for violation of the EPA is

9    dismissed.

10        H.    Conclusion

11        Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be

12   freely given when justice so requires."  Fed. R. Civ. P. 15(a).  This policy is applied with

13   "extraordinary liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079

14   (9th Cir. 1990).  Once an answer to the complaint has been filed, as is the case here, courts

15   may deny leave to amend where the proposed amendment would be futile, where it is sought

16   in bad faith, where it will create undue delay, or where "undue prejudice to the opposing party

17   will result."  *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also Johnson*

18   *v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992); *Saul v. United States*, 928

19   F.2d 829, 843 (9th Cir. 1991).

20        Defendants do not contend that amendment would be futile, is sought in bad faith,

21   would create undue delay or would otherwise result in undue prejudice to Defendants.  In light

22   of the "extraordinary liberality" with which courts grant leave to amend, and Plaintiff's pro se

23   status, the Court grants Plaintiff leave to amend.

24   ///

25   ///

26   ///

27   ///

28

- 18 -

1

### Conclusion

2        IT IS HEREBY ORDERED that the Motion to Dismiss (Doc. # 122) is **GRANTED.**

3    The first amended complaint is **DISMISSED with leave to amend.**  Plaintiff may file a

4    second amended complaint within forty-five (45) days of the date of this Order.

5    DATED:  April 3, 2009

6

7                        **WILLIAM Q. HAYES**
                         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -