1
2
3
4
5
6
7

FILED

2010 JUL 16  AM 9:36

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  CHAD McKINNEY, | CASE NO. 07cv2373 WQH (CAB) |
| 12                      Plaintiff, | **ORDER** |
|           vs. | |
| 13  MECHELLE BONILLA, an Enrollment | |
| 14  Manager at University of Phoenix; KYAN | |
|     FLYNN, Director of Enrollment at | |
| 15  University of Phoenix; APRIL ALCORN, | |
|     an Employee Relations Consultant at | |
| 16  University of Phoenix; CARLYN | |
|     LINDSTEN, Associate Director of | |
| 17  Enrollment at University of Phoenix; | |
|     UNIVERSITY OF PHOENIX, a | |
| 18  Corporation; APOLLO GROUP, INC., a | |
|     Corporation, | |
| 19                      Defendants. | |

20

21  HAYES, Judge:

22         The matters before the Court are the Motion to Compel Mediation/Arbitration filed by

23  Defendants University of Phoenix and Apollo Group, Inc. (Doc. # 151) and the Ex Parte

24  Motion to Strike Defendants' Reply Due to Untimely and Improper Filing filed by Plaintiff

25  (Doc. # 163).

26                              **BACKGROUND**

27         This action concerns the termination of Plaintiff's employment.  On December 19,

28  2007, Plaintiff, proceeding *pro se*, initiated this action by filing a complaint.  (Doc. # 1).  On

1   December 10, 2008, the Court granted Defendants' motion to dismiss the Complaint for failure
2   to state a claim. (Doc. # 118). On January 12, 2009, Plaintiff filed a First Amended Complaint
3   ("FAC"). (Doc. # 119).  On April 3, 2009, the Court granted Defendants' motion to dismiss
4   the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil
5   Procedure. (Doc. # 124).  On May 18, 2009 Plaintiff filed a Second Amended Complaint
6   ("SAC").  (Doc. # 126). On May 21, 2009, Plaintiff filed an Ex Parte Motion for Leave of
7   Court to Amend Second Amended Complaint. (Doc. # 130). On May 28, 2009, the Court
8   granted Plaintiff's Motion. (Doc. # 134). On May 29, 2009, Plaintiff filed his Third Amended
9   Complaint ("TAC"), which is the operative pleading in this case. (Doc. # 136).  Plaintiff also
10  filed Exhibits 1-Z18, approximately 500 pages of documents.  (Doc. # 136-1–Doc. # 136-5).

11          The TAC alleges the following causes of action: (1) retaliation in violation of the Major
12  Fraud Act ("MFA") of 1989; (2) retaliation in violation of the False Claims Act; (3) retaliation
13  in violation of Title VII; (4) wrongful and constructive termination; (5) false imprisonment;
14  (6) intentional infliction of emotional distress; (7) defamation; (8) violation of the Equal Pay
15  Act ("EPA"); (9) violation of the Labor Management Relations Act ("LMRA") of 1947;
16  (10) violation of the California Whistleblower Protection Act ("CWPA"); (11) breach of the
17  implied covenant of good faith and fair dealing; and (12) wrongful termination in violation of
18  public policy.

19          On January 28, 2010, the Court granted Defendants' motion to dismiss the TAC as to
20  Plaintiff's first claim for retaliation in violation of the Major Frauds Act, second claim for
21  retaliation in violation of the False Claims Act as to Plaintiff's claims about the Do-Not-Call
22  Act and the Higher Education Opportunity Act of 2008, third claim for violations of Title VII,
23  fifth claim for false imprisonment, sixth claim for intentional infliction of emotional distress,
24  seventh claim for defamation, eighth claim for violation of the Equal Pay Act, ninth claim for
25  violation of the Labor Management Relations Act, tenth claim for violation of the California
26  Whistleblower Protection Act, eleventh claim for breach of the implied covenant of good faith
27  and fair dealing, and twelfth claim to the extent it claims information about benefits and
28  retirement converted him from an at will employee to a contractual employee. (Doc. # 149 at

23).  The Court denied Defendants' motion to dismiss the TAC as to Plaintiff's second claim for retaliation in violation of the False Claims Act as it pertains to the Higher Education Act's incentive compensation ban and fourth claim for wrongful termination in violation of public policy.[1] *Id.*

On February 18, 2010, Defendants University of Phoenix and Apollo Group, Inc. (hereinafter "Defendants") filed their Motion to Compel Mediation/Arbitration. (Doc. # 151). On March 17, 2010, Plaintiff filed a "Notice of Motion and Opposition to Defendants' Motion to Compel Mediation/Arbitration." (Doc. # 160).  On March 23, 2010, Defendants filed their reply in support of their Motion to Compel Mediation/Arbitration.  (Doc. # 161).  On March 26, 2010, Plaintiff filed an "Ex Parte Notice of Non-Opposition to His Motion and Opposition to Defendants' Motion to Compel Mediation/Arbitration." (Doc. # 162).  On the same date, Plaintiff filed an "Ex Parte Notice of Motion and Opposition to Defendants' Reply in Support of Motion to Compel Mediation/Arbitration Due to Untimely and Improper Filing of Pleading" which the Court construes as an ex parte motion to strike Defendants' reply brief.  (Doc. # 163).

## CONTENTIONS OF THE PARTIES

Defendants contend that Plaintiff "signed a valid agreement which requires that he mediate and then, if necessary, arbitrate all disputes with his former employer." (Doc. # 151-1 at 2).  Defendants contend that employment disputes are generally arbitrable.  *Id.* at 7. Defendants contend that Plaintiff agreed to be bound by the company arbitration agreement on two occasions while he was working for Defendants.  *Id.* at 9. Defendants contend that this action should therefore be stayed.  *Id.* at 12. In support of their motion, Defendants submit the declaration of Matthew Mitchell, the Legal and Associate General Counsel of the University of Phoenix, who states he reviewed Plaintiff's personnel file. (Doc. # 154-1 at 2).  Mitchell states that Plaintiff "has acknowledged receiving several [University of Phoenix] documents by electronic signature, which is individually password protected and is a common practice at

---

[1] The Court also held that Plaintiff's twelfth claim for wrongful termination in violation of public policy was partially duplicative of Plaintiff's fourth claim.

1 [the University of Phoenix]." *Id.* Mitchell states Plaintiff electronically signed a document
2 attesting that he had received and consented to the arbitration agreement on August 14, 2006
3 and consented to an updated version of the agreement on January 15, 2007. *Id.* Both versions
4 of the arbitration agreement are attached to Mitchell's declaration along with print-outs of
5 Plaintiff's electronic signature on an accompanying form for each version. *Id.* at 151-5. The
6 agreements include a series of internal dispute resolution procedures followed by mandatory
7 mediation and binding arbitration. *Id.*

8      In his opposition, Plaintiff contends that he did not sign any agreement to arbitrate.
9 (Doc. # 160 at 3). Plaintiff contends that the documents submitted by Defendants are "a
10 forgery." *Id.* at 6. Plaintiff contends that he was never given these "document[s] to sign and
11 agree to in printed or electronic form by his former employer. He was only granted access to
12 it via the company website." *Id.* Plaintiff contends that a contract to arbitrate would be
13 unconstitutional. *Id.* at 7. Plaintiff contends that he "had no opportunity to negotiate this
14 alleged agreement [and] it was thus invalid as there was not a modicum of bilaterality
15 exercised in its construction or institution upon Plaintiff . . . ." *Id.* at 10. Plaintiff contends the
16 agreement is "illusory and unenforceable" because Defendants "reserved the right to alter the
17 handbook's provisions at its sole discretion without notice to, or approval of the employee."
18 *Id.* at 12. Plaintiff contends that Defendants have skipped a required step of the process
19 outlined in the agreement. *Id.* at 13. Plaintiff contends that the "Federal Arbitration Act does
20 not govern employment contracts." *Id.* at 16. Plaintiff contends that Defendants waived the
21 arbitration agreement. *Id.* Plaintiff contends that the arbitration agreement violates California
22 law because it does not provide for neutral arbitrators, does not allow more than minimal
23 discovery, does not require a written award, does not provide for all types of relief that would
24 be available in court, and because it requires employees to pay arbitrators' fees or unreasonable
25 costs. *Id.* at 18. Plaintiff contends that this dispute is "beyond the scope" of the arbitration
26 agreement because Plaintiff alleged fraud on the government, not merely a personnel dispute.
27 *Id.* at 26.

28      In their reply, Defendants contend that Plaintiff "cannot use his own lack of diligence

07cv2373 WQH (CAB)

1  to the extent he failed to actually read the Employee Handbook to avoid the" arbitration

2  agreement. (Doc. # 161 at 3). Defendants contend that Plaintiff must have had knowledge of

3  the Employee Handbook containing the agreement because he submitted it to the Court

4  attached to his TAC. *Id.* Defendants contend that even if Plaintiff's electronic signature is

5  forged, it is irrelevant because "no signature is required to make an arbitration agreement

6  enforceable." *Id.* Defendants contend that Plaintiff's claims all fall within the scope of the

7  arbitration agreement because the claims stem from alleged retaliation and wrongful

8  termination.   *Id.* at 4-5.   Defendants contend the arbitration agreement satisfies the

9  requirements established by the California Supreme Court in *Armendariz v. Foundation Health*

10 *Psychcare Servs. Inc.*, 24 Cal. 4th 83 (2000).   Defendants contend that the arbitration

11 agreement incorporates the rules of the Federal Arbitration Act which require neutral

12 arbitrators. *Id.* at 6. Defendants contend that the agreement also provides for adequate

13 discovery because under California law, an arbitration agreement which is silent on the issue

14 of discovery will be interpreted to imply sufficient discovery. *Id.* Defendants contend that the

15 arbitration agreement incorporates arbitration rules which require a written decision. *Id.* at 7.

16 Defendants contend that there are no restrictions on the available remedies. *Id.* Defendants

17 contend that the agreement provides that Plaintiff will not bear the costs of the arbitration. *Id.*

18 Defendants contend that the agreement is mutual because it requires both the employee and

19 the employer to submit their claims to arbitration. *Id.* at 8. Defendants contend that the

20 agreement is neither procedurally or substantively unconscionable. *Id.* Defendants contend

21 that a clause allowing an employer to unilaterally alter the agreement without the "employee's

22 express knowledge and consent" is not prohibited under California law. *Id.* Defendants

23 contend that any unconscionable provision is severable. *Id.* at 9. Defendants contend that they

24 did not waive their right to compel arbitration. *Id.* Finally, Defendants contend Plaintiff is not

25 entitled to a jury trial as to whether the arbitration agreement applies because he "did not even

26 submit any declarations." *Id.* at 11.

27       Plaintiff filed a notice of non-opposition asserting Defendants failed to timely file their

28 reply. (Doc. # 162). Plaintiff asserts that his opposition was a motion and that Defendants

1  failure to timely file the reply is a concession that his motion should be granted. *Id.* at 2-3.

2  Plaintiff also filed a motion to strike the reply as untimely and improper in form. (Doc. # 163).

3  Defendants filed an opposition to Plaintiff's motion (Doc. # 164), which contends Defendants

4  have good cause for their late filing, and an opposition to Plaintiff's notice of non-opposition

5  which contends that filing is improper (Doc. # 165). Plaintiff filed a reply which contends that

6  Defendants should have filed a motion for an extension of time to file their reply in support

7  of the motion to compel arbitration (Doc. # 161) and that Defendants' reply should be struck.

8  (Doc. # 167). Finally, Plaintiff filed a document which requests that if the Court accepts the

9  late-filed reply brief in support of Defendants' motion to compel arbitration, the Court grant

10  Plaintiff seven days to respond to the contentions raised by that brief.  (Doc. # 169).

11  **ANALYSIS**

12  **I.     ARBITRATION AGREEMENT**

13          Two different versions of the arbitration agreement, called the Dispute Resolution

14  Policy and Procedure, applied during Plaintiff's employment with Defendants. *See* Doc.

15  # 151-5. The first was in effect when Plaintiff began working for Defendants in August of

16  2006. *See* Dispute Resolution Policy and Procedure, Version 15, Doc. # 151-5 at 3-7. The

17  second went into effect in January of 2007. *See* Dispute Resolution Policy and Procedure,

18  Version 16, Doc. # 151-5 at 8-13. The Dispute Resolution Policy and Procedure documents

19  were each accompanied by Employee Handbook Acknowledgment Forms which contain

20  additional terms. Doc. # 151-5 at 3, 8. The Dispute Resolution Policy and Procedure creates

21  a multi-step process beginning with internal dispute resolution measures and culminating in

22  mandatory mediation followed by binding arbitration. *See id.* at 3-13.   The two Dispute

23  Resolution Policy and Procedure documents each contain a provision which states:

24          This policy is intended to create the exclusive means by which claims asserted
        by either an employee or the Company, involving the interpretation and/or
25          application of this Employee Handbook or any other personnel related dispute,
        shall be decided and finally resolved. . . . All covered disputes shall be resolved
26          pursuant to these procedures and the result is final and binding on both the
        Company and the employee.

27

28  *Id.* at 4, 9. This language makes clear that the agreements are intended to be binding

1   arbitration agreements rather than optional alternatives to litigation.

2           Pursuant to the "primary substantive provision of the [Federal Arbitration] Act," *Moses*

3   *H. Cone Memorial Hospital v. Mercury Constr. Corp*, 460 U.S. 1, 24 (1983), arbitration

4   agreements are generally enforceable in federal courts:

5           A written provision in any maritime transaction or a contract evidencing a transaction
            involving commerce to settle by arbitration a controversy thereafter arising out of such
6           contract or transaction, or the refusal to perform the whole or any part thereof, or an
            agreement in writing to submit to arbitration an existing controversy arising out of such
7           a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon
            such grounds as exist at law or in equity for the revocation of any contract.
8

9   9 U.S.C. § 2. The Federal Arbitration Act "reflects the fundamental principle that arbitration

10  is a matter of contract . . . plac[ing] arbitration agreements on equal footing with other

11  contracts and requires courts to enforce them according to their terms." *Rent-A-Center West,*

12  *Inc. v. Jackson*, 561 U.S. __, No. 09-497, *slip op.* at 3 (June 21, 2010).   As with other

13  contracts, arbitration agreements are subject to "generally applicable contract defenses such

14  as fraud, duress, or unconscionability." *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687

15  (1996).  Employment disputes are arbitrable under the Federal Arbitration Act.  *See, e.g.,*

16  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).

17          In the absence of a provision in the arbitration agreement stating otherwise, the question

18  of whether a particular dispute is arbitrable is to be decided by the courts, not the arbitrator.

19  *Rent-A-Center*, No. 09-497, *slip op.* at 8-9; *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83

20  (2002). If there is a valid arbitration agreement which applies to the dispute, the court "shall"

21  order arbitration pursuant to 9 U.S.C. § 4.   In determining whether a dispute is arbitrable,

22  courts must apply a standard similar to the summary judgment standard.  *See Bensadoun v.*

23  *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The court must review the record and determine

24  whether there are material disputes of fact that require a jury to determine whether the dispute

25  is arbitrable. 9 U.S.C. § 4; *see Bensadoun*, 316 F.3d at 175.  If there are no material disputes

26  of fact that require a jury to make factual determinations, the court must determine whether the

27  agreement is an enforceable contract. *See Rent-A-Center*, No. 09-497, *slip op.* at 4. Whether

28  an arbitration agreement is an enforceable contract is a question of state law. *See Omstead v.*

- 7 -

1  *Dell*, 594 F.3d 1081, 1085 (9th Cir. 2010).

2        Neither party asserts that the arbitration agreement requires arbitration of arbitrability

3  and there is no contractual term mandating arbitration of arbitrability. Therefore, this Court

4  must determine whether a valid, binding arbitration agreement exists, and if so, whether it is

5  applicable to this dispute. *See Rent-A-Center*, No. 09-497, *slip op.* at 5; *Faber v. Menard, Inc.*,

6  367 F.3d 1048, 1052 (8th Cir. 2004).

7        Plaintiff contends the contract is unenforceable because it is unconscionable. In

8  analyzing whether a contract is unconscionable under California law, a court applies a two-

9  pronged test. *See Soltani v. Western & Southern Life Insurance Co.*, 258 F.3d 1038, 1042 (9th

10  Cir. 2001). The first prong is procedural unconscionability. *Id.* A contract is procedurally

11  unconscionable if it is a contract of adhesion which an employee was required to sign as a

12  condition of employment without negotiation. *Id.* Defendants concede that the arbitration

13  agreement was imposed as a condition of employment and it is clear from the face of the

14  agreement and the accompanying documents that the contract is a form contract which was not

15  negotiated by Plaintiff. *See* Doc. # 161 (Defendant's reply conceding the agreement "was

16  imposed as a condition of [Plaintiff's] employment"); Doc. # 151-5 at 3, 8 (Employee

17  Handbook Acknowledgment Form). The Court finds that the contract was procedurally

18  unconscionable.

19        The second prong is substantive unconscionability. *Soltani*, 258 F.3d at 1043.

20  "Substantive unconscionability relates to the effect of the contract or provision" being

21  challenged. *Id.* "Substantive unconscionability centers on the 'terms of the agreement and

22  whether those terms are so one-sided as to shock the conscience.'" *Ingle v. Circuit City Stores,*

23  *Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (quoting *Kinney v. United HealthCare Servs. Inc.*,

24  70 Cal. App. 4th 1322, 1330 (1999)). The court must examine the contract "as of the time it

25  was made." *Id.* (internal citations omitted).

26        Both [procedural and substantive unconscionability must] be present in order for
   a court to exercise its discretion to refuse to enforce a contract or clause under
27   the doctrine of unconscionability. But they need not be present in the same
   degree. Essentially a sliding scale is invoked . . . . the more substantively
28   oppressive the contract term, the less evidence of procedural unconscionability
   is required to come to the conclusion that the term is unenforceable, and vice

1    versa.

2  *Soltani*, 258 F.3d at 1043 (quoting *Armendariz*, 24 Cal. 4th at 114-15).

3        Several provisions of the arbitration agreement are substantively unconscionable as a

4  matter of California law.  The Court will address each of the provisions below.

5  **(1)    Unilateral Right to Alter the Contract**

6        The Employee Handbook Acknowledgment Forms both include a clause which states:

7        Since the information, policies, and benefits in the Handbook are necessarily subject
         to change, I acknowledge that revisions may occur and I understand such revisions may
8        supersede, modify or eliminate existing policies.  I further understand and agree that I
         will be bound by any such revisions during the term of my employment with Apollo
9        Group, Inc.

10  While Defendants assert that under California law, "an employer can terminate or modify a

11  unilateral employment contract without employee's express knowledge and consent," in fact,

12  California law requires "reasonable notice of the change" and consent in the form of

13  remaining with the employer before a modification of an employment contract is effective.

14  *See Asmus v. Pacific Bell*, 23 Cal. 4th 1, 13 (2000).  Continued employment is also required

15  as consideration for the new contract formed by the modification.  *Id.*  The clause in this

16  contract, however, requires the employee to consent in advance to be bound by any revisions

17  without prior notice, which does not comply with California law.

18        By including the clause allowing unilateral changes without notice, the Employee

19  Handbook Acknowledgment Form suggested that the form was not a contract at all.  In

20  interpreting a similar clause, the Ninth Circuit held that such a clause implied that an

21  employee handbook "contained a set of non-contractual policies unilaterally established" by

22  the employer rather than a bilateral contract waiving the right to litigate claims in court.  *See*

23  *Kummetz v. Tech Mold*, 152 F.3d 1153, 1155 (9th Cir. 1998).  The Ninth Circuit refused to

24  enforce the arbitration agreement on those grounds.  *Id.*  Unlike the agreement in *Kummetz*,

25  additional language in Defendants' Dispute Resolution Policy and Procedure document makes

26  clear that by agreeing to arbitration, the employee is waiving access to the courts. *See id.*  In

27  *Kummetz*, the Ninth Circuit noted that the "Acknowledgment failed to alert Kummetz to the

28  fact that the information book contained an arbitration clause," *id.* at 1156, whereas

1  Defendant's Employee Handbook Acknowledgment Forms state that the employee

2  "specifically agree[s] to abide by the policies as set forth in the Employee Handbook . . .

3  including the following sections" and list the Dispute Resolution Policy and Procedure, *see*

4  Doc. # 151-5 at 3, 8. While this clause alone, read in the context of the rest of the agreement,

5  may not render the entire arbitration agreement invalid as it did in *Kummetz*, the clause is

6  unenforceable under California law and is substantively unconscionable.

7  **(2)    Internal Dispute Resolution**

8        Both versions of the Dispute Resolution Policy and Procedure in effect during

9  Plaintiff's employment with Defendant contain internal dispute resolution procedures. Doc.

10  # 151-5 at 4-5, 9-11. The procedures differ slightly from Version 15 to Version 16. *Id.* Under

11  both versions, the employee must first attempt "informal resolution" with a supervisor if

12  feasible.  *Id.*    The employee must then submit the dispute to "the Company's Senior

13  Management" if the first attempt at informal resolution fails. *Id.* This second step must be

14  taken "as soon as practical, but in no event more than 30 calendar days after learning of the

15  problem." *Id.* at 5, 11. The employee must submit a "written dispute" which "clearly and

16  concisely identif[ies] what the problem is and what resolution the employee or Company

17  seeks." *Id.* If the employee is not satisfied with the outcome, the third step requires the

18  employee to present his claims to a three-member panel of employees who investigate and

19  make a recommendation to the President of Apollo Group, Inc., who issues a "final Company

20  determination." *Id..* Under Version 16, the later version of the agreement, the employee must

21  also attempt informal resolution with the Office of Ombuds Services ("OO"). *Id.* at 10. Under

22  both versions, the employee is required to complete the internal dispute resolution procedures

23  prior to mandatory mediation and arbitration.  *Id.*

24        In *Nyulassy*, a California Court of Appeals analyzed a provision which "requires [the

25  employee] to submit to discussions with his supervisors in advance of, and as a condition

26  precedent to having his dispute resolved through binding arbitration." *Nyulassy v. Lockheed*

27  *Martin Corporation*, 120 Cal. App. 4th 1267, 1282-83 (2004).  The court in *Nyulassy*

28  concluded:

1  While on its face, this provision may present a laudable mechanism for resolving
2  employment disputes informally, it connotes a less benign goal.  Given the
   unilateral nature of the arbitration agreement, requiring plaintiff to submit to an
3  employer-controlled dispute resolution mechanism (i.e., one without a neutral
   mediator) suggests that defendant would receive a 'free peek' at plaintiff's case,
4  thereby obtaining an advantage if and when plaintiff were to later demand
   arbitration.

5  *Id.* at 1282-83.

6      Although the Dispute Resolution Policy and Procedure documents created by

7  Defendant in this case state that the entire policy is applicable to claims raised by either

8  Defendant or an employee, *see* Doc. # 151-5 at 4, 9, it is difficult to see how the internal

9  dispute resolution mechanisms could apply to claims raised by Defendant.  Requiring

10  Defendant to seek the approval of its senior management and president prior to mandatory

11  mediation and binding arbitration imposes no burden on Defendant while requiring Plaintiff

12  to reveal the details of his case prior to reaching a neutral mediator, rendering the provision

13  unconscionable pursuant to *Nyulassy*.  Further, the sheer number of steps to the procedure

14  prior to reaching a neutral mediator–at least two mandatory steps in all cases, three where it

15  is "feasible" to attempt to resolve the problem with a supervisor, and four under Version 16

16  which includes additional informal resolution with OO–suggests that  the internal dispute

17  resolution procedures serve largely to create a series of hurdles to be cleared so that only the

18  most persistent employees will ever reach a decision maker outside of the company.

19      For instance, while the full internal procedures purport to be applicable to both parties,

20  employees are sometimes required to complete one or two additional steps that are not

21  required of the employer. *See* Doc. # 151-5 at 5, 9-10.  Under both Version 15 and Version

22  16, the employee must attempt to resolve the dispute with his direct supervisor where such

23  resolution is "feasible."  *Id.* at 4, 9.  The language of the contract, which states that "the

24  *employee*" should attempt "Step One" of the internal dispute resolution procedures if it is

25  feasible before he may proceed, is overt that the employer is *not* required to attempt informal

26  resolution directly with the employee before proceeding. *See id.* (emphasis added).  Under

27  Version 16, there is an *additional* part of "Step One" which the employee must complete *after*

28  discussing the problem with a direct supervisor before proceeding with more formal internal

1   dispute resolution procedures, which is informal resolution through the OO. *See id.* at 10.
2   The OO, however, has no power to resolve disputes, and serves only to "facilitate
3   communication when conflict arises." *Id.* Although the OO is "neutral" according to Version
4   16, it is part of Defendant. *Id.* While some permissive language suggests this step is optional,
5   mandatory language at the end of Step One in Version 16 only allows the employee to bypass
6   this procedure "if an informal resolution is still not feasible." *Id.*

7         Defendants' internal dispute resolution procedure presents an additional problem—a
8   clause which states "[n]o outside representatives of either party shall be permitted to
9   participate in these interviews or in deliberations with the Committee" of employees which
10  investigates the claims and makes a recommendation to the President of Apollo Group, Inc.
11  The "outside representatives" clause effectively bars Plaintiff from being represented by
12  counsel at this stage of the proceedings and allows Defendants a significant and unfair
13  advantage. Defendants are the more sophisticated party and will be better able to protect their
14  interests, even without the benefit of attorneys. However, the phrasing of the clause, which
15  bars "*outside* representatives" allows Defendants to have in-house counsel present during an
16  interview that the employee is required to submit to and at the deliberations of the Committee
17  of employees. This clause heightens the danger that the internal dispute resolution procedure
18  serves to obtain an advantage in future  mediation and arbitration proceedings.  Barring
19  employees from being represented by counsel during an interview by company employees
20  while allowing the employer to be represented by its in-house counsel serves no legitimate
21  business purpose and may result in relatively unsophisticated employees attempting to pursue
22  their disputes with no knowledge of their legal rights and no one to advocate for them.

23  **(3) Thirty Day Deadline to Report Disputes and Ten Day Deadline to Appeal Internally**

24        In addition to the requirement that an employee must submit a "written dispute" to the
25  Senior Manager "in no event more than 30 days after learning of the problem," the Dispute
26  Resolution Policy and Procedure also requires that an employee "appeal in writing to the
27  President of Apollo Group, Inc. within ten working days of receipt of the Senior Manager's
28  written decision" if the employee is dissatisfied. (Doc. # 151-5 at 5, 11). The agreement does
    not state the consequence for filing outside these time periods, but since these internal dispute

- 12 -

07cv2373 WQH (CAB)

1  resolution procedures must be exhausted and the language in the 30-day clause that the

2  employee may "in no event" wait more than 30 days to submit the dispute to the senior

3  manager in writing, it appears to the Court that failure to meet these deadlines may result in

4  forfeiture of otherwise meritorious claims. *See id.* Such a provision is unconscionable as a

5  matter of California law, particularly when applied to a claim of an ongoing violation of

6  "employment-related statute[s]." *See Davis v. O'Melveny & Meyers*, 485 F.3d 1066, 1077

7  (9th Cir. 2007). Because claims based on ongoing violations are generally only brought by

8  employees, this provision would allow the employer to "insulate[] itself from potential

9  damages" while requiring an employee to "forgo the possibility of relief," which renders the

10  provision so one-sided as to be substantively unconscionable. *Id.* (citation omitted).

11      Although courts have previously held that six-month or one-year limits are

12  unconscionable because they bar ongoing violation claims, *see id.* at 1076-78, a thirty-day

13  period is so short that it is unconscionable even as applied to discrete violations. The more

14  sophisticated employer is more likely to immediately recognize causes of action based on acts

15  of the employee, allowing it to bring its claims within thirty days.[2]  While the employer

16  already has immediate access to counsel for legal advice if it is uncertain as to its legal rights

17  in relation to an act of the employee, employees do not generally have such ready access to

18  counsel. If an aggrieved employee is uncertain whether he has a claim, it may take the

19  employee more than thirty days to retain counsel and determine whether an act by the

20  employer violated the employee's statutory rights. If an employee has a general sense that he

21  has been wronged but lacks the sophistication to determine what legal claims he should bring,

22  even if he complies with the thirty-day deadline to file a dispute in writing, he may fail to

23  bring the correct claims during this internal resolution period and waive his right to assert

24  meritorious claims later in the proceedings after obtaining counsel.

25      The Court has found no California case-law addressing a ten-day period to appeal an

26  internal decision, however, as Defendants have advanced no "business justification" for this

27

28      [2] The Court, for the purposes of this analysis, is leaving aside the additional problem that it is not clear how the internal dispute resolution could be applied to the Company's claims against employees as discussed above.

- 13 -

07cv2373 WQH (CAB)

1 limitation, the Court finds that this clause is also unconscionable. As with the thirty-day
2 period to lodge a complaint in writing, this very brief window to pursue claims internally
3 functions as a trap for the unwary, limits the employee's ability to consult counsel, and
4 appears to serve no legitimate purpose.

5 **(4) Unavailability of Attorney's Fees**

6 Under both versions of the Dispute Resolution Policy and Procedure, after the internal
7 phase of the dispute resolution, an employee must submit to mandatory mediation prior to
8 binding arbitration. Although the employee may be "represented by counsel of his or her
9 choosing" the representation is at the employee's own expense. (Doc. # 151-5 at 6, 12). This
10 clause limits the ability of an arbitrator to subsequently award attorney's fees on the same
11 basis that they would be awarded in litigation, which is unconscionable under California law.
12 *See Armendariz*, 24 Cal. 4th at 101. Under many statutes designed to protect employee rights,
13 if the employee is successful in litigation, attorney's fees are recoverable, which is integral
14 to "advanc[ing such] statute[s'] goals." *Id.* Although an arbitrator could award attorney's
15 fees incurred in the course of the arbitration itself, the arbitrator could not award attorney's
16 fees incurred at the mediation phase in light of the clause that states such representation is at
17 the employee's own expense. "An arbitration agreement cannot . . . serve as a vehicle for the
18 waiver of statutory rights" and "may not limit statutorily imposed remedies such as punitive
19 damages and attorney's fees . . . ." *Id.* at 101, 103. Such a limitation "is contrary to public
20 policy and unlawful." *Id.* at 104.

21 **(5) Risk that Employee Must Bear Substantial Costs**

22 Under both versions of the Dispute Resolution Policy and Procedure, when a dispute
23 finally reaches an arbitrator, an employee must make a one-time payment towards the
24 expenses "equal to the filing fee then required by the court of general jurisdiction in the state
25 where the employee in question works . . . ." (Doc. # 151-5 at 6, 12). However, this provision
26 is overridden by "any conflicting rules of the American Arbitration Association then in
27 effect," which creates the possibility that the employee will have to bear costs beyond those
28 which would be incurred in litigation pursuant to the rules of a private association. *Id.* An
additional provision states that the arbitrator may subsequently award costs to the company,

1   even where the American Arbitration Association's rules would not otherwise allow it. *Id.*

2   "The risk that a claimant may bear substantial costs of arbitration, not just the actual

3   imposition of costs, may discourage an employee from exercising the constitutional right of

4   due process," rendering the provision unconscionable under California law. *See Martinez v.*

5   *Master Protection Corp.*, 118 Cal. App. 4th 107, 116 (2004) (citing *Armendariz*, 24 Cal. 4th

6   at 110).

7   **(6) Severability**

8         Once a court has determined that an arbitration agreement contains unconscionable

9   provisions, it must determine whether those provisions are severable. *Id.* In making this

10  determination, "a court cannot rewrite the arbitration agreement for the parties," so if the

11  unconscionable clauses cannot be "stricken or excised without gutting the agreement," an

12  arbitration agreement is unenforceable. *Davis*, 485 F.3d at 1084. The Court has identified

13  numerous provisions which are unconscionable: the unilateral right to alter the agreement, the

14  entirety of the internal dispute resolution procedures, the deadline to bring claims to

15  Defendants' attention, the bar on "outside representatives" during Defendants' investigation,

16  the unavailability of statutorily mandated attorney's fees, and the risk that the employee will

17  have to bear substantial costs under two different provisions. The Court concludes that the

18  number and scope of these unconscionable provisions renders the agreement unenforceable.

19  Defendants' Motion to Compel Mediation/Arbitration is denied.

20

21  **II.    MOTION TO STRIKE**

22        Although Defendants filed their reply (Doc. # 161) after the deadline set by the local

23  rules, the Court finds that they had good cause to do so because Plaintiff's opposition (Doc.

24  # 160) was untimely. Plaintiff's Motion to Strike is denied.

25

26                          **CONCLUSION**

27        IT IS HEREBY ORDERED THAT:

28        (1)    The Motion to Compel Mediation/Arbitration filed by Defendants University

            of Phoenix and Apollo Group, Inc. (Doc. # 151) is **DENIED**.

1        (2)    The Ex Parte Motion to Strike Defendants' Reply Due to Untimely and

2                 Improper Filing (Doc. # 163) is **DENIED**.

3    DATED: _7/11/10_

4                                      WILLIAM Q. HAYES

5                                      UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv2373 WQH (CAB)